

November 5, 2016

Mr. Joseph Salazar, Esq.
Lewis Brisbois Bisgaard & Smith LLP
2020 W El Camino Avenue, Suite 700
Sacramento, Ca 95833
(916)564-5400
jsalazar@lbbslaw.com

        Re: Cooke, et al. v. City of Stockton
          USDC, Eastern Case #2:14-cv-00908-KJM-KJN

Dear Mr. Salazar:

In preparation for my testimony in the above captioned case I have reviewed the following listed materials: Complaint; Incident Report #12-12492 & 12-10462 and Supplementals; Interviews of Officer J. Edens, Officer K. Hess, Officer I. Mohammed, Officer J. Manor, Officer P. Dona, Officer G. Guerrero, Sgt. D. Cantwell, D. Mertz RN, E. Bettencourt RN, C. Johnson RN, D. Felton RN, Dr. S. Atai, Lasana Madave and Hans Madave; Photographs; Event History; CAD; Autopsy Report; California Penal Code; Learning Domains 15 - 20 - 33 of the P.O.S.T. Basic Course; Graham v. Connor (109 S. Ct. 1895 (1989)); Monell v. City of New York Department of Social Services 436 U.S. 658 (1978); City of Canton, Ohio v. Harris 109 S. Ct. 1197 (1989) 105 Cal. Rptr. 748; Forrester v. City of San Diego, 25 F. 3d 804 (9th Cir. 1994); Smith v. City of Hemet No. 02-56445 (9th Cir. 1/10/05); Bryan v. McPherson 2009 WL 5064477, 11 (C.A 9 (C.A.9 (Cal.),2009) Anderson v. Creighton 483 U.S. 635, 107 S. Ct. (1987); Samaan v. Robbins, #96-55672, 97-56683, 97-56684, 97-5524 and 97-55789, 173 F.3d 1150 (9th Cir.1999); Tatum v. CCSF CV02-04785 SBA (9th 4/2/06); Evans v. City of Bakersfield Cal App 5 Dict, 1994 NO. F016745 and U.S. v. Dykes 03-3122 (District of Columbia Appeals Court) 5/6/05. Based on my review of the listed materials and my training and experience as a police officer and supervisor for 16 years; my work as an expert witness on police practices cases for the past 38 years; working as a police physical skills and classroom instructor for 48 years; court certified expert on the identification of markings caused by impact weapons and weaponless defense techniques (District and State Courts); P.O.S.T. & S.T.C. instructor trainer in identifying markings caused by impact weapons and weaponless defense techniques; being a "Safe Wrap" Instructor; being a P.O.S.T. recognized subject matter expert and member of the less lethal weapons committee; being a member of P.O.S.T.'s subject matter expert committee on Electronic and Projectile Weapons and Use of Force; member writer of Learning Domain #20 (use of force), #24 (crowd control), #33 (arrest and control), #35 (firearms)

1

& #37 (people with disabilities) for the P.O.S.T. Basic Academy and subject matter expert question and answer panel member for the P.O.S.T. tele-course on "Handling Violent Subjects" I & II, I have reached the following opinions and conclusions beyond a reasonable degree of professional certainty:

> The basic peace officer training course is broken down into forty-three (43) Learning Domains. A Learning Domain is a specific functional area of learning for a basic peace officer. Each Learning Domain has a set of objectives that the peace officer trainees must complete. ( Being a member of The Commission on Peace Officers Standards and Training (P.O.S.T.) subject matter expert committee on use of force - member writer of Learning Domain #20 (use of force), #24 (handling disputes/crowd control), #33 (arrest and control), #35 (firearms) and #37 (persons with disabilities) for the P.O.S.T. basic academy)
>
> All peace officers in the State of California must master the forty-three Learning Domains and meet each objective before they can be certified as a peace officer through one of the P.O.S.T. (Commission on Peace Officers Standards and Training) certified training academies. (Being a member of The Commission on Peace Officers Standards and Training (P.O.S.T.) subject matter expert committee on use of force - member writer of Learning Domain #20 (use of force) #24 (handling disputes/crowd control), #33 (arrest and control), #35 (firearms) and #37 (persons with disabilities) for the P.O.S.T. basic academy)
>
> The City of Stockton sends their officers to P.O.S.T. certified police academies which meet and exceed the standards set by P.O.S.T. (My training and experience as a police officer and supervisor for 16 years - my work as an expert witness on police practices cases for the past 38 years - working as a police physical skills and classroom instructor and instructor trainer for 48 years)
>
> Officers Hess and Edens had reasonable suspicion to turn around and follow Mr. Cooke's vehicle when they observed it traveling at a high rate of speed on Bianchi. When Cooke walked quickly away from his vehicle and disobeyed Officer Hess's lawful command of "hey, come hear" the Stockton officers had probable cause to contact and arrest him for dealing their investigation. (148 PC - Smith v. City of Hemet No. 02-56445 (9th Cir. 1/10/05) - Evans v. City of Bakersfield Cal App 5 Dict,;1994 N0. F016745)
>
> It was reasonable for Officer Edens to pursue the now fleeing Cooke and when they encounter a closed wrought iron gate and Cooke turned toward Officer Edens, it was reasonable for him to draw his firearm and challenge Cooke to the ground and then to re-holster it when he saw Cooke's hands and gets ready to go hands on with Cooke as Officer Hess gets to their location. Both officers are now telling him to get on the ground as a part of the arrest process, but he is not complying. The officers had additional probable cause to arrest Cooke when he would not get on the ground. (Smith v. City of Hemet No. 02-56445 (9th Cir. 1/10/05 - 148 PC)

A peace officer may use reasonable force to effect an arrest, to prevent an escape or to overcome resistance. The officer need not retreat or desist from his efforts by reason of the resistance or threatened resistance of the person being arrested. An individual can not pull away from an officers hands on attempt to detain them. An officer's use of force is judged under the objectively reasonable standard, would an officer of similar training and experience; given the same information and situation; choose the same course of action. Officers are not required to use the least intrusive degree of force possible, but rather required to use reasonable force. Whether officers hypothetically could have used less painful, less injurious, or more effective force in executing an arrest is simply not the issue. (835a of the Penal Code; Graham v. Connor (109 S. Ct. 1895 (1989)); Forrester v. City of San Diego, 25 F. 3d 804 (9th Cir. 1994))

With respect to the use of force, it is a trained technique, P.O.S.T. approved, departmentally approved, meets the reasonably well trained officer standard and a reasonable use of force for the Stockton officers to take Mr. Cooke to the ground to handcuff him for the interfering and resisting offenses. (L.D. 20 - L.D. 33 - Anderson v. Creighton 483 U.S. 635, 107 S. Ct. (1987) - Tatum v. CCSF CV02-04785 SBA (9th 4/2/06) - U.S. v. Dykes 03-3122 (District of Columbia Appeals Court) 5/6/05)

Each time Cooke regained a standing posture after being taken to the ground, it was a reasonable use of force to take him to the ground again. It is a trained technique, P.O.S.T. approved, departmentally approved, meets the reasonably well trained officer standard and a reasonable use of force for Officer Hess to use personal body strikes to Cooke's face (fist strikes) to facilitate the control and take down of Cooke. (L.D. 20, Version 3.2, Use of Force, Chapter 2 Force Options, Page 2-6 - L.D. 33, Version 4.1, Arrest and Control, Chapter 1 Principals of Arrest and Control, Chapter 1, Page 1-13 & 1-14 - Anderson v. Creighton 483 U.S. 635, 107 S. Ct. (1987) - Samaan v. Robbins, #96-55672, 97-56683, 97-56684, 97-5524 and 97-55789, 173 F.3d 1150 (9th Cir.1999) - Tatum v. CCSF CV02-04785 SBA (9th 4/2/06) - my training and experience as a police officer and supervisor for 16 years - my work as an expert witness on police practices cases for the past 38 years - working as a police physical skills and classroom instructor and instructor trainer for 48 years)

On the last occasion Officers Eden and Hess were able to get Cooke to the ground, Cooke grabbed onto Officer Hess's leg, wrapped it up and pulled Hess into him which was an assault on Officer Hess. It is a trained technique, P.O.S.T. approved, departmentally approved, meets the reasonably well trained officer standard and a reasonable use of force for Officer Hess to use his flashlight as an improvised and emergency impact weapon to jab Cooke in the ribs to have him release his leg. (Interviews - L.D. 33, Chapter 7, Impact Weapons - working as a police physical skills and classroom instructor and instructor trainer for 48 years - member of P.O.S.T.'s subject matter expert committee on Use of Force -

3

member writer of Learning Domain #20 (use of force), #24 (crowd control), #33 (arrest and control), #35 (firearms) & #37 (people with disabilities) for the P.O.S.T. Basic Academy)

Officer Mohammed arrived as one of the first cover officers and saw the officers struggling with Cooke and Cooke being told to give up his hands and not obeying their lawful commands to do so. It is a trained technique, P.O.S.T. approved, departmentally approved, meets the reasonably well trained officer standard and a reasonable use of force for Officer Mohammed to use his baton to jab Cooke in the back to assist the other officers in getting Cooke's hands to control and handcuff him. Once it appeared that Cooke was giving up his hands Officer Mohammed stopped using his baton. (Interviews - L.D. 33, Chapter 7, Impact Weapons - working as a police physical skills and classroom instructor and instructor trainer for 48 years - member of P.O.S.T.'s subject matter expert committee on Electronic and Projectile Weapons and Use of Force - member writer of Learning Domain #20 (use of force), #24 (crowd control), #33 (arrest and control), #35 (firearms) & #37 (people with disabilities) for the P.O.S.T. Basic Academy)

Officer Manor was also one of the cover officers, as he got to the location of the arrest he saw the struggle with Cooke and the other officers unable to control him or get his hands, he told Cooke to give up his hands, but Cooke is tucking them underneath himself. Manor did not know if Cooke was going for something (a weapon). It is a trained technique, P.O.S.T. approved, departmentally approved, meets the reasonably well trained officer standard and a reasonable use of force for Officer Manor to use his baton to strike Cooke in the side to assist the other officers in getting Cooke's hands to control and handcuff him. (Interviews - L.D. 33, Chapter 7, Impact Weapons - working as a police physical skills and classroom instructor and instructor trainer for 48 years - member of P.O.S.T.'s subject matter expert committee on Electronic and Projectile Weapons and Use of Force - member writer of Learning Domain #20 (use of force), #24 (crowd control), #33 (arrest and control), #35 (firearms) & #37 (people with disabilities) for the P.O.S.T. Basic Academy)

Officer Guerrero arrived and was also involved in the struggle with Cooke. Cooke would not give up his hands and was pushing himself up off of the ground with other officers on his back. Officer Guerrero thought he might be attempting to obtain some type of weapon. It is a trained technique, P.O.S.T. approved, departmentally approved, meets the reasonably well trained officer standard and a reasonable use of force for Officer Guerrero to use personal body strikes to Cooke's lower back (fist strikes) to facilitate the control and and handcuffing of Cooke. (L.D. 20, Version 3.2, Use of Force, Chapter 2 Force Options, Page 2-6 - L.D. 33, Version 4.1, Arrest and Control, Chapter 1 Principals of Arrest and Control, Chapter 1, Page 1-13 & 1-14 - Anderson v. Creighton 483 U.S. 635, 107 S. Ct. (1987) - Samaan v. Robbins, #96-55672, 97-56683, 97-56684, 97-5524 and 97-55789, 173 F.3d 1150 (9th Cir. 1999) - Tatum v. CCSF CV02-04785 SBA

(9th 4/2/06) - my training and experience as a police officer and supervisor for 16 years - my work as an expert witness on police practices cases for the past 38 years - working as a police physical skills and classroom instructor and instructor trainer for 48 years)

During the contact with Cooke, he did not follow lawful commands to stop resisting and give up his hands. He continued to struggle with the officers and it took several officers to finally handcuffing him. During the struggle and before being handcuffed Cooke had not been searched for weapons and posed a potential threat to all of the officers at the scene. (My training and experience as a police officer and supervisor for 16 years - my work as an expert witness on police practices cases for the past 38 years - working as a police physical skills and classroom instructor for 48 years)

Peace officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation. The contact with Mr. Cooke was tense, uncertain, and rapidly evolving. When he was first seen by Officer Edens he immediately turned and walked towards him and refused to get on the ground, disobeying Officer Edens ' lawful order to do so. The entire contact with Mr. Cooke lasted approximately 3 minutes (Graham v. Connor (109 S. Ct. 1895 (1989)) - Bryan v. McPherson 2009 WL 5064477, 11 (C.A.9 (C.A.9 (Cal.),2009) - incident report - my training and experience as a police officer and supervisor for 16 years - my work as an expert witness on police practices cases for the past 38 years - working as a police physical skills and classroom instructor on use of force and laws of arrest for 48 years - CAD)

The three core factors examined by the 9th Circuit to determine the objective reasonableness of force used by peace officers and taught to officers is to look to the seriousness of the crime; does the subject pose an immediate threat to the officer or others and is the subject actively resisting or attempting to flee. Mr. Cooke posed an immediate threat to the officers when he turned toward Officer Edens and refused to get on the ground. He actively resisted the officers attempts to contain, control and arrest him by physically resisting and attempting to regain a standing posture. (Graham v. Connor (109 S. Ct. 1895 (1989)) - Bryan v. McPherson 2009 WL 5064477, 11 (C.A.9 (C.A.9 (Cal.),2009) - incident report - my training and experience as a police officer and supervisor for 16 years - my work as an expert witness on police practices cases for the past 38 years - working as a police physical skills and classroom instructor on use of force and laws of arrest for 48 years)

The "Safe Wrap" is a spplemental restraint device used by many law enforcement agencies nation wide. It places the subject in a seated position making it impossible to be placed face down. ("Safe Wrap" Instructor - my training and experience as a police officer and supervisor for 16 years - my work as an expert witness on police practices cases for the past 38 years - working as

a police physical skills and classroom instructor on use of force and laws of arrest for 48 years)

The City of Stockton's Police Department's training and supervision meet and exceed a reasonable standard of care and the industry standard. Their policies and procedures meet the industry standard and are in compliance with State and Federal Statutes and reflect current case law. (My training and experience as a police officer and supervisor for 16 years - my work as an expert witness on police practices cases for the past 38 years - working as a police physical skills and classroom instructor and instructor trainer for 48 years - being a member of The Commission on Peace Officers Standards and Training (P.O.S.T.) subject matter expert committee on use of force - member writer of Learning Domain #20 (use of force), #24 (crowd control), #33 (arrest and control), #35 (firearms) & #37 (people with disabilities) for the P.O.S.T. Basic Academy)

Attached please find my resume, which outlines my qualifications and publications I have authored; my fee schedule and a listing of the cases I have testified as an expert in for the last four years.

At this time I plan on using no exhibits during my testimony. I also reserve my right to use any of the materials supplied to me as an exhibit.

Sincerely:

D.S. Cameron;
Cameron Consulting