# Roger A. Clark

## Police Procedures Consultant, Inc.

10207 Molino Road.  Santee, CA 92071
Phone: (208) 351-2458,  Fax: (619) 258-0045
rclark9314@aol.com

May 15, 2017

Mr. Ben Nisenbaum, Esq.
Mr. James A. Cook, Esq.
Mr. John L. Burris, Esq.
Law Offices of John L. Burris
7677 Oakport Street, Suite 1120
Oakland, California 94621

**Regarding:   *Breanna Cooke, et al., vs. City of Stockton et al, Case No. 2:14-cv-00908-KJM-KJN.***

Dear Counsel:

Thank you for retaining me to analyze and render opinions regarding the April 12, 2012 use of force, arrest, and subsequent death of Mr. James Cooke (Mr. Cooke), by Stockton Police Department (SPD) Officers Jeremy Edens (Officer Edens), Kevin Hess (Officer Hess), Gabriel Guerrero (Officer Guerrero), and Irshad Mohammed (Officer Mohammed).  I have studied, photographs, SPD reports, autopsy report, use of force report, depositions and other materials provided to me thus far (as listed below) regarding this case.  Please be advised that if/when any additional information is submitted additional opinions may be required.

It is also necessary to state at the beginning of expressed opinions thus far that I have not made credibility determinations in expressing my opinions.  That is, where there are differences in the events proffered by the SPD Officers and/or other witnesses, versus the incident as proffered by witnesses, I do not opine for the trier of fact regarding who is the more believable witness.  The resolution of any such conflicts is obviously the purview of a jury to decide.

## Materials Reviewed Thus Far:

1.      Complaint for Damages.

2.      Werner U. Spitz, M.D, Forensic Pathology and Toxicology, Report, February 28, 2017.

3.      San Joaquin County Office of the Coroner, Bate Stamped, COS000175-COS000214.

4.      Stockton Police Department Index, Bate Stamped, COS000001-COS000279.

5.      Stockton Police Department Administrative Narratives, Bate Stamped COS000280-COS000395.

6.      Deposition Transcripts:
        a.      Officer Jeremy Edens, February 2, 2017.
        b.      Officer Kevin Hess, February 2, 2017.
        c.      Officer Gabriel Guerrero, February 3, 2017.
        d.      Officer James Manor, February 3, 2017.
        e.      Officer Irshad Mohammed, February 3, 2017.

7.      Training Video produced by the Georgia Bureau of Investigation: "Preventing Restraint Asphyxia."

8.      Training Video produced by the New York Police Department: "Best Practices, Positional Asphyxia."

9.      The Los Angeles Police Department Training Bulletin: "In-Custody Deaths," July 1999.

10.     California POST Basic Learning Domains as follows:
        a.      #1."Leadership, Professionalism & Ethics."
        b.      #2:  "Criminal Justice System."
        c.      #3:  "Policing in the Community."
        d.      #5:  "Introduction to Criminal Law."
        e.      #15: "Laws of Arrest."
        f.      #20: "Use of Force."
        g.      #21: "Patrol Techniques."
        h.      #23: "Crimes in Progress."
        i.      #33: "Arrest Methods/Defensive Tactics."

j.   #34: "First Aid and CPR."
k.   #37: "People with Disabilities."

11.   Images of the incident scene via the internet.


## Brief Overview of Events and Commentary:

In April of 2012, Mr. Cooke was 57 years old and residing in the Stockton, California area.  Mr. Cooke was not on probation or parole.  Mr. Cooke was unarmed when confronted by SPD Officers.  The incident resulted in Mr. Cooke being beaten, smothered, and dying by way of asphyxiation (per his autopsy).  The following briefly outlines the incident, and the level of force used against Mr. Cooke by SPD Officers Guerrero, Hess, Mohammed, and Edens.


## Incident:

On April 12, 2012, at approximately 1:48 a.m., Mr. Cooke was driving his Lexus alone west on Bianchi Road, in Stockton California.  Given the time of the morning, it was likely that Mr. Cooke was traveling at a safe speed for the condition of the road.  Mr. Cooke had not trespassed the center lane divider, had not hit a curb, and was not causing any other motorist any danger.

As Mr. Cooke traveled west on Bianchi Road, Officers Edens (who was the passenger) and Hess were driving east on Bianchi Road, and had just passed 1633 E. Bianchi Road (the Torcello Apartments).

As they drove past the Torcello apartments, they noticed Mr. Cooke, whom Officers Edens and Hess have stated, was driving in excess of the speed limit.  However, as noted above, the Officers did not observe an accident, swerving, or any lane-divider infractions by Mr. Cooke.  Nonetheless, Officer Hess immediately performed a u-turn and pursued Mr. Cooke's Lexus.  It should be noted that Officer Hess never activated his overhead emergency lights or siren.

After making a u-turn, Officer Hess observed Mr. Cooke turn right into the Torcello Apartments.  According to Officers Edens and Hess, as they entered the Torcello Apartments, Mr. Cooke alighted his Lexus and began to leave the area.

Officer Hess ordered Mr. Cooke to stop, but Mr. Cooke ran from the officers on foot - possibly because he suspected that there was a warrant for his arrest.

Officers Hess and Edens chased Mr. Cooke west, through a narrow passage (which emptied into the south western end of the complex). Officer Hess lost sight of Officer Edens and Mr. Cooke. Officer Edens (now alone) caught up with Mr. Cooke, and ordered Mr. Cooke to get on ground and show his hands. At this point in the sequence of events, Mr. Cooke was standing near a wrought-iron fence that demarcated the apartment property line and East Bianchi Road.

According to Officer Edens, he drew his handgun and pointed it at Mr. Cooke. However, Officer Edens has testified that he observed that Mr. Cooke was not armed, and re-holstered his handgun.

Mr. Cooke allegedly began to walk toward Officer Edens and stated that he (Mr. Cooke) suffered from diabetes. Officer Edens stated that he heard Mr. Cooke say that he (Mr. Cooke) had diabetes.

Shortly after Mr. Cooke announced that he suffered from diabetes, Officer Hess caught up to the Officer Edens and Mr. Cooke, and then the two Officers began to physically struggle with Mr. Cooke. Officer Edens took control of Mr. Cooke's right side, and Officer Hess took control of Mr. Cooke's left side.

It should be noted here that neither Officer Edens nor Officer Hess testified that Mr. Cooke uttered any threats or feared that Mr. Cooke was attempting to arm himself. Furthermore, no Officer was injured by Mr. Cooke during the entirety of the incident.

As Officer Edens struggled to take Mr. Cooke to the ground, he was able to trip Mr. Cooke. When Mr. Cooke lost his balance, and after attempting to regain his balance, he stumbled forward and rammed into the wrought-iron fence.

The Officers again engaged Mr. Cooke. As the Officers continued to struggle to take Mr. Cooke to the ground, Officer Hess struck Mr. Cooke in the face with his close-fisted right hand. After punching Mr. Cooke in the face, the Officers were able to force Mr. Cooke to the ground. After forcing Mr. Cooke to the ground, the Officers climbed atop Mr. Cooke, who was prone, and attempted to handcuff him.

As Officers Hess and Edens lay atop Mr. Cooke, Officers Mohammed and Guerrero (K-9 unit) arrived and joined Officers Edens and Hess. Officer Hess allegedly ordered Mr.

Cooke to show give up his hands, but alleged that Mr. Cooke held his hands under his body.  Officer Cooke delivered two to three flashlight strikes (Officer Hess characterized them as "jabs") to Mr. Cooke's ribs.

Next, Officer Mohammed delivered three to four baton strikes (Officer Mohammed characterized the strikes as "jabs") between Mr. Cooke's shoulder blades.  I have noted that the autopsy results reported deep contusions and subcutaneous hemorrhages to Mr. Cooke's body, head, and neck.  In my experience, it is very unlikely that a slight "jab" would induce such serious subcutaneous hemorrhaging.

After being struck with fists, batons, and flashlights, Officer Guerrero handcuffed Mr. Cooke.  After being placed in handcuffs, the cocoon stated that Mr. Cooke continued to thrash about, and they ordered a WRAP (a cacoon-style total body restraint) for Mr. Cooke.  Officer Hess ran to his patrol car, retrieved the WRAP, gave it to Officer Paul Dona, and Officer Dona gave the WRAP to the several Officers atop Mr. Cooke.

The WRAP was placed on Mr. Cooke, and Officer Edens sat Mr. Cooke up.  It appears that even though Mr. Cooke was handcuffed, Officers continued to remain atop him for several minutes while they awaited the WRAP and during the application of the WRAP.  After the application of the WRAP, Mr. Cooke was placed face down in the back of a the patrol car.

Instead of summoning emergency medical care to respond to the scene, Officers Hess and Edens drove Mr. Cooke to San Joaquin County General Hospital, without stopping to check his medical condition.  Mr. Cooke was unconscious and apparently deceased by the time he arrived at the hospital.  Emergency personnel were unable to revive Mr. Cooke.  Mr. Cooke was pronounced dead shortly after arriving at the hospital.

Mr. Cooke died of asphyxiation due to City of Stockton Police Officers' excessive use of force and subsequent failure to provide life-saving medical attention.  During Mr. Cooke's autopsy, the forensic pathologist discovered a hemorrhage of the deep scalp tissue and underlying temporalis muscle, consistent with receiving a violent blow to the head.

**Doctor Werner Spitz's Finding:**

"A second autopsy was performed at the request of the family on April 18,2012. The findings at the second autopsy were essentially those of the

first autopsy. The cause of death was not determinable at the second autopsy."

"Based on the above, it is evident that James Cooke was severely beaten during the arrest, including on the head and back causing extensive painful injuries, all occurring when he was stopped for a traffic violation. At autopsy, there were petechial hemorrhages in the conjunctivae of the eyes. consistent with neck or chest compression and asphyxiation. The multitude of injuries and their severity resulted in interference with the ability to breathe and blood flow to and from the brain."

"Anytime there is any interference with breathing, air hunger, dyspnea and resistance to the utmost, culminate in conscious pain and suffering with fear of death and people fight to enable breathing with all they've got. At that time, it is a fight to remain alive.
James Cooke lost the fight; he died from the consequences of oxygen deprivation, sensitizing the heart to arrhythmia. Thus, he was found unresponsive, not breathing, absent pulse, dead, when he was taken out of the patrol car."

"But for the restraint on April 12,2012, James Cooke would not have died. Current life expectancy is estimated at about 85 years by the major life insurance companies and the CDC."


**The Positional or Restraint Asphyxia Occurrence:**

Every day, police officers encounter situations that require them to restrain persons.  As a national standard, police officers are taught that it is imperative that only the force necessary to make an arrest or subdue a combative or resistive person may be used.  This is because officers are responsible at all times for the safety and well being of persons they take into their custody, as well as for their own safety and that of bystanders and persons who are improperly restrained can suffer severe injury or death.

Properly trained officers learn how improper restraining techniques can block the flow of air into the individual's lungs contributing to a life-threatening condition known as Positional, or Restraint, Asphyxia.  Proper training also covers the multiple effective options available such as avoiding compression of the chest, rolling the subject over on his side, sitting or standing the subject up, proper hobbling methods (which excludes hogtying), sitting the subject in the police unit, etc.

Just restraining someone in a face-down position with their hands handcuffed behind their back is not generally sufficient in and of itself to cause sudden and unexpected death. Chest compression, the presence of illegal drugs such as cocaine or methamphetamine and the fact that many victims of positional/restraint asphyxia have been involved in physical exertion prior to their restraint all work together to result in a scenario that can cause a sudden and unexpected death. Key risk factors include all or some of the following conditions:

- Obesity.
- Pre-existing medical conditions such as heart problems or head and neck injuries.
- The length of any struggle.
- The physical environment in which the struggle takes place.
- Whether the suspect suffers from a mental condition.
- Whether the suspect has been drinking alcohol.
- The presence of depressant or stimulant drugs (substances such as cocaine and methamphetamine.
- The age of the person.

Experts have stated that excessive restraint, combined with one or more of these factors, can wreak havoc on the cardiovascular and respiratory systems.

Properly trained officers know that breathing requires two actions: Increasing the size of the chest by expanding the ribs, and contracting the diaphragm, allowing air to fill the lungs. When a person is lying face down, performing both of these functions can be more difficult. The contents of the abdomen are pressing against the diaphragm, especially for people the age of Mr. Cooke. In order to raise the ribs or use the diaphragm when forced into a prone position, the weight of the body must be lifted. An officer kneeling or lying on the individual's back (as Officers Hess, Edens, and Geurrero did), aggravates the situation because the additional weight of the officer(s) must be lifted along with the weight of the persons' body. The greater the weight or more intense the compression, the harder it becomes to breathe. As a result, the suspect struggles more violently, and the untrained or incompetent officers respond by using more force. With no reserve oxygen left and unable to take deep breaths, the individual slips into unconsciousness and in minutes could be dead.

As stated above, the majority of positional or restraint asphyxia incidents have occurred after physical exertion and struggle. Both of these activities stress the heart and lungs, depleting reserve oxygen stored in the muscles.

Competently trained officers know this scenario can be easily avoided by using proper restraint techniques and following simple guidelines that are key to the possibility that a struggling subject could be in danger of death due to positional or restraint asphyxia.  One of the most important of these factors is the longer the physical contact, the more fatigued the body will become.

Further, officers are trained that they must act quickly to return the subject to an upright position, especially when risk factors are present because the restraint techniques used could mean the difference between life and death.  Basic guidelines include avoiding placing weight on the neck or back, avoiding "straddle" positions and "pile-ons," and immediately positioning the subject so he can breathe.

Lastly, officers are taught that it is not possible for a law enforcement officer to actively determine who is at risk for sudden and unexpected death while suspects are being restrained.  As a consequence, the law enforcement officer must assume that any person being restrained presents a risk of sudden and unexpected death.  The risk that restraint asphyxia and accidental death will occur is only controlled by using proper restraining techniques.

### Officer Mohammed's Statement (8/3/2017)

"Okay, we were at Bianchi and Claremont. We heard Officer Edens come up on the radio.  It just came over as the identifier, but you could tell he was out of breathe and in some sort of struggle.  I immediately pulled up his unit history to try to figure out where they were at.  It showed their last location as West Lane and Bianchi on a traffic stop, so we turned around.  We were actually going west bound at the time to respond to them.  He came up again and said they needed additional units, so my partner was driving and turned on the sirens and started code 3.  Our impression was that there was some kind fight or struggle.  We responded code 3 down E Bianchi.  Edens put out that they are at an apartment complex to the east of West Lane.  So once we got past West Lane, we did not see the patrol car so we tried to figure out where they were at. Eventually, we saw one of them using their flash light to indicate where.  They were on the opposite side of a fence at an apartment complex.

"We got out of our patrol car and walked to the fence.  They yelled that to get to them we needed to go around.  We ran around to find the complex

where their patrol car was, and I came into the complex to where they were at. Officer Guerrero was in front of me so he kind of got on the opposite side of the suspect, kind of between the fence where he was. Officer Edens was on my left and Officer Hess was on the right. Edens was near the upper body, Hess was on the lower legs. I could tell they were struggling with the guy's legs. I heard both my partner and one of the officers, I'm not sure who, say give me your hands, give me your hands. Officers were trained that those hands are the most dangerous thing in any kind of struggle. You know one of our officers was shot last month. So my immediate concern was try to help them to get his hand from under him, due to the fact they were kind of close quarters, you know obvious that mace was not an option and I don't have a laser. I decided my best option would be to use my baton for some kind of pain compliance something like a poke or a jab to the suspects back, in between the shoulder blades, about 3 or 4 times. At that point it seemed like the arm was kind of giving up and so he kind of rolled over a little more, completely faced down, the arms started coming out so I stopped using my baton. I think they got control of one arm, one was inside the body hidden, but the other hand I guess got free, because I heard him yell give me your hands, give me your hands.

"By the time more officers were responding to help, after that point, I did not feel it appropriate to use the baton, there was too many people around. I did not want to hit another officer. Eventually, we took him into custody. He's was still struggling when officers told him not to kick. He was also bleeding, could see some blood on his hands, and I saw some blood on his mouth. We all had to put gloves while we held him down because he was still struggling. Since he kept trying, somebody said they were going to get the wrap, went to get a wrap. I assisted a little bit in applying the wrap, mainly just kind of holding him down that way they could apply the leg restrains, and leg restraints. Then I let go of him, seated him up, and placed the remaining restrains on him. After , that he was picked up, placed into the back of the patrol car, started calling FET, and figure out what was going to I happen after that." (Bate Stamped, COS000081-COS000082)

## Officer Hess' Statement

"I was driving the patrol car and my partner was in the passenger seat. We were going east bound on Bianchi Rd. and uh I noticed the vehicle driving west bound on Bianchi.

"And uh, it was obvious to me that he was driving at a high rate of speed. He was turning at Bianchi if your going east bound the curve starts to head north bound. He was coming around that curve and as he was going fast enough to where I could see the car pulling out of his lane. And so he passed us, I immediately made a u-turn to get behind the vehicle to pull it over. When I made the u-turn and started heading west bound on Bianchi, the subject pulled into the first apartment complex to the right which would be on the north side of the street. I followed it into the complex and it parked in the first parking stall that was available. The driver immediately stepped out of the car. I did not have time to turn on my overheads, but I hit the spot light on the driver. And both my partner and I jumped out of the car. I yelled at him, "stop police, you know, get back over here". He turned and looked at me and then looked to the right.

"There was an ally way that went between two buildings, and he took off running down the ally way. My partner, Officer Edens, beat me to the chase. He was in front of me chasing the guy down the ally way. I started to run following my partner, probably 15, 20 feet, behind my partner. At this time, I went to grab my mic to call out the traffic that we were in a foot pursuit. I typically have my lapel mic on, but we have a shortage of mics right now, so I didn't. Instead of grabbing my radio, I just continued to chase the subject when he reached the .... I can see him stop, and kind of look around like he had hit a dead end or something. And then headed to my left which would be to the south, and then my partner rounded the corner to. I lost sight of both of them for a few seconds. When I come around the corner, I could hear Jeremy yelling, you know, "let me see your hands, let me see your hands, get down on the ground." And then that's when I came around the corner and I saw him. By this time, my partner was approaching the subject. This subject was looking left, looking right, trying to get over a fence. And my partner grabbed him around the front, and grabbed his shoulder and swung him around. The guy lost his balance and fell head first into a wrought iron gate which is in there, was really no way out, other then just the courtyard area. The fence separated us from Bianchi and he fell into that fence. As soon as he fell into the fence, he yelled. Jeremy and I both jumped on him. Jeremy was kind of on his upper body and I was kind of on his legs/lower back. Both of us were on top of him. The subject pushed up and lifted both of us with our weight on him. Lifted us both off the ground. And was able to stand up, get back to his feet. When he got back to his feet, my partner got in the same position, was swinging him around, kind of dancing with him in that area, trying to get

him down.  I struck the subject in the face with rriy right hand.  And when I did that, you know, he was pushing my partner back towards the wrought iron gate, and I was thinking you know he's going to smash my partner into the fence.  I didn't want my partner to be injured, so that's when I struck him in the face.

"And then, I grabbed his right arm with my partner still have him around the front area and we pulled him to the ground again.  He never went completely flat down onto his stomach.  He was able to hold himself up.  We're still on top of him trying to gain control of his hands, he's yelling "stop resisting, you know put your hands behind your back, give us your hands, stop resisting."  He was able to stand up a third time with us on top of him, and we kind of danced around a bit with him a little bit more, pulled him back down to the ground.  This time when he hit the ground, he reached his right arm and wrapped it around my right leg and kind of got underneath it and was holding me against him.  I'm was on top of him on the right lower portion of him, and my partners on the upper left side of his body, and he's gotten a hold of my leg.  At that time, I pulled my flashlight out and jabbed him a couple of times in the ribs, but it did not really have an effect on the subject.  You know, he's still pulling me closer to him.  So I reach down and grabbed his right arm and squeezed tight, and kind of held him there, and my partner was doing the same thing.  My partner got on the radio the second time, we had him down on the ground, and by this time we had been in the struggle with him for probably I think it felt like at least a good 2 minutes.  I was worn out. I'm still trying to hold him down.  I can hear the sirens.  I knew that help was coming, so I kind of just held that , position, like that wrapped my arm around his arm, and held that way until the first unit showed up.

"When the first unit got there they parked along the street.  I was signaling with my flashlight towards the street, so they would know our position.  I don't remember which unit it was, but they parked and got out, and I yelled to them you have to go around, you have to go around getting to us.  And so and the guy that we were holding down is still trying to push up and squeezing my leg, and his feet he was trying to get back up again.  He had been kicking with his feet.  And by this time, the other two man car, there was two officers that showed up.  I did not see who it was.  One of the officers did a couple of jabs with their batons in the rib area, on the same side which I was hitting with my flashlight.  And at that time, he released my leg, finally.  So he released my leg and after the baton strike fell actually

flat on the ground.  He was not able to hold himself up anymore, but had his arms still not giving us his hands.  We're still you know giving commands, show us your arms, you know give us your arms, stop resisting, stop resisting.  And he's screaming and still moving back and fourth, and kicking his feet.  And uh finally we were able to pull the right arm out and when they pulled the right arm out um there was so many there I don't remember the number of officers that were there, but there was enough there to where I kind of step back, because I was I was tired you know and then I kind of stayed near the his feet area.  And while they're handcuffing him, he was still kicking up on my legs with his feet, and screaming.  And then uh they got him handcuffed, and uh he still was not calming down.  He was still shaking back and fourth and still kicking his feet.

"I took off and ran towards our patrol vehicle to get a wrap, a safe wrap.  And when I ran out to the patrol vehicle, Officer Dona and [redacted] had just parked.  They were checking their trunk and I was checking my trunk. I found the wrap in my trunk and I handed the wrap to Paul Dona.  He took off with it towards where they were.  And I followed behind and came around the corner where the subject was still laying in the grass area.  Officers were still trying to hold him down.  He was still screaming and still moving back and fourth and kicking his feet still.  And they got the wrap, I did not help, at first.  There was an ankle strap with velcro on it.  They strapped his ankles down below, and then the leg portion of the wrap goes on second and I helped get that underneath his legs, underneath his lower body.  I pulled two of the velcro straps on his legs, and another officer, I did not see who did it, pulled the third strap on.  After I had strapped the leg portion and the two straps on the upper part, and we had his legs contained to where he could not kick anymore, I stepped off of him.  The other officers put the vest that goes on it, and then the other strap that goes from the chest to the ankles, they put that on.  I was just kind of standing back.  Then it took 3 or 4 officers, they picked him up and carried him out to the patrol vehicle.  At that point, I didn't see what was going on.

"I walked over to the vehicle which the subject got out of, and I got on the radio and memoed the plate into the call.  I kind of started shinning my light into the vehicle, looking into the vehicle.  They had gotten the subject in the back of the patrol car.  When Sergeant [redacted] arrived, they were trying to get an idea on the subject by Blue Check.  And when they were doing that, Sergeant [redacted] asked an Officer [redacted] you know, is he still okay in there?  Is he still okay?  And I can heard, Officer [redacted] say

yeah he's still breathing, he's good.  They finally got the fingerprints of the guy through the blue check.  Sergeant [redacted] told us to take the guy to county hospital, and we got into the car and drove him to the county hospital.

"We got to the county hospital, I parked and my partner ran inside the county hospital to get a gurney or a wheel chair that we could put him in so we did not have to carry him into the county hospital.  While he ran into do that, I opened the passenger door on the driver side, where his back was against, how they put him in the patrol car.  And I opened the door and started talking to him, but he did not say anything,  I looked down at his chest to see if I could see movement for breathing, and I did not see any movement from breathing.  I check for a pulse, but I could not find a pulse.  At that time Jeremy, my partner was coming out of the county hospital and said, there coming out with a gurney.  He did not know, that I don't know, if he realized that the guy was not breathing.  And so I said, hey, I don't think this guys breathing.  I had tried tugging on the guy to get him out of the car, but he was too big of a guy, and how he was in there, I could not get him out of the car by myself.  I ran inside the county hospital and the nurses were right there at the sliding door.  There's a little two door entrance, and they were there.  I told them, I don't think this guy's breathing, I don't think he has a pulse, and they ran out to the back of the car.  Jeremy and I had to pull him out of the car.  We put him on the gurney, and started undoing the safe wrap.  We only undid the strap that goes from the chest area to the ankle area.  We undid that so he laid flat onto the gurney.  And then they immediately rolled him into the emergency room and started doing CPR on the subject.  While they were in the middle of doing CPR, I pulled the bottom portion of the safe wrap off and then and then that was it.  We had to get out of their way, because they were still, they were working on him.  And then, we stood back and I advised Sergeant [redacted] of the gentleman's condition and then I let him know that I appeared that he's in full arrest and they were doing CPR on him.  Sergeant [redacted] told me to stand by until he got out there."  (Bated Stamped, COS000058-COS000059)

## Officer Edens' Statement

"We just finished a traffic stop at Bianchi just east of West Lane.  We were going east bound on Bianchi when we saw another vehicle coming at us in opposite direction.  It appeared to be going at a high rate of speed around

the curb right there.  I don't know if you're familiar with the roadway.  It was close to ljams.  Right in this vicinity.  Right here. (referring to a map of the area.)

"My partner whipped the patrol car around and tried to catch up to it.  I ran the license plate.  When we caught up to the car, it immediately pulled into the apartment complex.  I believe this is it. (Referring to the map)

"And into the parking lot near the gate, but didn't appear to be doing anything to try and get through the gate.  Which seemed like he was trying to avoid us.  Then it quickly pulled around from the gate and parked.  Kevin was going to make a traffic stop for speeding when the guy jumped out of the car.  Kevin shined the spot light on him and said, "hey, come here."  The driver kept walking away quickly, looking over his shoulder.  And I don't see a gate (referring to the map)

"I don't see it.  I think this is where, okay, so somewhere in here he started walking on the pedestrian path. (referring to the map).  Kevin said, "hey come here, stop."  And right when he hit the corner, he started running.  Kevin said, "here he goes, he's running."  So I jumped out of the passenger side and ran after him and pursued him down the pedestrian path which abruptly came to a dead end at a wrought iron.  It was like a pedestrian gate.  It was all enclosed decorative wrought iron, kind of dark, and half of it.  So we both came to an abrupt stop because we hit the dead end.  I pulled my weapon out, my duty weapon, and pointed at him.  I said get down to the ground.  He would not get down on the ground and started walking towards me.  There was not a lot of room and he was walking towards me, as I pulling my weapon out.  I felt a little spooked.  I didn't know Kevin was with me yet or not.  And then, about that time, I could see his hands.  I went to try to holster my weapon as I put my hand out to keep distance, but also get ready to put both hands of him.  About that time, Kevin caught up. we both got our hands on him.  We're telling him to get down on the ground, but he wasn't getting down on the ground.  And we were both pulling on him, trying to pull him down.  He was just..., the grass was slippery, we were just all over the place.  And on the grass, finally at the end, when I got my right leg behind him.  I threw my right arm up over his shoulder neck area and pulled him to get him off balance.  He finally started to come down, but he caught his feet as he was coming down and stumbled head long into the wrought iron pedestrian gate that was there.

"And stumbled, when down, his head hit the lower part of the wrought iron pedestrian gate. Then we go on top of him. We're trying to gain control of him and keeping him to the ground. He was pushing up against us. He was able to get back up again. And then the same situation, we're pulling on him trying to get him back down. I was behind him pulling on him and it did not help that the grass was moist. And then it appeared that my partner might have, I could see his arm moving, and it looked like his head, the individuals head was between us, but it looked like he might have hit him a few times up here and I felt something graze my head. We got him back down and then same situation trying to get his arms. He would not give us his arms. We told him to get down on the ground, same thing. And then, he kinda of partially gets back up and begin and we're trying to get him back down. And then I'm on top of him, he's on his belly and would not give up his arms. Kevin is telling him give him his arm, and I don't understand what he's saying, he's saying something that sounded like in another language. I don't know if it's African or what it was, but that's ...

"Then he's saying one word that I did understood, I'm diabetic, I'm diabetic. I said, that's fine, that's fine, get on the ground and relax. Just knock it off, just relax, stay on the ground, and he just kept yelling, and yelling that, and we kept telling him to calm down, and then finally while he's on the ground. I'm on his head, like my chest, I'm laying across, his heads here, and I'm across this way with my head towards my mid-back, and I have one arm wrapped underneath his right arm pit, and the other arm wrapped around over his shoulder neck area on the left side, and I finally lock him with my hands on the chest, and I pull him down here with my body weight. Kevin's on the lower half of him and we're trying to hold him down. Sometime during that, I am able to finally get rny radio out, and air where we were at. We could hear them coming and we're telling him to stay still. Kevin still can't get his arm. And then we heard everybody coming. I told Kevin, flash your light, flash your light so they can see where we are at. An officer showed up at the wrought iron, and I think it was Officer Guerrero. He said how do you get back there, how do you get back there? I said run around just go around run around. And then next thing we know, a bunch of officers come from the foot path where we entered. There was one way in and one way out. And they came in, everyone jumped on him, and helped us hold him down. We asked for a warp, and someone brought us a wrap. Then we all proceeded to put a wrap on him.

"Then after we kind of recollected what was going on, who was going to take care of the car and stuff, we drove him to the county hospital. When we got to the county hospital, we went to unload him, and he seemed unresponsive. So I went inside and I said hey, we got a guy pre-booked he's in a wrap, he seems unresponsive. They thought I was halfway joking, and then said, no really, so they brought the gurney out, and we unloaded him out of the car, and got him up on the gurney, and go him in the hospital and started working on him." (Bate Stamped, COS000041-COS000043)

## Opinions Thus Far:

1.  Taking the Defendant Officers' set of facts as true, that Officers Hess and Mohammed struck Mr. Cooke with batons and flashlights, while Mr. Cooke was piled upon by Officers, then Officers Hess and Mohammed used excessive force. Since Mr. Cooke was 57 years old and out-manned by a number of no less than 6 to 1, and was non-combative, there was no justification for any further use of any physical force. Any use of force after Mr. Cooke's was taken to the ground was contrary to policy and law (as taught by POST).

    Section 149 of the California Penal Code states:

    *"Every public officer who, under color of authority, without lawful necessity, assaults or beats any person, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the state prison, or in a county jail not exceeding one year, or by both such fine and imprisonment."*

2.  Taking the Plaintiff's allegations as true, then all Officers present failed in their duty to intervene and/or stop the unnecessary and excessive force inflicted on Mr. Cooke:

    "The community expects that its peace officers will use only reasonable amounts of force. Likewise, it expects that someone, including peace officers, will intervene if reasonable force is exceeded. For the community and the officer's protection, the officer must know the laws pertaining to intervention.

"Peace officers are required by their position to intervene in any force situation they perceive as excessive."  (POST Learning Domain: #20 "Use of Force," Chapter 6 - Consequences of Unreasonable Force, page 6-7.)

"The United States Constitution protects individuals from unlawful actions of peace officers.  NOTE: The officer who fails to intervene, for whatever reason, is also held accountable by the United States Code."  (POST Learning Domain: #20 "Use of Force," Chapter 6 - Consequences of Unreasonable Force, page 6-8.)

3.    Taking the autopsy as true, Mr. Cooke's was struck in the back of the head by Officer Mohammed, who stated that he struck Mr. Cooke between the shoulder blades, which would have been closest to Mr. Cooke's head, then Officer Mohammed submitted a false police report in violation of SPD policy, POST training and the Law when he stated that he struck Mr. Cooke in the between the shoulder blades, when Mr. Cooke was examined he was found to have had several contusions and blunt force trauma to his head.

"Any officer who knowingly files a false report will be guilty of a crime.  (Penal Code Section 118.1)"  (POST Learning Domain #18: "Investigative Report Writing," page 1-4.)

"All reports are to be true, unbiased, and unprejudiced.  These are easy words to say, but sometimes hard to live by.  It is not always easy to know or find out the truth.  Clearly it is the peace officer's moral obligation to seek the truth, lying is wrong.  *Truth and public trust cannot be separated.*"  (POST Learning Domain #18: "Investigative Report Writing," pages 1-5.  Emphasis Added.)

"When writing a report, the minimum requirements to accomplish your job ethically and preserve the integrity of the criminal justice system are:

"Never falsify any portion of your report or modify any aspect of the report away from the factual truth.

*"Objectively document every fact (or piece of evidence) known to you that could prove or disprove the event you are reporting.  If you are not sure, include the fact or piece of evidence anyway and qualify it as possible evidence or investigative information.*

"Be clear. A well-written report does not raise questions, it answers them.

"Write your report free of speculation or personal opinions. You are there to gather facts.

"You are responsible for the quality of each report you write. Each report is an opportunity to build or destroy your credibility.  Always write precisely what happened to the best of your knowledge.  A report determined by a court to be compromised or unethical not only topples your credibility, but your agency's as well – plus it opens the door to challenge every past enforcement action you have performed. Compromising your report is just not worth it and it will raise questions about your effectiveness as a peace officer and may ultimately lead to termination of your employment.  *It is your obligation to report incidents just as they occurred; anything else is unethical*."  (POST Learning Domain #1: Chapter 2 - "Professionalism and Ethics in Policing."  Emphasis Added.)

4.    I am very concerned at the very significant number of injurious blows inflected on Cooke (as alleged).  As stated above, their necessity must be considered by the "objectively reasonable" standard (as taught by POST).  In this regard, it is necessary to include the POST training given to all officers to consider the very serious consequences of blows to specific parts of the body.  The are identified as follows:

### Parts of the Body Vulnerable to Serious Injury:

Upper body head and neck:  The head and neck region can be vulnerable to severe injury during an attack.

An injury to the skull:  Death.

• a blow to the face area, possibly causing disfigurement,

• a blow to the temple or to the skull at the junction of jaw and ear, possibly damaging major blood vessels, or

• a blow at the junction of head and neck, possibly severing the spinal cord.

Neck area:  Damage to the central nervous system.

• a blow to the back of the neck, possibly displacing vertebrae or severing the spinal cord.

Throat area:  Death.

• a blow to the throat, possibly crushing the trachea or fracturing the cricoid or thyroid cartilage, or
• a fracture to the hyoid bone at the base of the tongue, possibly causing swelling and leading to suffocation.

Spine: Partial or complete paralysis.

• a blow to the spine possibly damaging or cutting the spinal cord.

Kidneys: Circulatory damage.

• a blow to the kidneys (located 3/4 of the way down the back).

Joints: Breakage or permanent injury.

• A blow to the joints (elbows, knees, and ankles).

Groin: Severe pain and internal bleeding and injury to the reproductive organs (for both males and females).

• a blow to the groin or crotch.

(Learning Domain #33: "Arrest Methods/Defensive Tactics,"
page 1-13 and 1-14.)

4.      Given the quality/completeness of the department's use of force
investigation conducted in this incident (that it was justified) vis-a-
vis the apparent excessive use of force as indicated by Mr. Cooke's
numerous and obvious injuries (as listed above), it indicates that the
customs and practices of the Stockton Police Department encourage
their Officers to ignore POST standards and use excessive force.  As
such, their collective approval of these tactics puts the general public
at unnecessary future risk of death and/or injury from Officers Hess,
Edens, Mohammed, and Guerrero, and other Officers on the
department who have been, or are now, similarly trained and/or
supervised.


**<u>Standards and POST Training Regarding the Use of Impact Weapons:</u>**

It appears as uncontested that Mr. Cooke sustained injuries to his head that are consistent
with blunt force caused by baton and flashlight blows.  As stated above, any such use of
force would only be justified as potentially lethal force necessary to counter a significant
and objectively reasonable threat of great bodily harm.  This is also consistent with the
POST training as stated below:

"Every peace officer must understand that an impact weapon (i.e. baton)
should be used only when an officer is acting in a reasonable manner or to
repel and protect in certain tactical considerations."  (Post Learning Domain
#33, page 7-3.)

"A peace officer's impact weapon is a deadly weapon as defined in Penal
Code Section 22210.  In law enforcement, however, to be used in an
authorized manner, it must be used reasonably to repel or protect."  (Post
Learning Domain #33, page 7-3.)

"Illegal use by an officer:

"Any officer who uses an impact weapon against a subject beyond
objectively reasonable (i.e., Graham vs. Connor) force can be criminally
liable under the following statutes."

"Penal Code 149:    Any officer unnecessarily assaulting or beating any person under color of authority."

"Penal Code 245:    Assault with a deadly weapon or force likely to produce great bodily injury."  (Post Learning Domain #33, page 7-4.)

Further, officers are taught (and as recently stated by the 9th Circuit) that among other obvious injuries, the use of the baton can cause deep bruising and clotting that can eventually reach the heart and/or lungs and cause stroke and/or death.  In the matrix of subject behaviors, the use of the baton is justified only as a response to aggressive or combative acts.


## Professional Standards Regarding the Use of Force

Early on in the POST Basic Academy, the seriousness of the unique powers imbued on Law Enforcement Officers is stressed with the required responsibility they have to use them with "great care".  It is clear that there is no room for unprofessional, immature and/or hot-headed individuals in the law enforcement profession.  This is best expressed in Learning Domain # 2: "Criminal Justice System:"

"The criminal justice system gives law enforcement two extraordinary powers:

1.      The power of arrest and
2.      The power to use deadly force.

The authority to do so does not come from the rule of an authoritarian dictator.  Rather it comes from the will and consent of the people who *put their trust in law enforcement to use that power with the utmost of care and restraint*.  This is why it is important to emphasize that peace officers do not confer "police powers" on themselves.  These powers come to the criminal justice system from the people they serve."   (Learning Domain #2: "Criminal Justice System," page 1-4.  Emphasis added.)

Additionally, POST specifies that there are a number of key factors that can affect which force option is approved and appropriate under the concept of the "totality of circumstances."  In view of this incident nothing other than "Officer Presence" and

"Verbal Instruction" were justified in this case.  The standards in this regard  are as follows (reference: POST LD # 20: "Use of Force."  Page 2-5.):

POST defines four categories of behavior and a range of appropriate officer responses to gain control compliance.  They are:

| | |
|---|---|
| Cooperative | All that is required here is officer presence and verbal instruction. |
| Resistive (passive and active) | Firm grip, Control holds and low levels of pain compliance. |
| Combative | Officers have the right to self defense and can use necessary tools (baton, OC spray, taser, etc.) |
| Life-threatening | Officers have the right to self defense and can respond with lethal force. |

Competent police officers are also trained at the POST Basic Academy that the "totality of the circumstances" are an important aspect in the decision to use force and that California law requires that the use of force must meet an "Objectively Reasonable" standard.  The following quotes typify the training:

"A reasonable officer is defined as an officer with similar training, experience, and background in a similar set of circumstances, who will react in a similar manner."  "Unreasonable force occurs when the type, degree and duration of force employed was not necessary or appropriate."(Learning Domain #20: "Introduction to the Use of Force," page 1-4.)

Additionally, an entire chapter in POST Learning Domain #20 is devoted to the "Consequences of Unreasonable Force."  Cruelty and malicious assaults are absolutely forbidden:

Page 22 of  29

"**Unreasonable force** occurs when the type, degree and duration of force employed was not necessary or appropriate."

When the force used is unreasonable, the officer can face criminal and civil liability, and agency disciplinary action."  (Learning Domain #20, page 6-4.)

In this case, it appears, based on autopsy results, that Mr. Cooke sustained deep bruising and hemorrhaging to his neck, and head, which were caused by flashlights and batons. Officers Hess and Mohammed have stated that they used baton, fist, and flashlight blows against Mr. Cooke.

## My Qualifications for Reviewing this Case:

My opinions are based in part on my training, professional experience and education.  I am a twenty seven year veteran of the Los Angeles County Sheriff's Department (LASD). I was hired on December 1, 1965, and I retired from active service on March 31, 1993. My career included six years at the rank of Deputy Sheriff, six years as a Sergeant, and fifteen years as a Lieutenant.  I retired holding a California Peace Officer Standards and Training (POST) Advanced Certificate, and I am a graduate of the POST Command College (class #5).

During the course of my service with the department, I had a wide range of duties.  Those duties included an 18 month assignment as a staff jail deputy and two years as an Administrator/Lieutenant in the same jail facility (Men's Central Jail).  I also served on the department as a patrol officer, field supervisor, jail watch commander and administrator, station watch commander, and commanding officer of investigative units. I was a field training officer while assigned as a patrol deputy, and I trained new officers in POST and department approved patrol procedures, field investigations, apprehension techniques, and emergency procedures.

I was a Station Detective and, as such, reviewed and assessed cases passed on to me by the patrol officers.  Those cases included possible complaints relating to both misdemeanor and felony crimes.  They frequently required follow up investigations and interviews before the exact nature of the case could be determined.  As a field officer and detective, I was trained in interview and interrogation methods and subsequently trained other officers.

Among other assignments as a Sergeant, I supervised field officers and station detectives as they took complaints and conducted preliminary investigations regarding criminal and administrative matters.

As a Sergeant and as a Lieutenant, I served on the training staff of the Los Angeles County Sheriff's Department's Patrol School which taught the POST accepted patrol tactics, and investigation and apprehension methods.

As a Watch Commander and as a Lieutenant, I responded to, investigated, and reported on the use of force and officer-involved shootings. I was also assigned by my Department to sit as a member of Departmental review committees regarding the reasonable or unreasonable use of force and tactics.

As stated above, during my career I was assigned to the Los Angeles County Men's Central Jail (MCJ) for a period of 18 months as a line officer.  Upon my subsequent promotion to Lieutenant, I returned to the same facility approximately 10 years later. During that time, I was assigned as a Jail Watch Commander, and as the Facility Training and Logistics Administrator.  At the time of my assignment, the MCJ held a daily population in excess of 7,000 inmates, including a hospital, which was serviced by a staff of more than 900 sworn and civilian personnel.

During my assignment as the Administrative Lieutenant of the Department's Reserve Forces Bureau, I worked closely with the State of California Peace Officer Standards and Training in revamping our Reserve Academy to bring it into state compliance.  This process gave me an expertise in the POST Basic curriculum.  I also supervised the training of cadets at our Reserve Training Academy.  They were taught proper investigation, interview, and apprehension procedures.  Among other topics, I lectured the Reserve Academy on the POST syllabus: "The Legal and Moral Use of Force and Firearms."

During the 1984 Olympics held in Los Angeles, I was assigned and served as the Department's Intelligence Officer at the Los Angeles Olympics Emergency Operations Center.

During the last five and one half years of my career, I commanded a specialized unit known as the North Regional Surveillance and Apprehension Team (N.O.R.S.A.T.), which was created to investigate, locate, observe and arrest major (career) criminals.  I held this position until my retirement from the Department on March 31, 1993.

Criminals investigated and arrested by N.O.R.S.A.T. included suspects involved with homicide, robbery, kidnaping, extortion, burglary, major narcotics violations and police corruption.  The majority of our cases were homicide cases, including the murder of police officers.  Arrests frequently occurred in dynamic circumstances including crimes in progress.

My unit also conducted major narcotics investigations including undercover narcotics buys, buy busts, and reverse stings.  We frequently deployed at the request of investigative units, such as Narcotics, which provided the initial investigative leads for our operations.  These narcotics cases usually involved multiple kilogram quantities of drugs and amounts of money ranging from one hundred thousand to more than one million dollars.

Approximately 80% of cases assigned to N.O.R.S.A.T. were active Homicide investigations.  In that regard, the unit processed, under my command and supervision, various aspects (depending on the complexity of the cases involved) of approximately 1,000 Homicides ranging from deaths of police officers to serial homicide suspects.

Additionally, the majority of the over 1450 cases for which I have been retained as a consultant (since 1993) have involved injuries or deaths connected with some aspect of force during either apprehension or while in police custody.

During the first three months of my command of N.O.R.S.A.T., the unit had three justifiable shooting incidents.  From that time, and over the next five years of my command, N.O.R.S.A.T. established a remarkable record of more than two thousand arrests of career criminals without a single shot fired – either by my officers or by the suspects whom we arrested.

Many of these suspects were armed and considered to be very dangerous.  Some were apprehended during the course of their crimes and were very prone to use firearms to escape apprehension.  This record of excellence was accomplished through the use of proper tactics,

management and supervision of personnel, training in correct apprehension methods, and adherence to the moral and ethical standards endorsed by California POST and my Department.  These methods and principles are also embraced by every state training commission of which I am aware, as well as the national standards established by the U.S. Department of Justice.

Page 25 of  29

As a result of my position and record as the commanding officer of N.O.R.S.A.T., I was assigned to author Field Operations Directive 89-3, "Tactical Operations Involving Detective Personnel." This order remained in force 20 years (until September 30, 2009), and included the basic standards and considerations with which investigative officers must comply in the event of a tactical deployment such as the dynamic entry into a building for the purpose of an arrest and/or seizure of evidence.

Since my retirement, I have testified as an expert on use of force, jail procedures and jail administration, investigations, police procedures, police tactics, investigative procedures, shooting scene reconstruction, and police administration in Arizona State Courts, California State Courts, Washington State Courts and Federal Courts in Arizona, California, Colorado, Florida, Illinois, Indiana, Louisiana, Missouri, Nevada, Ohio, Oregon, Pennsylvania, Texas, Utah, Washington, New Mexico, and New York. I have testified before the Los Angeles Police Department Board of Rights and the Los Angeles County Civil Service Commission. I have testified before the Harris County (Texas) Grand Jury and the Cleveland Grand Jury. I have also submitted written opinions in matters before Alaska, Idaho, Montana, North Carolina, Oregon, Kentucky and Wyoming Federal and State Courts. I was selected (January 20, 2007) to present on the topic of: "Police Experts" at the National Police Accountability Project held at Loyola Law School, Los Angeles, California. I was selected (September 23, 2010) to present on the topic of: "Using POST Modules to Establish Police Officer' Standard of Care" at the National Police Accountability Project, National Lawyers Guild Convention, in New Orleans, Louisiana. I was selected (March 30, 2012) to present to the Kern County Public Defenders in Bakersfield, California, on the topics of "Ethics, Police Investigations, the California POST Curriculum, and the M26 and X26 Taser weapons." On August 7, 2013 I was invited and presented to the Texas Civil Rights Project (TCRP) 2013 Annual Legal Summit in Austin, Texas on the topic: "Ethically Working with Experts from the Prospective of a Police Expert." On October 15, 2015 I was the invited presenter at a Community Forum in Victorville, California on the topics of Police Procedures, Community Policing, Use of Force, and features of the M26, X26 and X2 Taser weapons.

I have worked on several projects with the Paso Del Norte (El Paso, Texas) Civil Rights Project and the Texas Civil Rights Project (Austin, Texas). As a result of my expert testimony in *Border Network, et al. v. Otero County, et al.*, Case No. 07-cv-01045 (D.N.M. 2008), a federal court issued a temporary injunction to stop the illegal and widespread immigration raids in Chaparral, New Mexico, implemented pursuant to Operation Stonegarden. The case resulted in the adoption of a model policy for inquiring into a person's immigration status, which has been adopted nationwide and has also been presented to the United States Senate, the Secretary of Homeland Security, and other government officials seeking to reform immigration enforcement.

I have been recognized, and my expert report was quoted by, the United States Court of Appeals for the Ninth Circuit as an expert in Police Administration and Use of Force in *Blankenhorn v. City of Orange, et al.*, 485 F.3d 463, 485 (9th Cir. 2007). The Ninth Circuit also drew from my expert report in a second published case involving Police Detective Investigations. *Torres, et al. v. City of Los Angeles, et al.*, 540 F.3d 1031, 1042-43 (9th Cir. 2008). The *Torres* case was appealed to the U.S. Supreme Court and returned for trial. I provided the expert opinion in *Chavies Hoskin v. City of Milwaukee, et al.* (USDC Case No. 13-cv-0920), regarding field strip and cavity searches, hiring, training, discipline and supervision, and which resulted in significant policy changes within the MPD. My opinions supported argument in the Ninth Circuit case: *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1102 (9th Cir. 2014). The Ninth Circuit also drew from my exv. Cpert reports regarding credible threats justifying the use of force, *Hayes v. County of San Diego*, 658 F.3d 867 (9th Cir. 2011), and *Young v. County of Los Angeles*, 655 F.3d 1156 (9th Cir. 2011). The Ninth Circuit also drew from my expert reports regarding Jail Administration and Administrative Responsibilities, *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011). The Ninth Circuit also drew from my expert reports regarding an officer's violation of the 14th Amendment if an officer kills a suspect when acting with the purpose to harm, unrelated to a legitimate law enforcement objective, in *AD v. California Highway Patrol*, 712 F. 3d 446 (9th Cir. 2013). The Fifth Circuit drew from my expert report regarding search and seizure, investigations and no-knock requirements in *Bishop et al. v. Arcuri et al.*, 674 F.3d 456 (5th Cir. 2012). The Ninth Circuit also drew from my expert report regarding the use of impact weapons (PepperBall) on civilians in *Nelson v. City of Davis*, 685 F.3d 867 (9th Cir. 2012). I was the expert in the Ninth Circuit opinion regarding the allegations proffered by police officers and their use/display of firearms against civilians in *Green v. City and County of San Francisco*, 751 F. 3d 1039 (9th Cir. 2014). Most recently, I was the expert in an important Ninth Circuit opinion regarding the allegations proffered by police officers and their use of lethal force against unarmed persons in *Jennifer Cruz, et al., v. City of Anaheim, et al.*, 765 F.3d 1076 (9th Cir. 2014). I was the expert at trial in the Ninth Circuit opinion regarding the order of evidence at trial in *Estate of Manuel Diaz, v. City of Anaheim*, et al., No. 14-55644. My opinion is quoted in the Ninth Circuit opinion regarding the use of lethal force in *A.K.H. a minor, et al, v. City of Tustin, et al.*, No. 14-55184. My opinions supported argument in the Ninth Circuit case: *Estate of Angel Lopez, et al., v. Kristopher Michael Walb*, No. 14-57007 (not for publication) wherein the Ninth Circuit Affirmed the Denial of Summary Judgement by the District Court. My opinions supported argument in the Ninth Circuit case: *Estate of Shakina Ortega, et al., v. City of San Diego, et al.* No. 14-56824 (not for publication) wherein the Ninth Circuit Affirmed the Denial of Summary Judgement by the District Court. My opinions supported argument in the Ninth Circuit case: *Jerry Newmaker, et al., v. City of Fortuna, et al.* No. 14-15098 (for publication).

My opinions supported arguement ij the Ninth Circuit Case: *Tonya E. Shirar, v. Miguel Guerrero*, *et al.* regarding use of lethal force and "suicide by cop,"  No. 15-55029 (not for publication)

The California Court of Appeal (Second Appellate District) drew in part from my expert report regarding search warrant service, *Macias v. County of Los Angeles*, 144 Cal. App.4th 313, 50 Cal. Rptr.3d 364 (2006).  The California Supreme Court drew in part from my expert opinion regarding police tactics and the use of deadly force, *Hayes et al. v. County of San Diego et al.*, 57 Cal.4th 622 (2013).

On February 10, 1989, I was personally commended at the Los Angeles County Hall of Administration by United States Attorney General, the Honorable Edwin Meese III, for my work to establish California Penal Code Section 311.11 (forbidding the Possession of Child Pornography).  On February 22, 1993 (at the time of my retirement), Mr. Meese presented a second personal commendation for the success of this critical five-year effort to bring this law into effect.

On December 7, 2015 I was requested by the Cleveland District Attorney to present my opinions to the Cleveland Grand Jury regarding the November 22, 2014 shooting death of Tamir Rice by City of Cleveland police officers.  In March, 2016 I was requested by the Delaware Attorney General to review and provide my opinions regarding the shooting death of Jeremy McDole.  The AG report was published May 12, 2016.

I have been found competent by both Federal and State Courts to render opinions as to responsibilities as occurred in this case.  A number of my cases have involved law enforcement officers as civil plaintiffs and as criminal defendants.

Since my retirement, I have become an expert in the features and the use of TASER International's products, including the Model M26, Model X26 and Model X2 ECDs.  I own each, along with the download software.  I have reviewed all the TASER training materials and am familiar with the risks and tactics associated with these potentially lethal devices.  I have qualified as an expert on TASER products and testified both in deposition and before juries on their usage.  Two published examples are *Lee v. Nashville*, 596 F. Supp. 2d 1101, 1121-22 (M.D. Tenn. 2009), and *Heston v. City of Salinas*, 2007 U.S. Dist. LEXIS 98433, *25-*26 (E.D. Cal. 2007).  My most recent Federal acceptance/certification as an expert in the general use and deployment of the TASER weapon occurred in San Francisco, California on January 29, 2015 in *Andre Little, an Individual, v. City of Richmond, et al.*, Case No: CV-1302067-JSC.  There are many others.

Attached as Exhibit A is a statement listing my law enforcement qualifications and experience; Exhibit B is my fee schedule; Exhibit C is a listing of matters in which I have testified in the last four years as an expert.

I declare under penalty of perjury that the foregoing is true and correct.  Executed May 15, 2017 at Santee, CA.

Roger A. Clark

**ROGER A. CLARK**

*10207 Molino Road • Santee CA 92071 • Telephone: (208) 351-2458.  Fax: (619) 258-0045.*

EXPERIENCE

**Police Procedures Consultant (self employed)**
April 1, 1993 to Present.................................................................. **23 years**

I have been certified by Federal and State courts as expert in jail and police procedures in Federal and State Courts.  I select my cases carefully and have consulted in approximately 1500 cases thus far since my retirement from the Los Angeles County Sheriff's Department.

**Substitute Teacher, Madison School District**
August 1994 to 2003........................................................................ **9 years**

I substitute teach at all levels in the school district (elementary to high school). As a volunteer, I wrote and managed a $85,000.00 federal grant for our Central High School.  This grant is in its sixth year and has generated $510,000.00 for the school.

**District Liaison, State of Idaho Department of Juvenile Corrections**
August 1, 1995 to March 1, 1997.........................................**1 year, 7 months**

I represented the new Department of Juvenile Corrections to the ten counties in the Seventh Judicial District.  As such, I worked closely with Probation Officers, County Commissioners, Judges, other state agencies, private care providers, etc. in the implementation of the new Idaho Juvenile Corrections Act of 1995.  I wrote or participated in the writing of several federal grants for the District.  I conducted training - both formal and informal - and developed a series of new therapy programs for juveniles with private care providers.  I also served as the Director of the Detention Center and the State Placement Coordinator during this time.



EXHIBIT A

-1-

**Los Angeles County Sheriff's Department**
December 1, 1965 to March 31, 1993................................**27 years 4 months**

**Note:**  In 1993 the Los Angeles County Sheriff's Department had 7,000 sworn and 3,000 civilian personnel and a daily County Jail inmate population of 23,000.

**Service as a Lieutenant (15 Years, 0 Months):**

1. **Field Operations Region I**
   **NORSAT**                        11/15/87 to 3/31/93   **64 months**

I commanded a specialized unit created to investigate, locate, observe and arrest major (career) criminal offenders.  This unit was designed as a multijurisdictional effort for the cities in the northern region of Los Angeles County.  The command consisted of four (4) Sergeants, seventeen (17) Deputies, four (4) Police Officers, twenty five (25) Reserves, and three (3) civilian employees.  The 1992 budget set at $1.5 million.  The arrest rate averaged 500 career criminal arrests per year with a 97% conviction rate and no shots fired (on either side) for 61 consecutive months.

Significant contributions while assigned at this Bureau were:

- Increase in participating police agencies.
- Direct participation with corporate (private) agencies.
- Formation of a reserve and volunteer unit.
- Establishment of NORSAT Foundation private funding.
- Computerization of the unit.
- Promotion of fourteen personnel.
- Fleet expansion from 13 to 28 vehicles (donated).
- Formation of the DEA Valley Task Force.
- Field Operations Directive 89-3.

2. **Executive Offices**
   **Reserve Forces Bureau**       05/01/84 to 11/15/87  **42 months**

I was the administrative officer to a specialized bureau responsible for coordinating the activities of 1,000 sworn reserve personnel, 900 civilian

-2-

volunteers, and 450 law enforcement explorer scouts.  The Bureau identifies programs for their effective utilization throughout the Department; develops and tracks training programs; sponsors activities designed to promote growth and keep morale at high levels.

Significant contributions while assigned at this bureau are:

• Total restructure of the Academy training process for reserve Deputies.
• Implementation of upgrade programs to move lower level reserves to level I status.
• Departmental Reserve Certification procedures.
• Annual leadership seminar.
• The Reserve News, a nationally recognized police magazine.
• Computerization of the Bureau.


3. **Field Operations Region I**
   **Crescenta Valley Station**     04/01/80 to 05/01/84  **49 months**

Crescenta Valley Station is a full service police facility of 100 personnel serving a population of 50,000 (including the Contract City of La Canada-Flintridge) and a total area of 250 square miles. During my four years service at this facility I served in every management role:

• **Nine months** as the Station Commander during an extended absence by the Captain (08/01/83 TO 05/01/84).
• **Sixteen months** as the Operations Lieutenant (03/01/82 TO 08/01/83).
• **Twelve months** as the station Detective Bureau Commander (03/01/81 to 01/01/82).
• **Twelve months** as a Watch Commander (04/01/80 to 03/01/81).

Significant contributions while assigned at this command are:

• Negotiation of an enhanced city contract (at a savings to the City).
• Formation of a volunteer community support group.
• Development and implementation of an integrated community emergency response plan.
• High School undercover narcotics operation.
• Restructure of the Station Detective Bureau.
• The annual station picnic, which was effective in boosting station morale.

**4.     Custody Division**
**       Central Jail**              04/01/78 to 04/01/80  **24 months**

The Los Angeles County Central Jail is the largest jail facility in the State of
California, with a daily inmate population of seven thousand (7,000), an
assigned staff of six hundred (600), and two hundred (200) civilian personnel.
My service at this command was equally divided into two major assignments:

•       Training and Logistics Lieutenant (04/01/79 to 04/01/80).
•       Watch Commander (04/01/78 to 04/01/79).

Significant contributions while assigned at this command are:

•       "Hot Fire" Training program, which is now a State (POST) mandated
        training module for all custody personnel throughout California.
•       The "Defend in Place" fire safety operational plan for jail facilities.
•       New fire safety specifications for jail bedding and mattresses.
•       The development of fire safe jail mattress material.
•       The development of a facility emergency response plan.
•       The computerization of training, timekeeping, and scheduling for the
        facility (800 sworn and 200 civilian personnel).
•       "Spouse day at CJ"--A program for spouses of employees.


**Service as a Sergeant (6 Years, 4 Months):**


**5.     Administrative Division**
**       Federal Surplus Property**   01/12/76 to 04/01/78  **27 months**

This program was entirely my idea and developed while I was assigned at my
previous assignment (Emergency Operations Bureau).  The unit provides
millions of dollars in free federal excess and surplus food and property from
clothing to heavy equipment and aircraft to the department each year.  I am
very proud of this contribution to the Department.


**6.     Patrol Division**
**       Emergency Operations**      02/01/74 to 01/12/76  **23 months**

I was among the original personnel that formed this unit which blended the
activities of the Department's planning   unit with emergency operations
planning and preparation.  I was assigned as the Personnel and Logistics
Sergeant.

-4-

Significant contributions while assigned at this command are:

- Formation of a new County Emergency Operations Center.
- Participation in the 1974 Federal earthquake studies of Los Angeles County.
- Development of the Department's specialized Field Command Post equipment.
- Development of the Department's Field Booking Team.


**7.     Patrol Division**
**Civil Defense Bureau**        12/01/73 to 02/01/74  **02 months**

I was assigned to this unit to facilitate the orderly transition into the new Emergency Operations Bureau.


**8.     Patrol Division**
**San Dimas Station**          12/12/72 to 12/01/73  **12 months**

I performed all the duties of a Watch and Patrol Sergeant.  I also frequently served as the Watch Commander.


**9.     Technical Serviced Division**
**Communications Bureau**     12/01/71 to 12/12/72  **12 months**


I served as the Watch Commander in The Sheriff's Department's old radio room located at the Hall of Justice, and assisted in the transition to the existing communications facility.


**Service as a Deputy (6 Years, 0 Months):**


**10.     Patrol Division**
**San Dimas Station**
**Detective Bureau**          01/01/70 to 12/01/71  **23 months**

I served as a Station Detective assigned to the evening watch.  I handled the first response to all crimes requiring investigations.  I processed all evening juvenile matters, prepared criminal complaints and juvenile petitions.

11.   **Patrol Division**
      **San Dimas Station Patrol**    01/29/68 to 01/01/70  **24 months**

I performed all duties assigned to Station Patrol:  Jailer, Desk, Watch Deputy, Patrol, and Traffic.


12.   **Technical Services Division**
      **Transportation Bureau**      11/01/67 to 01/29/68  **02 months**

I was temporarily assigned to the Beverly Hills Municipal Court pending my assignment to a Patrol Station.


13.   **Custody Division**
      **Central Jail**               05/06/66 to 11/01/67  **18 months**

I returned to my previous assignment at the Central Jail after graduation from the Academy.  I performed all aspects of a Custody Deputy i.e. Module Officer, Prowler, Control Booth, High Power, etc.


14.   **Administrative Division**
      **Academy**                    01/17/66 to 05/06/66  **04 months**

I was a Sheriff's trainee assigned to Class #110.


15.   **Custody Division**
      **Central Jail**               12/01/65 to 01/17/66  **01 month**

I was a pre-academy Custody Deputy assigned to the Central Jail as an "off the street" Deputy Sheriff.


## DEGREES AND CERTIFICATION


| P.O.S.T. Command College (Class #5) | POST | 1988 |
| Management Certification | POST | 1980 |
| Advanced Certification | POST | 1975 |
| Associate of Science Degree | Chaffey College | 1971 |

# Roger A. Clark

## Police Procedures Consultant, Inc.

10207 Molino Road.  Santee, CA 92071
Phone: (208) 351-2458,  Fax: (619) 258-0045
rclark9314@aol.com

May 15, 2017

Mr. Ben Nisenbaum, Esq.
Mr. James A. Cook, Esq.
Mr. John L. Burris, Esq.
Law Offices of John L. Burris
7677 Oakport Street, Suite 1120
Oakland, California 94621

**Regarding:**   **Shawna Brown, et al., vs. City of Stockton, et al., Case No. 2:13-CV-01007-KJM-KJN..**

Dear Counsel:

My fee schedule is as follows:

- Travel time at the rate of $50.00 per hour.
- (Travel via automobile to and from San Diego to Los Angeles 8 hours $400.00)
- All case review, consulting, and writing of expert opinions (such as Rule 26 reports) at $250.00 per hour.
- All testimony (either at trial or deposition) at $350.00 per hour, with a two hour minimum required.
- A retainer fee of $3,500.00 when initially retained will be used against the above listed fees.  Subsequent billings at the rates specified.
- A "rush fee" of $500.00 for work required less than three weeks from notice/retention.
- An invoice will be submitted periodically upon request reflecting the activities and charges associated with the account.  Payment is due upon receipt of the invoice.

There is no formal contract required.  My Federal Tax ID Number is **72-1576857.**

Sincerely,

Roger A. Clark

# EXHIBIT B

# Roger Clark

**Police Procedures Consultant, Inc.**
10207 Molino Road.  Santee, CA 92071
Phone: (208) 351-2458,  Fax: (619) 258-0045
**rclark9314@aol.com**

**UPDATED LIST OF SWORN TESTIMONY FOR RULE 26**

**May 14, 2013 to May 10, 2017**
(Revised May 10, 2017

**Deposition:**  May 14, 2013.  Lisa and Anthony ("A.J.") Demaree, et al, v. John Krause, et al. USDC (Arizona) Case No. CV 11-00046 PHX-ROS.

**Deposition:**  May 24, 2013.  William Pitman, v. County of Los Angeles, et al.  Superior Court, State of California (Los Angeles County), Case No. BC 472800.

**Deposition:**  May 28, 2013.  Toby Jermaine Wilson v. City of Vallejo, et al.  USDC Case No. 2:12-cv-00547-JAM-CKD.

**Trial:** May 30, 2013 and May 31, 3013.  Robert Thomas Sr., et al, v. County of Los Angeles, et al., Superior Court, State of California (Los Angeles County), Case No. TC 025583.

**Deposition:**  June 3, 2013.  Maria Macias & Lidia Amesquita, v. City of Long Beach, et al. USDC Case No. cv-12-3113 PA (FFMx).

**Trial:**  June 4, 2013.  Mashia McCraw-Lewis, et al, v. City of Los Angeles, et al.  Superior Court (Los Angeles County) Case No. BC 457859.

**Deposition:**  June 5, 2013,  Bereket Demsse, v. City of San Diego, et al., USDC Case No.: 12-cv-0914-JM (WVG).

**Deposition:**  June 10, 2013.  Ricky Diaz v. USA, et al. (San Ysidro Border Crossing).  USDC Case No. 11 cv 02028 IEG (POR).

**Deposition:**  June 14, 2013.  Javier - Guerrero v. City of San Jose, et al.  USDC Case No.: CV 12-03541 PSG.

**Deposition:**  June 17, 2013.  John Rogoff, v. County of San Bernardino, et al.  USDC Case No. 2:12-cv-04218.  DSF (Spx).

**Trial**: June 24, 2013.  Salvador Estrada Lua, v. County of Los Angeles, et al.  Superior Court (Los Angeles County), State of California Case No EC 054587.



**Deposition:**  June 26, 2013.  Sabrina Smith, et al., vs., County of San Diego, et al., USDC Case No.: CASE NO. 11cv0356-W(WVG)

**Deposition:**  June 27, 2013.  Elizabeth Nichols v. City of Portland, et al.  USDC Case No. 3:13-CV-1889, MO.

**Trial:**  July 2, 2013.  Noreen Salinas, v. City of San Jose, et al.  USDC Case No. C08-02625 RS.

**Deposition:**  July 3, 2013.  Gregory Williams, v. City of Merced, et al.  Case No. 1:10-CV-1999 MJS.

**Trial:**  July 9, 2013.  Cindy Orellana, v. County of Los Angeles, et al. USDC Case File No. CV 12-1944 MMM (CWx).

**Trial:**  July 10, 2013.  Gregory Williams, v. City of Merced, et al.  Case No. 1:10-CV-1999 MJS.

**Deposition:**  July 16, 2013.  Boris Bolshakov, v. San Mateo County, et al.  Superior Court (San Mateo County), State of California Case No. CIV 515418.

**Trial:**  July 19, 2013.  Asima Gul, et al. v.Garda CL West, Inc., et al., (AKA: Ajmal v Bank of the West).  Superior Court, State of California (San Joaquin County), Case No. 39-2010-00234481 CU-PO-STK.

**Deposition:**  July 22, 2013.  David Lee Turner Jr., et al., v. County of Kern, et al., Case No.: CV-01366-AWI-SKO.

**Trial:**  July 23, 2013.  Michael Foster and Kimberly Foster, v. County of San Diego, et al., USDC CaseNo. 11-CV-1953-H (BGS).

**Deposition:**  July 29, 2013,  Gregory L. Sullivan and Koji Fujita, v. City of San Rafael, et al., Case No.:C 12-1922 MEJ.

**Trial:**  July 31, 2013.  962. John Young, v. Aron Wolfe, County of Los Angeles, et al.  USDC Case No. 2:07-CV-3190 RSWL-RZx.

**Trial:**  July 31, 2013.  Troy J. Dugan v. County of Los Angeles, et al. Case No. CV11-8145 ODW (Shx).

**Trial:**  August 1, 2013.  Ricky Diaz v. USA, et al. (San Ysidro Border Crossing).  USDC Case No. 11 cv 02028 IEG (POR).

**Trial:**  August 6, 2013.  Elizabeth Nichols v. City of Portland, et al.  USDC Case No. 3:13-CV-1889, MO.

**Trial:**  August 14, 2013.  Jason Eugene Deocampo et al, v. City of Vallejo, et al., USDC Case No. 2:06-CV-01283, WBS-GGH.

**Deposition:**  August 15, 2013.  Travis Mock v. City of Anaheim, et al., USDC Case No.: cv-829-CJC (MLGx).

**Deposition:**  August 15, 2013.  Barbara Padilla, et al., v. City of Anaheim, et al., USDC Case No.: SACV12-622 JVS (JPRx).

**Deposition:**  August 26, 2013.  Denise Monarque, as Personal Representative of the Estate of Richard Monarque, Deceased, v. The City of Rio Rancho, et al., Case No.: CV-2011-0135 MV/KBM.

**Deposition:**  September 10, 2013.  Kristy Beets, et al, v. County of Los Angeles, et al, Superior Court (County of Los Angeles) Case No. KC 057667.

**Deposition:**  September 16, 2013.  Brett Johnson, v. San Benito County, et al., Case No. CV 12-3691 LHK.

**Trial:**  September 24, 2013.  Barbara Padilla, et al., v. City of Anaheim, et al., USDC Case No.: SACV12-622 JVS (JPRx).

**Trial:**  September 26, 2013.  Eva Gutierrez and Dionicio Gutierrez v. County of Los Angeles, et al. Case No. CV 10-07608 PSG (AJWx).

**Deposition:**  September 27, 2013.  Gregory Martinez, Sr., et al., vs City of Avondale, et al., Case No. CV-12-01837-PHX-LOA.

**Deposition:**  October 4, 2013.  Jerrold Rosenblatt, v. City of Hillsborough, et al., USDC Case No. C12-5210 LB.

**Deposition:**  October 7, 2013.  Estate of Kenneth Paul Munoz, Jr., et al, v. County of San Bernardino, et al.  USDC Case No.: CV-12-05604 DSF (PJWx).

**Deposition:**  October 11, 2013.  Jerry Newmaker and Susan Olesen, v. City of Fortuna, et al. USDC Case No. CV-12-4675-PJH.

**Deposition:**  October 14, 2013.  John Leroy Jones, et al., v. Las Vegas Metropolitan Police Department, et al., Case No. 12-CV-01636 MMD CWH.

**Deposition:** October 18, 2013.  A.K.H. et al., v. City of Tustin, et al., Case No.: SACV 12-01547 JST (RNBx).

**Deposition:** October 30, 2013..Eduardo Enrique Alegrett, v. City and County of San Francisco, et al., USDC Case No. C12-5538 MEJ.

**Deposition:** November 13, 2013.  Semaj Randolph et al, v. Harold Thad Turner, et al., USDC Case No. 5:12-cv-3087 1028 MBS.

**Dposition:** November 19, 2013.  David Dominquez Mendoza, et al., v. City of Peoria, et al., Case No.: CV-13-00258-PHX-NVW.

**Deposition:** November 21, 2013.  Marie Sales, (Paul Quintanar), v. City of Tustin, et al.  USDC Case No. SACV12-01834 CJC (MLGx).

**Deposition:** November 26, 2013.  Ken Sheppard, v. County of Los Angeles, et al.  USDC Case No. 12-2392 CBM (PJWx).

**Deposition:** December 2, 2013.  Estate of Manuel Diaz, Genevieve Huizar, v. City of Anaheim, et al.  USDC Case No. 12-01897 JVS (RNBx).

**Deposition:** December 10, 2013.  Lydia Vasquez-Brenes and Ricardo Brenes, v Las Vegas Metropolitan Police Department.  USDC Case No.: 2:12cv1635-JCM-VCF.

**Deposition:** December 19, 2013.  Celina, Sabrina and Valente Galindo IV, v. City of San Jose, et al.  USDC Case No. CV 13-0105 HRL.

**Deposition:** December 23, 2013.  Rebeca Fajardo, v. City of El Centro, et al.  Case No. 3:12-cv-1521-GPC-PCL.

**Deposition**: December 27, 2013.  Desmen Miller, v. Los Angeles County, et al.  USDC Case No. CV13-0024555.

**Deposition:** January 8, 2014 and January 14, 2014.  Antione Leron Willis, v. Joseph Wagner, et al.  USDC (Illinois) Case No. 08 CV 01964.

**Trial:** January 9, 2014 & January 10, 2014.  Hugo Vanlid Sarmiento v. Orange County, et al. USDC Case No. ASCV06-0586 DOC (Anx).

**Trial:** January 15, 2014.  John Rogoff, v. County of San Bernardino, et al.  USDC Case No. 2:12-cv-04218.  DSF (Spx).

**Deposition:** January 22, 2014,  Maureen Abston, et al. v. City of Merced, et al.  USDC Case No. 1:09-CV-00511 OWW GSA.

-4-

**Deposition:** January 24, 2014. Scirocco Giles, v. Nicholas Ludwig, et al., USDC Case No. 12 C 6746.

**Trial:** January 28, 2014. William E. Wilson, et al, v. Clackamas County et al. Circuit Court (State of Oregon) Case No. 1204-04632.

**Deposition:** January 30, 2014. Ammir Umar, v. City of San Jose, et al. USDC Case No. CV12-6071 HRL.

**Deposition:** February 3, 2014. 891. Nathaniel Marshall, v. County of Los Angeles, et al. Superior Court (Los Angeles County) Case No. BC430969.

**Deposition:** February 7, 2014. Christine Villegas, a minor et al., v. City of Anaheim, et al., Case No. 8-12-cv002013-CJC-AN.

**Deposition:** February 10, 2014. Josh Lawson and Christopher Franklin, v. City of Seattle, et al., USDC Case No. 12-1994-MAT.

**Deposition:** February 12, 2014. Abisai Antonio Rivera, Jr. v. David Avila, et al. USDC Case No: CV13-01404.

**Deposition:** February 14, 2014. Earl Brown, Sr. et al., v. City and County of San Francisco, et al., Case No. C11-02162LB.

**Trial:** February 20, 2014. Maureen Abston, et al. v. City of Merced, et al. USDC Case No. 1:09-CV-00511 OWW GSA.

**Deposition:** February 21, 2014. Lee Lacy, v. Sergeant Elizabeth Palmer, et al., Case No. 12-CV-00624-MMA-JMS.

**Deposition:** February 24, 2014. William Lee Muncy, et al., v. James R. Beutler, et al., Case No. 3:12-cv-804.

**Trial:** February 25, 2014. Ken Sheppard, v. County of Los Angeles, et al. USDC Case No. 12-2392 CBM (PJWx).

**Trial:** February 27, 2014. Estate of Manuel Diaz, Genevieve Huizar, v. City of Anaheim, et al. USDC Case No. 12-01897 JVS (RNBx).

**Trial:** March 3, 2014, March 5, & 6, 2014. Shuja Sayed Ahmad, v. Arizona Department of Public Safety, et al., Superior Court (Maricopa County), State of Arizona, Case No. CV 2008-030707.

**Trial:**  March 4, 2014.  David Lee Turner Jr., et al., v. County of Kern, et al., Case No.: CV-01366-AWI-SKO.

**Deposition:**  March 7, 2014.  Michael Fujikawa, v. City of San Jose, et al.  Superior Court (Santa Clara County) Case No. 1-12-CV-219612.

**Deposition:**  March 11, 2014.  Gabino Rosales, et al., v. County of Los Angeles, et al.  USDC Case Nos. 2:12-cv-03852-SVW-AGR and 2:13.

**Depoisition:**  March 12, 2014.  Jennifer Medina, et al, v County of San Diego et al.  USDC Case No. 08cv1395 AJB (RBB).

**Deposition:**  March 13, 2014.  Charlene Nelson v. Riverside County, et al.  Superior Court (Riverside County) Case No. RIV 10011174.

**Deposition:**  March 18, 2014.  Tushana Howard, et al, v. City of Los Angeles, et al.  USDC Case No. CV13-01847 SJO (JEMx).

**Deposition:**  March 19, 2014.  Alexandra Black (Arsalai), et al. v. Alameda, County, et al.  Superior Court (Alameda County) State of California Case No. RG 11565214 (SL).

**Deposition:**  March 20, 2014.  Fiona Raygoza (Armenta) et al, v. City of Fresno, et al.  USDC Case No 1;13-CV-00322 LJO MJS.

**Deposition:**  March 24, 2014.  Shakina Ortega, et al, v. City of San Diego, et al.  Case No. 13-CV-89-LAB (JMA).

**Trial:**  March 26, 2014.  Michael Fujikawa, v. City of San Jose, et al.  Superior Court, State of California (Santa Clara County),  Case No. 1-12-CV-219612.

**Deposition.**  March 27, 2014.  Kenneth McDade, et al, v. City of Pasadena, et al.  USDC Case No. 2:12CV02892 DMG JCG.

**Deposition.**  March 31, 2014.  William F. Howard, et al., v. County of Riverside, et al. USDC Case No. CV 12-00700 VAP (Opx).

**Deposition.**  April 2, 2014.  Jimmy Osborne, v. Harris County Texas, Sgt. John Gable, et al., Case No. 4:13-CV-435.

**Deposition.**  April 4, 2014.  Jaime Cota, v. County of Kern, et al.  USDC Case No. 1:12-CV-01618-JLT.

**Deposition.**  April 8, 2014.  A.L.T., A Minor, et al., v. County of Riverside, Case No.: edcv 12-1765 TJH (Opx).

**Deposition:**  April 9, 2014.  William D. Caldwell v. County of Los Angeles, et al.  USDC Case No. CV 12-02138 BRO (JC).

**Deposition:**  April 10, 2014.  Chien Van Bui, et al, vs. City and County of San Francisco, et al. USDC Case No. CV 11-04189 LB.

**Deposition:**  April 11, 2014.  Patrick Torres, v. City of Los Angeles, et al., Case No. CV-01200-MWF-JCG.

**Deposition:**  April 14, 2014.  Kathleen Ann Fowler, v. California Highway Patrol, el al., Case No. C 13-1025 THE.

**Deposition:**  April 16, 2014.  Junior Lagunas, et al., v. City of Anaheim, et al., USDC Cases No. SACV 13-00247 & SACV 13-01447 JLS (Anx).

**Trial:**  April 17, 2014.  Carol Krechman: et al. vs. County of Riverside: et al.  Case No. CV-10-08705 ODW.

**Deposition:**  April 18, 2014.  Akbar Amin-Akbari v. City of Austin et al., USDC (Western District of Texas) Civil Action No. 1:13-cv-00472-LY.

**Deposition:**  April 23, 2014.  Christopher J. Windsor, v. Chris Eaves, et al., Case No. 5:13-CV-00038.

**Trial:**  April 24, 2014.  Alexander Perez Alvarado, a minor, et al., v. The City of Santa Ana, et al., Case No. 8:12-CV-00328-UA.

**Depoition:**  April 29, 2014.  Michael Lobrono, et al. v. County of Los Angeles, et al.  USDC Case No. 13-03838 RGK (Ex).

**Deposition:**  April 30, 2014.  Audry Henry v. City of Los Angeles, el al., Case No.: CV 13-03151 JAK (MWRx).

**Trial:**  May 7, 2014.  Audry Henry v. City of Los Angeles, el al., Case No.: CV 13-03151 JAK (MWRx).

**Deposition:**  May 12, 2014.  Chalino Sanchez v. County of Los Angeles, et al.  USDC Case No.: CV 13-03836.

**Deposition:**  May 15, 2014.  Carlos Barba v. City of Santa Ana, et al.  Superior Court State of California (Orange County) Case No. 30-2013-00649819-CU-PO-CJC.

**Deposition:**  May 19, 2014.  John Warner Stephens, v. County of San Diego, et al.  USDC Case No., 11cv2832 AJB (KSC).

**Trial:**  May 22, 2014.  Nathaniel Marshall, v. County of Los Angeles, et al.  Superior Court (Los Angeles County) Case No.  BC430969.

**Trial:**  May 27, 2014.  Kathleen Ann Fowler, v. California Highway Patrol, el al., Case No. C 13-1025 THE.

**Trial:**  May 29, 2014.William D. Caldwell v. County of Los Angeles, et al.  USDC Case No. CV 12-02138 BRO (JC).

**Deposition:**  May 29, 2014.  Estate of Hutalio Serrano-Granados, et al., v. City of Colton, et al, Case No.: EDCV 13-519 JAK(OPx).

**Deposition:**  June 3, 2014.  I.R., et al. v. City of Fresno, et al., Case Nos.: 1:12-CV-00558-AWI (GSAx) and 1:13-CV-00850-LJO (BAMx).

**Trial.**  June 5, 2014.  William F. Howard, et al., v. County of Riverside, et al.  USDC Case No. CV 12-00700 VAP (Opx).

**Trial.**  June 12, 2014.  .Eduardo Enrique Alegrett, v. City and County of San Francisco, et al., USDC Case No. C12-5538 MEJ.

**Trial.**  June 18, 2014.  Antonio Rendon, et al., v. City of Indio, et al., Case No.: CV 13-00667 VAP (Opx).

**Deposition.**  June 30, 2014.  Larry and Pamela Olsen et al., v. California Department of Corrections, et al.  USDC Case 08 CV 2035 Jah BLM.

**Civil Service Commission Hearing:**  July 7, 2014.  Regarding Deputy James Mee, Los Angeles County Sheriff's Department, IAB File 2291137.

**Trial:**  July 14, 2014.  Chelsey Hayes, et al, v. County of San Diego, et al.  USDC Case No. 07-CV-1738 DMS (JMA).

**Deposition:**  July 15, 2014.  Nichole Gochmanosky, Marie Weber and Ashley Wardle, v. City of San Diego, et al.  USDC Case No 12-CV-2944 L. NIS., and Kari Helstern, v. City of San Diego, et al.  USDC Case No 13-cv-0321 LAB (RRB).

**Trial:**  July 17, 2014.  1213.   Servando G. Castaneda, et al v. County of Los Angeles, et al.  Superior Court, State of California (County of Los Angeles) Case No. BC511592.

**Deposition:**  July 23, 2014.  Miguel A. Gonzales-Chavez, v. City of Bakersfield, et al., Case No.: 1:12-CV-02053-AWI-JLT

**Deposition:**  July 24, 2014.  Maria Munoz, et al, v. County of Riverside, et al.  Superior Court, State of California (Riverside County), Case No RIC 1207941.

**Deposition:**  August 6, 2014.  Carmen Ruvalcaba, v. City of Los Angeles, et al.  USDC Case No 12-CV-06683 DDP (MAN).

**Trial:**  August 14, 2014.  Maria Munoz, et al, v. County of Riverside, et al.  Superior Court, State of California (Riverside County), Case No RIC 1207941.

**Deposition:**  August 15, 2014.  Precious Venable v. City of Milwaukee, et al., USDC Case No. 13-cv-1114; Joe Bohannon v. City of Milwaukee, et al., USDC Case No. 13-cv-1224; Angus Wright v. City of Milwaukee, et al., USDC Case No. 13; Chavies Hoskin v. City of Milwaukee, et al.  USDC Case No. 13-cv-0920.

**Deposition:**  August 24, 2014.  Merricks Prudhomme, v. City of Orange, et al.  Superior Court (Orange County) Case No. 30-2013 00654570.

**Deposition:**  August 27, 2014.  Carlos Sierra v. County of Los Angeles, et al.  Superior Court Case No. BC 477258.

**Deposition:**  August 29, 2014.  Robert Tidwell v City of Round Rock, et al., USDC (Texas) Case No.: 1:13.

**Trial:**  September 9, 2014.  Antione Leron Willis, v. Joseph Wagner, et al.  USDC (Illinois) Case No. 08 CV 01964.

**Deposition:**  September 12, 2014,  Elizabeth Adam & Robert Chester Henning, v. County of Los Angeles, et al.  USDC Case No. CV 13-1156 GW (JCGx).

**Deposition:**  September 14, 2014.  Daniel Johnson, v. County of Los Angeles, et al.  USDC Case No. CV14-00368 SVW (Jex).

**Trial:**  September 17, 2014.  Maxine Sherard v. City of San Diego, et al.  USDC Case No. 11cv2854-L (MDD).

**Deposition:**  September 26, 2014.  Joseph Lozano v. City of Rialto, et al.  USDC Case No. EDCV 13-1636 GHK.

**Trial**:  October 6, 2014.  Scirocco Giles, v. Nicholas Ludwig, et al., USDC (Chicago) Case No. 12 C 6746.

**Deposition:**  October 14, 2014.  Geoffrey Ernest Johnson, v. County of Los Angeles, et al. USDC Case No. CV-13-4496 MMM (AJWx).

**Deposition:**  October 16, 2014.  The Estate of Angel Lopez, et al., v. City of San Diego, et al. Case No.: 13CV2240 GPC BGS.

**Deposition:**  October 21, 2014.  Shirar et al, v. CHP Officer Miguel Guerrero, et al,   USDC Case No. EDCV 13 - 0906 JGB (Opx).

**Deposition:**  October 27, 2014.  R.Z., a minor (Zermeno), et al., v. County of Riverside, et al., Case No.: EDCV 13-01251 FMO (DTBx).

**Trial**:  October 30, 2014.  Chandler Todd Barr v. The City of Albuquerque, et al. USDC Case No. CIV 12-1109 GBW-RHS.

**Deposition:**  November 7, 2014.  Brejanea Burley, et al., v. County of Los Angeles, et al. Superior Court, (Los Angeles County) Case No. TC027341.

**Deposition:**  November 12, 2014.  Michael Huey, et al, v. City of Vallejo, et al.  USDC Case No. 2:13−CV−00916.  JAM KJN.

**Trial:**  November 13, 2014.  Barbara Padilla, et al., v. City of Anaheim, et al., Case No. SACV12-622 JVS (JPRx).

**Deposition:**  November 14, 2014.  Frank Martinez v. County of Los Angeles et al. USDC Case No. CV 13-3825 CAS (JCGx).

**Deposition:**  November 17, 2014.  Randy Lynn v. City of Indianapolis, et al., Case No. 1:13-CV-00179-JMS-TAB**.**

**Deposition:**  November 19, 2014.  Sandra Blount, aka, Sandra Castro, v. City of Los Angeles, et al., Case No.: CV13-08672DDP.

**Deposition:**  November 20, 2014.  Harrison Orr, v. California Highway Patrol, el al., Case No. 2:14-cv-00585-WBS-EFB.

**Deposition:**  November 25, 2014.  James Ligon, v. CHP Officer Joe Lafauci, et al.  USDC Case No.  Cv 13-02875 (RMW).

**Trial:** December 1, 2014. Brejanea Burley, et al., v. County of Los Angeles, et al. Superior Court, (Los Angeles County) Case No. TC027341.

**Deposition:** December 2, 2014. K.C.R. (Rivera) a minor, et al, v. County of Los Angeles, et al. USDC Case No. CV 13-03806 PSG (Ssx).

**Deposition:** December 4, 2014. Andre Little, an Individual, v. City of Richmond, et al., Case No: CV-1302067-JSC.

**Trial:** December 9, 2014. Lee Lacy, v. Sergeant Elizabeth Palmer, et al., Case No. 12-CV-00624-MMA-JMS.

**Deposition:** December 12, 2014. Esperanza Booke, et al, v. City of Stanger, et al., Case No.: 1:13-cv-00586-AWISAB.

**Deposition:** December 17, 2014. Donald Geary, v. County of Orange, et al. USDC Case No. SACV09-01386 JVS (Anx).

**Trial:** December 29, 2014. People v. Lorenzo Gomez, San Bernardino County Case No. FSB 1200922.

**Deposition:** January 7, 2015. Michael Wann, et al., v County of San Bernardino, et al, Case No.: EDCV13-1422, JGB (DTBx).

**Trial:** January 14, 2015. People v. Luis Alberto Torres, Superior Court, State of California (San Mateo County), Case No. SM 386562.

**Deposition:** January 16, 2015. Shawn Tulcey, an Individual, v. County of Los Angeles, et al. Case No. CV13-3773 BRO (FFM).

**Trial:** January 23, 2015. Patrick Torres, v. City of Los Angeles, et al., Case No. CV-01200-MWF-JCG.

**Deposition:** January 26, 2015. Bennie Starks, v. City of Waukegan, et al. USDC Case No. 09 CV 348.

**Trial:** January 28, 2015 & January 29, 2015. Andre Little, an Individual, v. City of Richmond, et al., Case No: CV-1302067-JSC.

**Trial:** February 11, 2015. Miguel A. Gonzales-Chavez, v. City of Bakersfield, et al., Case No.: 1:12-CV-02053-AWI-JLT.

**Deposition:** February 18, 2015. Rafael Garcia Miranda and Olga Martha Garcia, v. City of Anaheim, et al. USDC Case No. SACV 13-01826.

**Deposition:** February 20, 2015.  Jackaline Ann Gaston, et al v. County of San Bernardino et al. Case  No.: 5:14-cv-00403-VAP-DTB.

**Trial:** February 26, 2015.  1282. People v. Jordan Hughes.  Superior Court, State of California (Solano County), Case No. FCR285903.

**Deposition:** March 5, 2015.  Guillermo Alarcon, v. City of Los Angeles, et al.  USDC Case CV09-04210 CBM (FFMx).

**Deposition:** March 9, 2015.  Eder Herrera v. City of, Brea, et al.  USDC Case No. SACV 12-1650, SS.

**Deposition**: March 10, 2015.  Christian Payan v. County of Los Angeles, et al. Case No. 2:14 CV-07360-SVW-JEM.

**Trial:** March 11, 2015.  Superior Court,  State of California, (San Francisco City and County). People v Ray Jones, Case No. SCN 223374, Court No. 14030794.

**Deposition:** March 12, 2015.  Sara Valtierra, and Javier Arrazola, v. City of Los Angeles, et al. USDC Case No. CV 13-07562-CAS (Ex).

**Deposition:** March 13, 2015.  Nagy Salib v. City of Riverside, et al.  USDC Case No. EDCV 13-1682-MWF (Opx).

**Trial:** March 17, 2015.  Shawn Tulcey, an Individual, v. County of Los Angeles, et al.  Case No. CV13-3773 BRO (FFM).

**Trial:** March 18, 2015.  Christian Payan v. County of Los Angeles, et al. Case No. 2:14 CV-07360-SVW-JEM.

**Trial:** March 19, 2015.  Anita Doporto v. City of Tulare, et al., USDC Case No. EDCV 1:13-cv-00898 LJO SKO.

**Trial** (retrial)**:** March 26 & 27, 2015.  Andre Little, an Individual, v. City of Richmond, et al., Case No: CV-1302067-JSC.

**Deposition:** April 1, 2015.  Brian Reed, et al., v. City of Modesto, et al.  USDC Case No. 1:11-CV-01083-GSA.

**Deposition**.  April 9, 2015.  Denise Green, v. City and County of San Francisco, et al.  USDC Case No. C10-2649 RS.

**Deposition.**  April 10 &11, 2015.  Jose Henriquez, e al, v. City of Bell, et al.  USDC Case No. 2:14-cv-196  GW (Ssx).

**Deposition**.  April 10, 2015.  Rafael Gonzalez, et al, v. City of Anaheim, et al.  Case No. CV10-4660 USDCPA (Shx).

**Deposition.**  April 14, 2015.  Jose Gutierrez, v. United States Customs and Border Protection, USDC Case No. 2:13-CV-00585 DGC.

**Trial.**  April 16, 2015.  Nagy Salib, v. City of Riverside, et al.  Case No. EDCV 13-1682  MWF (OPX)**.**

**Trial**.  April 15 and 17, 2015.  Jim Maxwell et al. v. San Diego County, et al.  USDC Case No. 07-cv-2385 JAH (Wmc).

**Trial.**  April 20 & 21, 2015.  Naji Muhammad (Jackson), et al., v. Frank Pawlowski, et al. USDC (Pennsylvania) Case No. 2:11.

**Deposition.**  April 22, 2015.  Robert J. Reese, Jr. v. County of Sacramento, et al., Case No. 2:13-cv-00559 JAM DAD.

**Deposition**.  April 24, 2015.  Guillermo Ramirez, et al. v. City of Oxnard, et al., USDC Case No.: CV 13-01615 MWF AN.

**Deposition**.  April 28, 2015.  Idalia J. Morgutia-Johnson,  v. City of Fresno, et al.  USDC Case No.  1:14-CV-000127 LJO-SKO.

**Trial.**  April 29, 2015.  Sara Valtierra, and Javier Arrazola, v. City of Los Angeles, et al.  USDC Case No. CV 13-07562-CAS (Ex).

**Trial.**  May 6 & 7, 2015.  Brian Reed, et al., v. City of Modesto, et al.  USDC Case No. 1:11-CV-01083-GSA.

**Deposition.**  May 11, 2015.  Carey Woodcock, et al. v. City of Bowling Green, Kentucky, et al. USDC Case No. 1-13-CV-00124-JHM.

**Deposition.**  May 18, 2015.  Kimberly Deen, et al, v. City of Redding, et al.  USDC Case No. 2:13-CV-01569 KJM-CMK**.**

**Trial.**  May 20, 2015.  John Warner Stephens, v. County of San Diego, et al.  USDC Case No., 11cv2832 AJB (KSC).

**Deposition:**  May 26, 2015.  Joshua Chavez v. City of Hayward et al., Case No.:C-14-00470 DMR ADR.

**Deposition:**  May 27, 2015.  Edward Monroe, v. City of Richmond, et al., Case No.: 3:14 CV 00795 WHO.

**Trial:**  May 28, 2015.  Merricks Prudhomme, v. City of Orange, et al.  Superior Court (Orange County) Case No. 30-2013 00654570.

**Deposition:**  May 29, 2015.  Jonathan Meister, v. City of Hawthorne, et al. USDC C.D. Cal. Case No. CV 14-1096-MWF (SHx).

**Deposition:**  June 1, 2015.  Cash Jerome Ferguson-Cassidy, v. City of Los Angeles, et al., USDC Case No. CV14-06768 SVW (JPRx).

**Trial**:  June 8, 2015  Harrison Orr, v. California Highway Patrol, el al., Case No. 2:14-cv-00585-WBS-EFB.

**Trial:**  June 11, 2015.  Idalia J. Morgutia-Johnson,  v. City of Fresno, et al.  USDC Case No. 1:14-CV-000127 LJO-SKO.

**Deposition:**  June 15, 2015.  Juan Herrera, v. City of Los Angeles, et al.  USDC Case No. 2:13-cv-08831-ABC AS.

**Trial:**  June 23, 2015.  Guillermo Ramirez, et al. v. City of Oxnard, et al., USDC Case No.: CV 13-01615 MWF AN.

**Deposition**:  June 26, 2015.  C.E.W. a minor, et al., v City of Hayward, et al., Case No.: C 13-04516 LB.

**Trial:**  July 1 & 2, 2015.  Juan Herrera, v. City of Los Angeles, et al.  USDC Case No. 2:13-cv-08831-ABC AS.

**Deposition:**  July 10, 2015.  Perla Carr, v. Montgomery County, Texas, et al., Case No.: 4:13-cv-2795.

**Deposition:**  July 13, 2015.  Stephanie Bruno, et al, v. Donald Hubbard, et al., Circuit Court, Jackson County (Missouri), Case No. 1416-CV 18501.

**Deposition:**  July 16, 2015.  Donna Lancaster, v. Kansas City Board of Police Commissioners, et al., Case No.:4:14-cv-00171-SOW.

**Deposition:** July 23, 2015.  Sharam Borjkhani, et al. v. CHP, et al.  Superior Court, State of California (Los Angeles County).  Case No.  BC487580.

**Deposition:** July 27, 2015.  Michael Fulton v. Brian Thayer, et al., Case No.: CV10-00137-JCG.

**Deposition:** July 29, 2015.  Orly Vered, et al., v County of Los Angeles, et al., Case No.: CV14-9559 MWF (MANx).

**Trial:**  August 6, 2015  Oscar Morales v. City of Los Angeles, et al.  USDC Case No. CV 11-04757 SVW (Shx).

**Deposition.**  August 11, 2015  Kimberly Mitchell, et al, v. Muhlenberg Community Hospital, et al.  Muhlenberg Circuit Court, Commonwealth of Kentucky Case No. 12

**Deposition:**  August 12, 2015.  Russell Martinez v. Joseph Salazar, et al., D.N.M. Case No. 14-cv-00534 KG/WPL.

**Deposition**.  August 17, 2015.  Dr. Gary D. Frakes, v. Sergeant William R. (Billy) Masden and Captain Dustin Ott.  USDC (Texas) Case No. 4:14-cv-1753.

**Deposition.**  August 20, 2015.  Emmanuel Bracy, v. City of Los Angeles, et al.  Case No. C13-09350 (JC).

**Deposition.**  August 24, 2015.  Porfirio Santos-Lopez, an Individual v. City of Long Beach et al., Case No.: CV14-05781-FMO-AS.

**Deposition:**  August 26, 2015.  Aaron Vincent Arde Catacutan, v. City of San Jose, et al.  Superior Court, State of California (Santa Clara County) Case No. 113 CV 254501.

**Deposition:**  August 31, 2015.  Sammy Sanchez, et al v. City of Tucson, et al.  USDC Case No. 72-1576857.

**Trial:**  September 8, 2015.  Cash Jerome Ferguson-Cassidy, v. City of Los Angeles, et al., USDC Case No. CV14-06768 SVW (JPRx).

**Deposition:**  September 10, 2015.  Juventino Rodarte, v. Alameda County, et al.  USDC Case No. 4:14-cv-00468-KAW.

**Deposition:**  October 2, 2015.  Brennan Colbert, v. County of Kern, et al., Case No.: 1:13-cv-01589-JLT.

**Trial:**  October 7, 2015.  Michael Fulton v. Brian Thayer, et al., Case No.: CV10-00137-JCG.

**Trial:**   October 16, 2015.  Kristy Beets, et al, v. County of Los Angeles, et al.  Superior Court, State of California (County of Los Angeles) Case No. KC 057667.

**Trial:**  October 19, 2015 & October 20, 2015.  Christopher J. Windsor, v. Chris Eaves, et al., Case No. 5:13-CV-00038.

**Deposition:**  October 27, 2015.  Francisco Arrieta, et al., v. County of Kern, et al., Case No.:1:14-CV-00401-LJO-JLT.

**Deposition:**  October 28, 2015.  Lorenzo Adamson, an individual, v. City of San Francisco, et al., Case No.: 4:13-cv-05233-DMR.

**Trial.**  October 29, 2015.  Robert J. Reese, Jr. v. County of Sacramento, et al., Case No. 2:13-cv-00559 JAM DAD.

**Trial.**  November 3, 2015.  Lance Ricotta, v. City of Imperial, Ca, et al., Case No.: 13CV1454 DMS WVG.

**Deposition.**  November 9, 2015.  Dorothy Jean Sams, et al, v. City of Los Angeles, et al, Superior Court (Los Angeles County) Case No. BC537879.

**Trial**.  November 10 & 11, 2015.  People v. Former Webster Police Officer D. Bassett.  339th District Court, Harris County, Texas, Cause No. 1411316.

**Trial**.  November 12, 2015.  People v. Marcus Stewart, Superior Court (Santa Clara County), State of California Case No. C1370824.

**Trial**.  November 13, 2015.  Lorenzo Adamson, an individual, v. City of San Francisco, et al., Case No.: 4:13-cv-05233-DMR.

**Deposition:**  November 18, 2015.  Miguela Nuila, v. City of Los Angeles, e al.  USDC Case No. CASE NO. CV 14-9160 DDP (PJWx).

**Deposition:**  November 18, 2015.  Damion Russell et al., v. City of Los Angeles, et al., Case No.: CV-14-09433-JFW (Ex).

**Deposition:**  November 20, 2015.  Raymond Newberry et al. v. County of San Bernardino, ED-CV14-02298 JGB (SPx)

**Deposition:**  November 23, 2015.  Robert Barron, v. City of Redding, et al., USDC Case No.: 2-14-CV-01107 MCE-CMK.

**Deposition:**  December 2, 2015.  Sukhwinder Kaur, et al, v. City of Lodi, et al.  USDC Case No. 2:14-cv-00828 GEB-AC.

-16-

**Deposition:**  December 3, 2015.  Isaiah Salvadore Zepeda, te al, v, County of Los Angeles, et al.  Superior Court (Los Angeles County) Case No. BC450200.

**Grand Jury Testimony:**  December 7, 2015.  People v. Officer Timothy Loehman and Officer Fran Garmback, Cuyahoga County (Ohio) Grand Jury. [Civil Case No: 14 Civ. 02670.]

**Trial:**  December 9 & 10, 2015.  Superior Court, State of California (Los Angeles County), People v. Ugene Park & Sarah DeLeon, Case No. 5SY03653, DR No. 15-1087.

**Trial:**  December 15, 2015.  Alejandra Ruiz, et al., v. City of Medford, et al.  Circuit Court, State of Oregon (Jackson County), Case No. 13CV07663.

**Trial:**  December 17, 2015.  Isaiah Salvadore Zepeda, et al, v, County of Los Angeles, et al.  Superior Court (Los Angeles County) Case No. BC450200.

**Deposition:**  December 22, 2015.  Jordan Edward Branscum, v. San Ramon Police Department, et at. Case No. Case No.: C11-04137 LB.

**Deposition**:  December 28, 2015.  Susan Rush, v. City of Santa Monica, et al.  USDC Case No. BC568815.

**Preliminary Hearing & Motion to Suppress:**  January 5, 2016.  People v. Gregory Williams, Superior Court, State of California (Solano County), Case No. VCR223119.

**Preliminary Hearing & Motion to Suppress:**  January 5, 2016.  People v. Gregory Williams, Superior Court, State of California (Solano County), Case No. VCR223119.

**Deposition:**  January 8, 2016.  Doris Ray Knox v. City of Fresno, et al.  USDC Case No. 1:14‒CV‒00799 EPG.

**Deposition:**  January 11, 2016.  Refugio Nieto, et al., v. City and County of San Francisco, et al., Case No.: C14-03823-NC.

**Deposition:**  January 12, 2016.  Garry Bradley, v. County of Los Angeles, et al. Superior Court, State of California (Los Angeles County), Case No. BC473200.

**Deposition:**  January 13, 2016.  Jesse Trevino, v. Bakersfield Police Department, et al., Case No. 1:14-CV-01873 JLT.

**Deposition:**  January 21, 2016.  Richard A. Collender, et al., v. City of Brea, et al.  USDC Case No. SACV 11000530 AIJ-MLGx.

**Deposition:** January 26, 2016.  The Estate of Cecil Elkins, Jr., et al., v. California Highway Patrol, et al., Case No.: 1:13-CV-01483-AWI-SAB.

**Trial:**  February 2 and 3, 2016.  Dorothy Jean Sams, et al, v. City of Los Angeles, et al.  Superior Court, State of California (Los Angeles County), Case No. BC537879

**Deposition:**  February 4, 2016.  Rayven Vinson, et al, v. City of Los Angeles, et al. USDC Case No.: CV 14-4488-PLA.

**Deposition:**  February 10, 2016.  V.W., a minor, et al., v. Robert Nichelini, et al., Case No.: 2:12-CV-01629-LKK-AC.

**Deposition:**  February 12, 2016.  Maria Del Carmen Rivas, et al., v. City of Los Angeles, et al., Case No.:2:15-CV-000456-JFW-JEM.

**Trial:**  February 19, 2016.  Esperanza Booke, et al, v. City of Sanger, et al., Case No.: 1:13-cv-00586-AWISAB.

**Deposition**: February 22, 2016.  Fernando Del Castillo, et al., v. City of Tempe, et al., Case No.: CV-214-1945-PHX-DLR.

**Deposition:**  February 29, 2016.  J.A.L., a Minor, et al, v. Mike Santo, et al.  USDC Case No.: CV-15-00355.

**Trial:**  March 2, 2016.  Richard A. Collender, et al., v. City of Brea, et al.  USDC Case No. SACV 11000530 AIJ-MLGx.

**Deposition:**  March 3, 2016.  Michael A. Storms, v. City of Clarkston, et al., Case No.: 2:14 CV 000254 TOR.

**Trial:**  March 7, 2016.  Refugio Nieto, et al., v. City and County of San Francisco, et al., Case No.: C14-03823-NC.

**Deposition:**  March 15, 2016.  J.J.D. v. City of Torrance, et at.  USDC Case No. CV14-07463-BRO-MRW.

**Trial:**  March 17, 2016,  People v. Mark Cappello, Superior Court, State of California (Sonoma County).  Case No. SCR-630974.

**Deposition:**  March 23, 2016.  Ioana Aronovici, v. City of Anaheim, et al., Orange County Superior Court Case No. 30-2014-00762502 CU-PA-CJC.

-18-

**Deposition:** March 25, 2016.  Reynalda Molina, et al, v. City of Visalia, et al.  CASE NO. 1:13-CV-01991-LJO-SAB.

**Deposition:** April 4, 2016.  Ayounna McClinton (Estate of Duane Strong), v. City of Tallahassee, et al., Case No.: 4:15-CV-278-RH/CAS.

**Trial:** April 1 & 5, 2016.  K.C.R. (Rivera) a minor, et al, v. County of Los Angeles, et al.  USDC Case No. CV 13-03806 PSG (SSx).

**Trial:** April 5, 2016.  J.J.D. (Dolak) v. City of Torrance, et al.  USDC Case No. CV14-07463 BRO-MRW.

**Trial**: April 6, 2016. Garry Bradley, v. County of Los Angeles, et al.  Superior Court, State of California (Los Angeles County) Case No. BC473200.

**Trial:** April 12, 2016.  Jesse Michael Espinoza, v. City of Mesa, et al.  USDC (Arizona) Case No. CV2013-092842.

**Deposition:** April 14, 2016.  The Estate of Anthony Agustin Banta, et al. v. City of Walnut Creek, et al.  USDC Case No. C13-00342 CRB.

**Deposition:** April 18, 2016.  Stephen McCollum et al., v. Texas Department of Criminal Justice, et al.  Case No.3:12-CV-02037.

**Deposition:** April 27, 2016.  Tan Lam v. City of Los Banos, et al.  Case No. 2:15-cv-00531 MCE, KJN

**Deposition:** May 2, 2016.  Edsell Ford, et al. v City of Los Angeles, et al.  USDC Case No. CV14-7268 JFW - MAN.

**Deposition:** May 4, 2016.  Susan Mellen, et al. v. City of Los Angeles, et al., Case No. CV15-03006 GW (AJWx).

**Deposition:** May 10, 2016.  Dennis Mitchell Mueller, v. Deputy Manuel Cruz, County of Orange, et al.  USDC Case No. CV 13-01274 CJC (JCGx).

**Deposition:** May 13, 2016.  Robert Jackson III, v. County of San Bernardino, et al.  USDC Case No. EDCV 13-01650-JGB (DTBx).

**Trial:** May 17, 2016.  Gordon v. Harris County et al.,USDC Case No. 4:14-cv-03463, S.D. of Texas (Houston).

**Deposition:**  May 27, 2016.  Oscar Ramirez, Sr. v. County of Los Angeles; Bryan Moreno, et. al.U.S. District Court Case No.:  CV 15-03062 AB (PLAx).

**Deposition:**  June 6, 2016.  Brett Lewis, v. Café Club Fais Do Do, et al., Superior Court, State of California  (Los Angeles County), Case No. BC 468234.

**Trial:**  June 13, 2016.  Rayven Vinson, et al, v. City of Los Angeles, et al. USDC Case No.: CV 14-4488-PLA.

**Deposition:**  June 14, 2016.  Edin S. Castellanos, v. State of California, et al., Case No.: 4:15-cv-00272-JSW.

**Deposition:**  June 20, 2016.  Lance McClain, et al, v. City of Eureka, et al. Case No. 3:15-cv-02070 WHO.

**Deposition:**  June 21, 2016.  Moises Palacios, Victoria et al., v. City of Los Angeles, et al., Case No.: 14-cv-09639-MJF (AJWx).

**Trial:**  June 24, 2016.  Brett Lewis, v. Café Club Fais Do Do, et al., Superior Court, State of California  (Los Angeles County), Case No. BC 468234.

**Deposition:**  June 29, 2016.  Terence Wyatt, v. Gary Colbert, et al., USDC Case No. 5:15-cv-586.

**Deposition:**  June 30, 2016.  Sergio Pina v. City of Los Angeles, et al. USDC Case No. 13-CV-04989-FMO-MRW.

**Deposition:**  July 8, 2016.  R.R.R., et al. v. City of Banning, et al., USDC Case No. 5:14-cv-01430-CAS-FFM.

**Deposition:**  July 13, 2016.  Justin L. Palmer, v. City of Santa Monica, el al., Case No.: 2:15-cv-06183-SJO-JC.

**Trial:**  July 14, 2016.  Robert Jackson III, v. County of San Bernardino, et al.  USDC Case No. EDCV 13-01650-JGB (DTBx).

**Trial:**  July 18, 2016.  Edin S. Castellanos, v. State of California, et al., Case No.: 4:15-cv-00272-JSW.

**Deposition:**  July 21, 2016.  Arthur Scott, v. City of San Diego, et al.  Superior Court, State of California (San Diego County), 37-2015-00001940 CU-OE-CTL.

**Deposition:** July 28, 2016.  1506.  Gladis Herrera, et al. v. City of Ontario, et al.  Case No. 5:15-cv-01370.

**Deposition:** August 1, 2016.  Estate of Andrea Naharro (Barnard), et al., vs. County of Santa Clara, et al., Case No.: 14-04570.

**Trial:** August 3 & 4, 2016.  Dennis Mitchell Mueller, v. Deputy Manuel Cruz, County of Orange, et al.  USDC Case No. CV 13-01274 CJC (JCGx).

**Deposition:** August 5, 2016.  Sarai Urdez Navarro, et al., v. County of Riverside, et al. USDC Case No. ED CV14-01201 GHK (PLAx).

**Trial:** August 11, 2016.  Daniel L. Kloberdanz, v. Joseph M. Arpaio, et al., USDC Case No.: 2:13-cv-02182-PHX-JWS.

**Deposition:** August 17, 2016.  Catherine Smith, et al., v. County of Butte, et al.  USDC Case No. 2:15-CV-00988 GEB-CMK.

**Deposition:** August 25, 2016.  Joshua Osorio, et al. v. State of California (CHP) et al.  Superior Court State of California (San Diego County) Case No. 37-2013-0072536 CU-CR-CTL

**Deposition:** August 26, 2016.  J.L.D. (Douchet), et al, v. City of Los Angeles, et al.  USDC Case No. CV11-03141 SVW - MAN.

**Trial**: August 29, 2016.  People v. Gabrielle Lemos.  Superior Court, State of California, Sonoma County Case No. SCR-674200.

**Trial:** August 31, 2016.  Justin L. Palmer, v. City of Santa Monica, el al., Case No.: 2:15-cv-06183-SJO-JC.

**Deposition:** September 2, 2016.  Maria Teresa Abrego, et al, v. City of Los Angeles, et al.  Case No. CV15-00039 BRO (JEMx).

**Trial:** September 9, 2016.  1518.  J.L.D. (Douchet), et al, v. City of Los Angeles, et al. Superior Court Case No. CV11-03141 SVW - MAN.

**Trial:** September 15, 2016.  The Estate of Anthony Agustin Banta, et al. v. City of Walnut Creek, et al.  USDC Case No. C13-00342 CRB.

**Deposition:** October 7, 2016.  Teresita Garcia, et al, v. County of Los Angeles, et al.  State of California, Superior Court (Los Angeles County), Case No. BC553204.

**Deposition:**  October 17, 2016.  Robert Zambrano, et al, v. Redondo Beach, et al.  State of California, Superior Court (Los Angeles County), Case No. BC566142.

**Deposition:** October 18, 2016.  Nyla Moujaes v. San Francisco Police Department Officer David Wasserman and Sergeant Gary Buckner, Case No.: 3:15-cv-03129 DMR.
Client Attorney:

**Deposition:**  October 19, 2016.  Richard Vos, et al, v. City of Newport Beach, et al., Case No.: 8:15-cv-00768-JCG.

**Deposition:**  November 1, 2016  Darren Donald Liess, et al. (Darren) v. City of Los Angeles, et al.  Superior Court Case No. BC541691.

**Trial:** November 3, 2016.  1506.  Gladis Herrera, et al. v. City of Ontario, et al.  Case No. 5:15-cv-01370.

**Deposition:**  November 7, 2016.  Adolfo Garcia, et al v. William Davidson, et al.  Superior Court (San Diego County) Case N0. 37-2014-00021070 CU-CR-CTL.

**Deposition:**  November 15, 2016.  1546.  Keivon Young v. County of San Bernardino, et al.  Case No. 5:15-CV-01102 JGB-SP.

**Trial:**  November 17, 2016.  Lance McClain, et al, v. City of Eureka, et al. Case No. 3:15-cv-02070 WHO.

**Deposition:**  November 21, 2016.  Mark Covert, v. City of San Diego, et al, USDC Case No.: 15cv2097 AJB (WVG).

**Trial:**  November 23, 2016 and November 28, 2016.  Emmanuel Bracy, v. City of Los Angeles, et al.  Case No. C13-09350 (JC).

**Trial:**  December 1, 2016.  Keivon Young v. County of San Bernardino, et al.   Case No. 5:15-CV-01102 JGB-SP.

**Trial:**  December 2, 2016.  Terence Wyatt, v. Gary Colbert, et al., USDC Case No. 5:15-cv-586.

**Trial:**  December 8, 2016.  People v. George Clayton Maurer II.  Superior Court, State of California (Los Angeles County) Case No. 5JB09210.

**Trial:**  December 9 & 12, 2016.  Darren Donald Liess, et al. (Darren) v. City of Los Angeles, et al.  Superior Court, State of California (Los Angeles County) Case No. BC541691.

**Trial:**  December 16, 2016.  Nyla Moujaes v. San Francisco Police Department Officer David Wasserman and Sergeant Gary Buckner, Case No.: 3:15-cv-03129 DMR.

**Deposition:**  December 21, 2016.  Anthony T. Baker, v. City of Glendale, et al., Case No.: 2:15-cv-02432-DLR.

**Deposition:**  January 3, 2017.  Wilmer Deckard and Nicol Deckard, v. City of Anaheim, et al., Superior Court, State of California (Los Angeles County), Case No 30-2015-00819021 CU-CR-CJC

**Deposition:**  January 4, 2017.  The Estate of Julian Ramirez-Galindo, et al., v. Untied States of America, et al., Case No.: 15-CV-1694 W(NLS).

**Deposition:**  January 5, 2017.  Karen Fusilier, v. County of San Bernardino.  Superior Court, State of California (San Bernardino County), Case No. CIVDS1313206.

**Deposition:**  January 11, 2017.  I.A. and C.S., et al., vs.  City of Emeryville, et al., Case No.: 4:15-cv-04973-DMR.

**Deposition:**  January 13, 2017.  The Estate of Ashley DiPiazza, et al., v. City of Madison, and Justin Bailey, Gary Pihlaja, and Carey Leerek, Case No.: 16cv060.

**Trial:**  January 18, 2017.  Arthur Scott, v. City of San Diego, et al.  Superior Court, State of California, (San Diego County).  Case No. 37-2015-00001940 CU-OE-CTL

**Deposition:**   January 24, 2017.  William Mears, et al., v. City of Los Angeles, Case No.: CV 15-08441 JAK (AJWx).

**Deposition:**   January 27, 2017, Sylvia Perkins, as Personal Representative of the Estate of Bobby Moore, III, Deceased, vs. Joshua Hastings, et al., Case No.: 4:14-CV-310-BSM.

**Deposition**:  January 31, 2017.  Ian Medjes v. City of Los Angeles, et al. Case No. CD Cal. 2:14-cv-5377-DDP-RZ.

**Deposition:**  February 3, 2017.  S.R. Nehad (Rawshaneehad), et al v. City of San Diego, et al. Case No. 15-cv-1386-WQH-NLS

**Deposition:**  February 21, 2017.  Osvaldo Ureta, et al. v. County of Los Angeles, et al.  Superior Court, State of California (Los Angeles County), Case No. BC501051.

**Trial:**  February 22, 2017.  Maria Teresa Abrego, et al, v. City of Los Angeles, et al.  Case No. CV15-00039 BRO (JEMx).

-23-

**Trial:**  February 28, 2017.  1428.  Alice Smithen, v. United States of America (U.S. Marshall), et al.  Case No. CV 09-0414 GW (PJWx).

**Trial:**  March 1, 2017.  Wilmer Deckard and Nicol Deckard, v. City of Anaheim, et al., Superior Court, State of California (Los Angeles County), Case No 30-2015-00819021 CU-CR-CJC.

**Trial:**  March 6, 2017.  Regarding: Russell Martinez v. Joseph Salazar, et al., D.N.M. Case No. 14-cv-00534 KG/WPL (Albuquerque, NM.)

**Deposition:**  March 9, 2017.  Maria Delores Ramirez, v. City of Los Angeles, et. al.  USDC Case No: CV 15-02179 MWF (FFMx).

**Deposition:**  March 17, 2017.  Lisa Lopez, et. al., v. County of Los Angeles, et al., USDC Case No.: CV 16-00098-AB-KS

**Deposition:**  March 24, 2017.  Monica Ramirez, et al, v. City of Los Angeles, et al.  Superior Court State of California (Los Angeles County), Case No. BC597276.

**Deposition:**  March 27, 2017.  Sheronda A. Byrd-Givens, et al, v. Stephen E. Asch, et al., Case No. 2 :16-cv-00410-MHW-KAJ D.

**Trial:**  March 28, 2017.  Maria Delores Ramirez, v. City of Los Angeles, et. al.  USDC Case No: CV 15-02179 MWF (FFMx).

**Deposition:**  April 3, 2017.  Walter Deleon, et al., vs. City of Los Angeles, et al., Case No.: 2:16-cv-03721-FMO-RAO. 1595

**Trial:**  April 5, 2017.  Joshua Osorio, et al. v. State of California (CHP) et al.  Superior Court State of California (San Diego County) Case No. 37-2013-0072536 CU-CR-CTL

**Deposition**  April 7, 2017.  Channel Centeno, et al., v. City of Fresno, et al., Case No.: 1:16-CV-00653-DAD-SAB.

**Deposition:**  April 10, 2017.  Allen B. Shay v. County of Los Angeles – Case No. 15-CV-4607 CAS (RAO).

**Deposition:**  April 14, 2017.  Eliel Paulino, v. Marco Cruz, et al., Case No. CV16-02642-NC.

**Trial:**  April 20, 2017.  Marius Mitchell v. Neal A. Robertson, Case No.: 2:16.

**Deposition:**  April 24, 2017.  Mercedes Hernandez, v. Department of Motor Vehicles, et al. Superior Court Case No. BC588742.

**Deposition:**  April 26, 2017.  Daniel Smith v. City of Anaheim, et al.  Case No. SACV15-1776 CJC (DFMx).

**Trial:**  April 27 &28, 2017.  Ray Webb, v. Officer J. Ackerman, (Long Beach) et al., Case No.: CV013-09112.

**Deposition:** May 8, 2017.  Ethan Morse vs. County of Merced, et al., Case No.: 1:16-CV-00142-DAD-SKO.

**Deposition:**  May 10, 2017.  Dyrone Leake, Sr. v. City of Los Angeles, et al.  Superior Court Case No. BC 606819.