1  DENNIS M. COTA, Bar No. 127992
   dcota@cotalawfirm.com
2  RONALD J. SCHOLAR, Bar No. 187948
   rscholar@cotalawfirm.com
3  CAROLYN J. FRANK, Bar No. 245479
   cfrank@cotalawfirm.com
4  COTA COLE & HUBER LLP
   2261 Lava Ridge Court
5  Roseville, CA  95661
   Telephone:    (916) 780-9009
6  Facsimile:    (916) 780-9050

7  Attorneys for Defendants
   JEREMY EDENS, KEVIN HESS, GABRIEL
8  GUERRERO, JAMES MANOR, IRSHAD
   MOHAMMED, ERIKA GONZALEZ, SGT.
9  DUANE CANTWELL, PAUL DONA, AND
   EDWARD WEBB

10

11

12                    UNITED STATES DISTRICT COURT

13                  FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BREANNA COOKE, individually and as Co-Successor-In-Interest for Decedent JAMES COOKE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> JEREMY EDENS, in his individual and official capacity as Police Officer of the City of Stockton, et al., <br><br> Defendants. | Case No. 2:14-CV-00908-KJM-KJN <br><br> Hon. Kimberly J. Mueller <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 1: MOTION TO EXCLUDE TESTIMONY OF DR. BENNETT OMALU** <br><br> Pretrial Conference: <br> Date:   September 8, 2017 <br> Time:   10:00 a.m. <br> Courtroom   3, 15th Floor <br><br> Trial: <br> Date:   October 23, 2017 <br> Time:   9:00 a.m. <br> Courtroom   3, 15th Floor |

{RJS/00053409. }

TO ALL PARTIES HEREIN AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at the final pretrial conference in the above-referenced matter on September 8, 2017, at 11:00 a.m. in Courtroom 3 of the above entitled Court, Defendants Jeremy Edens, Kevin Hess, Gabriel Guerrero, James Manor, Irshad Mohammed, Erika Gonzalez, Sgt. Duane Cantwell, Paul Dona, and Edward Webb (hereinafter "Defendants"), will, and hereby do, move this Court *in limine* to exclude Plaintiffs from introducing evidence as follows:

**Motion in Limine No. 1: To exclude certain opinion testimony from Plaintiffs' non-retained expert Dr. Bennet Omalu, as described more fully in the Memorandum of Points and Authorities below.**

This Motion is made following the conference of counsel pursuant to the Court's Standing Order and Pretrial Scheduling Order which took place by telephone on August 18, 2017. During that conference, the parties were not able to come to agreement on the issues discussed below. Defendants therefore seek an order *in limine* to exclude evidence related to the book and movie *Concussion* and Dr. Omalu's role in the same and also to exclude evidence at trial related to Dr. Omalu's opinions regarding the WRAP applied in this case under Federal Rules of Evidence 401, 403 and 702.

This motion is based on this Notice of Motion, the Memorandum of Points and Authorities, and Declaration of Carolyn Frank attached hereto, the records and pleadings on file in this matter, and upon any such further oral and documentary evidence as may be presented at the hearing of this motion.

Dated: August 18, 2017                COTA COLE & HUBER LLP


                                      By:   */s/ Ronald J. Scholar*
                                            Dennis M. Cota
                                            Ronald J. Scholar
                                            Carolyn J. Frank
                                            Attorneys for Defendants

{RJS/00053409. }                            1

# MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Federal Rules of Evidence 401 and 403, Defendants move to exclude testimony, questioning, argument, or reference of any kind relating to the following specific issues involving Plaintiffs' expert, Dr. Bennett Omalu:

1.  Dr. Omalu's statements, writings, or publications, whether by Dr. Omalu or about him, as relating to his work, experience, or theories involving brain injury or trauma, including but not limited to the condition known as Chronic Traumatic Encephalopathy (CTE). Such testimony is irrelevant and unduly prejudicial and confusing to a jury, as the events at issue do not involve a brain injury or concussion.

2.  The film portrayal of Dr. Omalu in the movie *Concussion*, including any reference to the film, the actors therein, any book version of that film, or any editorial or review of that film or its actors, as any such reference is both irrelevant and unduly prejudicial to Defendants.

3.  Dr. Omalu's statements or opinions as relating to the WRAP device at issue. Dr. Omalu lacks foundation upon which to offer any expert testimony on this device, and any such testimony by this witness exceeds the scope of his expertise.

## I.   SUMMARY OF FACTS RELEVANT TO THIS MOTION

Following a traffic stop in the early morning hours of April 12, 2012, James Cooke attempted to evade Stockton Police officers by first running from his vehicle, then engaging Officers Eden and Hess in an extensive physical altercation. Because of his protracted resistance, the efforts of multiple officers were ultimately required to gain control of Mr. Cooke and place him in custody. Efforts to prevent Mr. Cooke's continued violent resistance included placing him in a cloth restraint called "The WRAP," a unit which concurrently contained his legs and shoulders. While in handcuffs and restrained by The WRAP, Mr. Cooke was placed in an upright, seated position in the back of a Stockton Police patrol car and was transported to the hospital for a pre-booking examination. Upon arrival at the hospital, it was discovered that Mr. Cooke was nonresponsive and he was subsequently pronounced dead.

The autopsy of Mr. Cooke's body was performed by Dr. Bennet Omalu of the San Joaquin County Coroner's Office. He listed the cause of death as positional asphyxia with hypertensive

cardiovascular disease and coronary atherosclerotic disease as contributing factors. Mr. Cooke's death was in no way attributed to head trauma or concussion. In his deposition testimony, Dr. Omalu subsequently confirmed that his conclusions regarding Mr. Cooke's death did not include any cause relating to head injury.

> Q. So that congestive brain swelling isn't anything that you would relate to being struck in the head?
>
> A. Less likely. I examined independent the brain. He did not have any concussive brain injury, no.

Dep. of Dr. Bennet Omalu at 71:2-7.[1]

Aside from his work as the medical examiner in this case, Dr. Omalu has garnered significant fame and notoriety. He is credited with the discovery of Chronic Traumatic Encephalopathy, or CTE, a brain disease that has been discovered in several former professional football players. The story of his discovery, and battles with the National Football League, was the subject of the 2015 motion picture *Concussion*, in which Dr. Omalu is played by actor Will Smith. Publicity of the issue continues to the present time. *See, e.g.,* Almond, Elliott, et al., Concussion' doctor: Youth football is child abuse: Bennet Omalu, the pathologist who discovered CTE, says children under 18 shouldn't play the game, San Jose Mercury News, Aug. 9, 2017, available at http://www.mercurynews.com/2017/08/09/concussion-doctor-youth-football-is-child-abuse.

Plaintiffs have designated Dr. Omalu as a non-retained expert and will call him to testify at trial. Notwithstanding Dr. Omalu's conclusion in this case that Mr. Cooke did not suffer concussive brain injury, Plaintiffs have indicated in the meet and confer on this motion that they intend to raise the issue of Dr. Omalu's fame and notoriety arising from his work in that field. Defendants now move to exclude any such evidence, argument, or mention on the grounds that it is not relevant to any issue in this case and would be unduly prejudicial to Defendants and confusing to the jury. Defendants also move to exclude any testimony from Dr. Omalu about The

---

[1] A true and correct copy of relevant pages of Dr. Omalu's deposition transcript are attached hereto as Exhibit "A."

{RJS/00053409.}

- 3 -

WRAP and its application in this case on the ground that he has no foundation for such testimony and it falls outside his area of expertise.

## II. LEGAL STANDARD

The provisions of Federal Rules of Evidence 401 and 403 frame the determination of whether the evidence relating to Dr. Omalu, as challenged here by Defendants, is appropriately excluded as irrelevant or unduly prejudicial. The initial determination of relevance is framed by the provisions of Federal Rule of Evidence 401, which provides that evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

Assuming both prongs of the Rule 401 test for relevant evidence are met, and proffered evidence of a non-party's experiences rise to a level of being "of consequence in determining the action," Rule 403 then compels "balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that has already been found to be factually relevant." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008) (citation omitted). Rule 403 expressly provides that:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

In *Sprint*, the United States Supreme Court cautioned that applying Rule 403 to assess whether the probative value of evidence is outweighed by its prejudice requires a "fact-intensive, context-specific" inquiry. 552 U.S. at 388; *see also Heyne v. Caruso*, 69 F.3d 1475, 1479–81 (9th Cir. 1995).

Application of these rules to each of the challenged categories of evidence here confirms the inadmissibility of that evidence.

///

///

### III. BOTH FEDERAL RULE OF EVIDENCE 401 AND RULE 403 PRECLUDE PRESENTATION OF EVIDENCE OF DR. OMALU'S WORK IN THE FIELD OF BRAIN TRAUMA AND HEAD INJURY

Dr. Omalu himself has testified that the death of Mr. Cooke was not a result of a head injury. Presentation of Dr. Omalu's experience and training related to head injuries and brain trauma would have no relevance to this case. Such unrelated evidence fails to satisfy the threshold requirement of Federal Rule of Evidence 401(b) – that the evidence be of consequence in determining the action.

Here, evidence of Dr. Omalu's specialized work with regard to head injuries would serve only confuse the jury as to the nature of Mr. Cooke's injuries. Further, such testimony would consume undue court time as Plaintiffs attempt to enhance the significance of their expert's testimony with credentials unrelated to the issues of this case. All such efforts constitute the undue prejudice excluded by Federal Rule of Evidence 403, as quoted above.

Any testimony relating to Dr. Omalu's experience in dealing with head injuries offers no assistance to the jury, but amounts to little more than a thinly veiled effort to prompt jurors to identify this witness as the doctor who battled the NFL over the issue of player brain injury. While presentation of an expert's credentials, even if tangential to the issues of the case, would not ordinarily generate undue prejudice to the opposing party; in this instance, the effort to capitalize on Dr. Omalu's fame in an unrelated area prejudicially seeks to enhance the credibility and significance of this witness's testimony.

Testimony by Dr. Omalu on the issue of head injury and trauma should be excluded here as both irrelevant and unduly prejudicial.

### IV. REFERENCE TO THE FICTIONALIZED FILM ACCOUNT OF DR. OMALU AFFORDS PLAINTIFFS A PREJUDICIAL ENHANCEMENT TO THE EXPERT'S CREDIBILITY AND SIGNIFICANCE

The fictionalized portrayal of Dr. Omalu in the 2015 film *Concussion* focuses on the identification and diagnosis of impact-related head trauma sustained by NFL football players and the condition known as CTE. The film gained critical acclaim, both relating to the quality of the performances and as to the treatment of the controversial subject of the film. The issue of head-impact trauma and CTE remains a media topic.

As discussed above, however, the death at issue in this case was not caused by head injury, and Dr. Omalu acknowledges that in his deposition testimony. References to Dr. Omalu's portrayal in the film *Concussion*, which features his work associated with head injuries, is irrelevant to the pending action involving James Cooke, and are appropriately excluded as failing to satisfy the FRE 401(b) requirement of being of consequence in determining this action.

Further, references to the film are prejudicial insofar as the heroic dramatization of Dr. Omalu in the film affords the witness additional fictional "credentials" inappropriately relied upon by the jury here. The only purpose Plaintiffs could have for mentioning Dr. Omalu's fame and notoriety on this unrelated issue would be to underscore the importance of the witness and his conclusions. Prompting the jurors to reach such conclusions, whether by direct reference to the film or less overt connections through commentary or questions relating to the film or the issues addressed there, serve to unduly prejudice the defense, in violation of FRE 403. All such testimony, questions, argument or reference should be excluded here as both irrelevant and unduly prejudicial.

Because directing the jury to the connection to this witness's fame would create substantial danger of unfair prejudice, confusion of the issues before the jury, and a significant waste of judicial time and resources, Federal Rule of Evidence 403 authorizes preclusion of testimony where the probative value is substantially outweighed by the danger of confusion of the issues, misleading the jury, or by considerations of undue delay, and waste of time. Each of those elements are evident here, and to the extent such testimony, questions, reference or arguments would run afoul of each of the prohibitions set forth in Federal Rule of Evidence 403, Defendants' Motion in Limine to bar any such testimony is appropriately granted.

V. **DR. OMALU IS NOT QUALIFIED TO TESTIFY REGARDING THE WRAP, AND SUCH TESTIMONY SHOULD BE BARRED**

Plaintiffs' designation of Dr. Omalu as a non-retained expert specifies his medical credentials, including his status as former Chief Medical Examiner of the Sheriff-Coroner's Office, County of San Joaquin. Plaintiffs declared that his testimony will relate to the "autopsy, cause and manner of death of Decedent COOKE." See Plaintiffs' Expert Witness Designation,

Docket No. 67, filed June 5, 2017. Nothing is specified regarding experience or training with regard to engineering, use, or operation of the device known as The WRAP.

Nevertheless, at his deposition, Dr. Omalu opined that The WRAP was likely utilized incorrectly here not based on any actual facts or evidence, but based on his opinion that "the product is tested in a controlled environment. And it's tested and used by experienced hands, many times experts who know how to use it. It is not like that in real life." Omalu Dep. at 76:3-25. This opinion is not based on Dr. Omalu's expertise as a coroner, nor is it based on any facts he observed in this case. Instead it is his speculation about something that might have happened. This type of speculation is impermissible under the Federal Rules.

Federal Rule of Evidence 702(a) permits expert opinion only when "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue." Here, Dr. Omalu has no technical or specialized knowledge of the subject restraint sufficient to qualify him to provide expert testimony. Any such testimony would be outside his expertise, and thus impermissible under FRE 702.

## VI.    CONCLUSION

In light of the above-stated points and authorities, Defendants respectfully request this Motion in Limine be granted pursuant to Federal Rules of Evidence 401, 403, and 702, and that the Court order the challenged evidence be precluded at trial, and there be no reference in any form to such evidence.

Dated: August 18, 2017

Respectfully submitted,

COTA COLE & HUBER LLP

By: _/s/ Ronald J. Scholar_
Dennis M. Cota
Ronald J. Scholar
Carolyn J. Frank
Attorneys for Defendants

## DECLARATION OF CAROLYN FRANK

I, Carolyn Frank, declare as follows:

1. I am an attorney licensed to practice law in the State of California and admitted to practice before this Court. I am a partner at Cota Cole & Huber LLP, counsel of record in the above-captioned case for Defendants. I have personal knowledge of the following facts and if called upon to testify thereto, could and would do so competently.

2. Attached hereto as Exhibit "A" is a true and correct copy of relevant pages from the deposition of Dr. Bennet Omalu in this case.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed this 18th day of August, 2017 at Roseville, California.

/s/ *Carolyn Frank*
Carolyn Frank

Exhibit A

```
 1                 UNITED STATES DISTRICT COURT

 2            FOR THE EASTERN DISTRICT OF CALIFORNIA

 3

 4   BREANNA COOKE, individually and )
     as Co-Successor-In-Interest for )
 5   Decedent JAMES COOKE, et al.,   )
                                     )
 6                  Plaintiffs,      )
                                     )
 7         vs.                       ) Case No. 2:14-CV-00908-
                                     )          KJM-KJN
 8   JEREMY EDENS, in his individual )
     official capacity as Police     )
 9   Officer of the City of Stockton,)
     et al.,                         )
10                                   )
                    Defendants.      )
11   _____)

12

13

14

15         DEPOSITION OF BENNET I. OMALU,

16      MD, MBA, MPH, taken on behalf of the

17      Defendants, 2323 Grand Canal Boulevard,

18      Stockton, California, on Friday, July 14,

19      2017, at 9:29 a.m., before Shelley Miller,

20      Certified Shorthand Reporter No. 9194,

21      in and for the State of California.

22

23

24

25
```

```
 1              STOCKTON, CALIFORNIA, FRIDAY,
 2                JULY 14, 2017, 9:29 A.M.
 3
 4          (Whereupon, Exhibit Nos. 1 through 5 were
 5           marked for identification.)
 6
 7           BENNET I. OMALU, MD, MBA, MPH,
 8   called as a witness, having been first duly sworn
 9              by me, testified as follows:
10
11                        EXAMINATION
12   BY MR. SCHOLAR:
13       Q   Good morning, sir.
14       A   Good morning, sir.
15       Q   So my name is Ronald Scholar, and I work for a
16   law firm called Cota Cole & Huber.  And we represent the
17   defendants in the case of Cooke versus Edens.  And that
18   is a lawsuit against several City of Stockton police
19   officers over the death of a gentleman named James
20   Cooke.
21       A   Yes.
22       Q   It's my understanding you performed the autopsy
23   on Mr. Cooke; is that correct?
24       A   Yes, please.
25       Q   Do you recollect performing the autopsy on
```

```
 1   congestive brain swelling.
 2        Q    So that congestive brain swelling isn't
 3   anything that you would relate to being struck in the
 4   head?
 5        A    Less likely.  I examined independent the brain.
 6   He did not have any concussive brain injury, no.  No.
 7   So this is just an agony.
 8             Like if you see No. A.
 9        Q    Let me stop you there real quick because you
10   use the word "agony."  In what context -- what do you
11   mean by agony?  Like feeling pain or as a result of?
12        A    The agony of death is -- death as a
13   physiological process causes a biochemical imbalance.
14   And the biochemical imbalance, the organs sense it and
15   feel it.
16             And so in general terminology we use maybe as a
17   misnomer is the agony of death.  It's more -- it refers
18   more to the cellular level.
19        Q    I see.  That's what I thought you were getting
20   at.
21        A    Yes, sir.
22        Q    I just wanted to make sure it wasn't something
23   else.
24        A    Yes.
25        Q    And I cut you off, and I apologize.
```

```
 1     Q    The wrap.
 2     A    Uh-huh.
 3     Q    The device that was used on Mr. Cooke positions
 4    the body at a 90-degree angle, correct?
 5     A    I think when this was illustrated to me, the
 6    objective, I believe, was to place the individual in a
 7    sitting position.  But we all know that pragmatically in
 8    real life it's less likely to be ideal.
 9              And when -- in the management of products,
10    forensically because I've been involved in death of
11    human beings in relation to products of all types, the
12    product is tested in a controlled environment.  And it's
13    tested and used by experienced hands, many times experts
14    who know how to use it.
15              It is not like that in real life.  In real life
16    there are so many other contemporaneous factors that are
17    existent, and the ideal objective may not be attained.
18              For example, somebody is obese.  You strap him,
19    put him in a police vehicle, the tendency is for him to
20    fall with or without the strap.
21              And the danger is if a product is meant to
22    place somebody sitting up in a 90-degree angle, if for
23    whatever reason that person falls, that product is no
24    longer being used the way it should be used, and then
25    the greater the risk of harm.
```