JOHN L. BURRIS, Esq., SBN 69888
BEN NISENBAUM, Esq. SBN 222173
LAW OFFICES OF JOHN L. BURRIS
Airport Corporate Center
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200 Facsimile: (510) 839-3882
John.Burris@johnburrislaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BREANNA COOKE, et al.,<br><br>　　　　　Plaintiffs,<br>　v.<br><br>JEREMY EDENS, et al.,<br><br>　　　　　Defendants. | Case No.: 2:14-cv-00908-KJM-KJN<br><br>**PLAINTIFFS' AMENDED MOTION *IN LIMINE* NO. 3 TO EXCLUDE DEFENDANT'S RETAINED EXPERT ELIZABETH LAPOSATA, M.D., FROM OPINING THAT DECEDENT DIED FROM A "HEART ATTACK"**<br><br>Date:　　　　December 8, 2017<br>Time:　　　　10:00 a.m.<br>Courtroom　　3, 15th Floor<br><br>Trial Date: January 8, 2018<br><br>Hon. Kimberly J. Mueller |

# EXHIBIT A

Plaintiffs Amended Motion *in limine* No. 3 to exclude Defendant's retained　　　1
expert Dr. Laposata from opining that Decedent died from a "heart attack".

Forensic Pathology & Legal Medicine, Inc.
245 Waterman St., Suite 100
Providence, RI 02906
Tele 401-437-8037  Fax 401-437-8038

James F. Wilson, Esq.                                                                          May 3, 2017
Deputy City Attorney
Office of City Attorney, City Hall
425 North El Dorado Street
Stockton, CA 95202-1997

RE:      James S. Cooke, deceased
           *Breanna Cooke, et al. v. City of Stockton, et al.*
           U.S. District Court – Eastern D Case No. 2:14-CV-00908-KJM-KJN

                                        *Via E-Mail to:*    James.Wilson@stocktongov.com

Dear Attorney Wilson:

At your request, I have reviewed the materials listed in Appendix C beginning on page 10 of this report to gain full understanding of the circumstances and cause of death of James S. Cooke., a 57-year-old male who was pronounced dead at 2:34 AM on April 12, 2012, at San Joaquin General Hospital, Stockton, CA, after police transport from 1633 E. Bianchi Rd., Stockton.

I understand that the role of police actions, if any, in his demise is of particular interest.

The goal of the medicolegal death investigation is to recreate how the death occurred. To accomplish this, the forensic pathologist follows four distinct lines of inquiry that form the basis of all death investigations: (1) scene investigation, (2) forensic autopsy and laboratory testing, (3) police reports and witness statements, and (4) medical history and hospital records. Analysis of these essential elements was performed by the undersigned.

**Medical History**

Mr. Cooke's medical history is remarkable for severe uncontrolled hypertension. His medical records from San Joaquin General Hospital, French Camp, CA, and from St. Joseph's Medical Center, Stockton, CA, from 1989 to his terminal ER visit of April 12, 2012, were reviewed. Over this 23-year period, dating from the age of 34 to 57 years old, he visited the emergency room 34 times, not counting his terminal admission, with 30 of those visits between 2001 and 2012. At each visit his blood pressure readings showed significantly elevated blood pressure. (See Appendix A on page 8 of this report for Mr. Cooke's tabulated blood pressure readings).

He complained of headaches at each hospital visit, along with dizziness and vision problems, all symptoms of uncontrolled high blood pressure. Significantly, in his visit of December 13, 2003, he was

Case 2:14-cv-00908-KJM-KJN Document 110-1 Filed 11/07/17 Page 3 of 14
Case 2:14-cv-00908-KJM-KJN Document 65-1 Filed 06/02/17 Page 2 of 13
James S. Cooke, deceased      Forensic Pathology & Legal Medicine, Inc.   Elizabeth A. Laposata, MD, FCAP, FASCP

diagnosed with a hemorrhagic stroke (brain infarction with a 2 x 3 cm area of bleeding in the cerebellum) due to his uncontrolled hypertension. Fortunately, he suffered no permanent neurologic deficits from that bleed. He also had evidence of kidney damage from hypertension (reduced glomerular filtration rate). As early as March 1996, his EKG showed evidence of hypertensive heart disease (left ventricular hypertrophy). He was continually advised that he needed to take prescription blood pressure medication, but he was continually non-compliant. He did not have a primary care physician.

In general, a blood pressure equal to or greater than 180/110 is defined as severe blood pressure elevation. When end organs such as the heart, brain, and kidney are damaged, as seen with Mr. Cooke, a diagnosis of a hypertensive emergency can be considered. Other classifications of hypertension also place Mr. Cooke in the diagnostic category of severe hypertension (Stage 2 out of the progression of prehypertension, Stage 1 hypertension, and Stage 2 hypertension) with systolic blood pressure > 169 mmHg or diastolic >100 mm Hg. It is well known that untreated severe hypertension puts the patient at increased risk of heart failure, atherosclerotic coronary artery disease, and sudden cardiac death.

Finally, at least since 2003, his blood glucose levels were elevated in the range of 180s to 220s mg/dL (normal: 70 to 100 mg/dL; up to 120 mg/dL after a meal). He was diagnosed with Type II diabetes mellitus and hyperlipidemia but did not follow treatment regimens for either condition. Thus, Mr. Cooke had long standing severe hypertensive heart disease, diabetes, and hyperlipidemia, all untreated.

**Events of October 23-24, 2012**

According to the Stockton Police Department Incident History Detail log, at 1:45 AM on April 12, 2012, police officers Hess (driver) and Edens (front passenger) began pursuing a Lexus 4-door sedan traveling in excess of the speed limit. The vehicle, operated by James S. Cooke, failed to heed police directions and drove his car into Torcello Apartments at 1633 E. Bianchi Road and parked in a marked space. Mr. Cooke exited the driver's side and walked quickly about 90 feet down the covered sidewalk/breezeway at the side of the apartment complex.

Both officers pursued Mr. Cooke on foot to where the sidewalk/breezeway dead-ended in a small grassy area enclosed by vegetation and metal fencing (note police photographs below).

 

Officer Edens reached Mr. Cooke first and ordered him to get onto the ground. He describes Cooke slipping on the wet grass, stumbling and hitting his head on the lower part of the metal fencing. Mr.

Case 2:14-cv-00908-KJM-KJN   Document 110-1   Filed 11/07/17   Page 4 of 14
Case 2:14-cv-00908-KJM-KJN   Document 65-1   Filed 06/02/17   Page 3 of 13

James S. Cooke, deceased        Forensic Pathology & Legal Medicine, Inc.  Elizabeth A. Laposata, MD, FCAP, FASCP

Cooke did not comply with police commands and a struggle took place between Mr. Cooke and the two officers in the grassy area. The officers describe pulling Mr. Cooke to the ground, trying to get on top of him to pull his arms out from under his body to handcuff him. During the encounter, Officer Hess reports striking Mr. Cooke in the face with his right hand and jabbing his flashlight in his rib area several times while Cooke was grabbing at the officers and yelling. Even with both officers trying to subdue Cooke, he could still lift himself up from the ground on his hands and knees.

Officers Guerrero, Mohammed and Manor then arrived. Officer Manor describes jabbing his baton several times in Cooke's rib area. At 1:48:10 AM Mr. Cooke was handcuffed behind his back. He continued kicking, pulling and yelling. The police officers reported that they were tired and winded after this approximate two-minute chase and struggle.

At 1:48:43 AM, the officers requested a restraint device called *The Wrap* brought to the area to better restrain Mr. Cooke. The officers were trained in the proper use and application of this device. The device consists of a strap to secure the ankles together, a rectangular reinforced cloth mat used to wrap the legs together, and a vest that goes over the head and attaches the detainee's torso with straps from the chest vest to the ankles (i.e., sitting upright with legs straight out). The detainee's cuffed hands are then clipped to a carabiner D-ring on the back waist strap of the vest. (See Appendix B on page 9 of this report for example photos of *The Wrap* components and restraint position). Other officers (Quinones, Swalls, Guerrero) who observed the application of *The Wrap* to Mr. Cooke noted that it had been applied correctly and in accordance with their training. The restraint application was complete at 1:50 AM. Officer Webb notes Mr. Cooke calmed down, and that he was breathing after the application of *The Wrap*.

Three officers carried Cooke to the police cruiser. His feet were put into the back seat from the driver's side to a final position where he was sitting upright with his back against the rear driver's side door. While Mr. Cooke was in that position, Officer Webb obtained fingerprints from his hands that were cuffed behind his back, using the *Blue Check* mobile fingerprint scanner. The officer describes that Mr. Cooke was actively pulling his hands away from the fingerprinting process. At that time, Officer Webb noted that Mr. Cooke was breathing, conscious and excessively sweaty. Officers Hess and Edens then drove Mr. Cooke from the Apartments at 1633 E. Bianchi Rd., Stockton, CA, to San Joaquin General Hospital, 500 W. Hospital Rd., French Camp, CA, for pre-booking medical clearance as per protocol.

During the drive, Mr. Cooke was quiet. Officer Hess could see that Mr. Cooke was in an upright position as he viewed him in the rearview mirror, but it was too dark to make any other observations. The police officers did not try to engage Mr. Cooke in any conversation, judging that such might disquiet him. The exact route taken could not be documented due to malfunction of the cruiser computer. However, Google Map indicates that the distance is between 9.9 to 13.5 miles, depending on the exact route and would be expected to take 18 to 20 minutes, observing the speed limits.

The patrol car arrived at San Joaquin ER at approximately 2:13 AM. At that time, Mr. Cooke had been in *The Wrap* restraint for about 23 minutes. The Officer Hess immediately opened the rear driver's side door. He noted that Mr. Cooke did not respond to verbal inquiry, and his chest was not moving. Hospital personnel brought a stretcher out to the patrol car to receive the patient. A nurse observed Mr. Cooke

Case 2:14-cv-00908-KJM-KJN   Document 110-1   Filed 11/07/17   Page 5 of 14
Case 2:14-cv-00908-KJM-KJN   Document 65-1   Filed 06/02/17   Page 5 of 13
James S. Cooke, deceased        Forensic Pathology & Legal Medicine, Inc.  Elizabeth A. Laposata, MD, FCAP, FASCP

seated at a 90° angle (upright) with hands cuffed behind his back. The police officers quickly lifted Mr. Cooke by the shoulders onto the stretcher, unclipped the vest-to-ankle strap so he could lie flat, and the stretcher was rolled into the ER. CPR was started when he was still handcuffed behind his back (they were later removed). He was intubated and given 5 rounds of epinephrine. Blood pressure readings were generated and oxygenation was accomplished during CPR. A point-of-care finger prick glucose was 211 mg/dL. However, despite 24 minutes of resuscitative efforts, spontaneous heart beat and circulation did not return and he was pronounced dead at 2:34 AM on April 12, 2012.

**Autopsy Findings**

An autopsy was performed at the San Joaquin County Office of the Coroner on April 12, 2012, with removal of brain only; on April 13, 2012, a full autopsy was completed. Mr. Cooke weighed 213 pounds and measured at 5'7'' in height. These measurements correspond to a body mass index (BMI) of 33.4, which is classified as Class 1 obesity.

Autopsy findings listed as recent injuries on the outside of the body (external trauma) were as follows:
Sparse petechial hemorrhages, right and left conjunctiva of the eyelids;
Contusions of mucosa of left upper and lower lips;
Purple abrasion/contusions left lateral abdomen;
Purple abrasion right lateral arm;
Black brown abrasion left lateral posterior distal forearm;
Small abrasion-laceration right distal dorsal index finger.

Findings listed as recent injuries on the inside of the body (internal trauma) were as follows:
Contusion of the right frontal scalp and underlying right temporalis muscle;
Three contusions in the right lateral chest wall;
Nondisplaced fracture of right lateral 8th rib with contusion (associated with contusion of underlying right hemidiaphragm);
Minimal hemorrhages in the coverings of the thoracic and lumbar spine;
Soft-tissue contusions and crush of soft tissue of the right and left lateral lumbar area of the back.

Mr. Cooke was also diagnosed with hypertensive cardiovascular disease (cardiomegaly with biventricular hypertrophy; interstitial fibrosis and nuclear hypertrophy of heart cells; damage to kidney blood vessels; damage to blood vessels in the brain); diabetes mellitus type II from clinical history (elevated vitreous glucose at autopsy; diabetic kidney disease; chronic skin ulcer of left lower leg) and coronary atherosclerotic disease (90-95% occlusion of left anterior descending coronary artery; 40-60% occlusion of right coronary artery; 30% occlusion of left circumflex coronary artery). Toxicology revealed the trimethoprim/sulfamethoxazole (an antibiotic used to treat infections) in his blood, in his vitreous humor and in his urine. There was no evidence of alcohol or drugs abuse.

The cause of death was listed as physical restraint and mechanical positional asphyxia with hypertensive cardiovascular disease and coronary atherosclerotic disease as contributing factors.

Case 2:14-cv-00908-KJM-KJN   Document 110-1   Filed 11/07/17   Page 6 of 14
Case 2:14-cv-00908-KJM-KJN   Document 65-1   Filed 06/02/17   Page 5 of 13

James S. Cooke, deceased        Forensic Pathology & Legal Medicine, Inc.   Elizabeth A. Laposata, MD, FCAP, FASCP

**Analysis**

As noted above, the correct determination of cause of death involves analysis of the circumstances of death, the medical history, witness statements, laboratory reports, police reports, scene investigation and autopsy findings. After giving careful study to each of these areas, there is inadequate evidence to support a diagnosis of death due to physical restraint and mechanical positional asphyxia as posited by the medical examiner.

Significant findings at autopsy revealed the absence of any injury substantial enough to cause death. The autopsy, in addition to examination of Mr. Cook's medical records, reveals that he had severe natural disease: untreated hypertensive cardiovascular disease, atherosclerotic coronary artery disease, and untreated diabetes.

Police reports document that a struggle took place wherein Mr. Cooke resisted being taken into custody. This lasted for about two minutes until handcuffs were applied. During this time he was yelling, and moving; while resisting efforts of the two police officers to subdue him. Police statements document that Mr. Cooke was slapped in the face and was jabbed with a flashlight and baton on the torso and possibly hit his head on the metal fence when he stumbled.  Injuries found at autopsy correspond to these events: contusions of the lip, contusions to the body wall with one underlying nondisplaced rib fracture. None of these injuries damaged internal organs or were life-threatening. The injury to the right front side of his head showed hemorrhage into the scalp and the underlying temporalis muscle.  The skin was not broken and no swelling was visible.  His skull was intact and there was no bleeding or injuries to the covering of the brain or the brain itself.   This minor head injury is consistent with his head striking the lower part of the metal fence as he stumbled.

He was then placed in *The Wrap*, a restraint device which immobilizes the legs and secures the person in a sitting position (with the torso/leg angle of 90°) and legs extended. This position is considered physiologically neutral although possibly uncomfortable. The seated upright position does not cause significant reduction in lung functions.  Importantly, a person who is restrained in *The Wrap* cannot be place in a face-down (prone) position. Mr. Cooke was alive after he had been placed in *The Wrap*, a process which took about 2 minutes, as police noted that he was breathing and moving his fingers during fingerprint scanning.  Only four minutes elapsed from the time Mr. Cooke drove into the apartment complex to his placement in *The Wrap*.

During the drive to the hospital, Mr. Cooke did not voice any complaints or make any unusual noises and remained upright in the backseat.  As expected, travel time was approximately 20 minutes. Mr. Cooke was still in an upright position in the back seat when he arrived at the hospital and was not wedged or in any contorted position, such that his breathing would be restricted.  He was quickly lifted by the two officers from the back seat to the stretcher. Mr. Cooke was released from the sitting position to lie on the stretcher, but his hands remained cuffed behind his back, attached to *The Wrap* waist band during CPR; the cuffs were later removed as CPR continued in the ER.

CPR is well known to produce injuries and other findings on the body.  Such was the case with Mr.

Case 2:14-cv-00908-KJM-KJN   Document 110-1   Filed 11/07/17   Page 7 of 14
Case 2:14-cv-00908-KJM-KJN   Document 65-1   Filed 06/02/17   Page 6 of 13

James S. Cooke, deceased        Forensic Pathology & Legal Medicine, Inc.  Elizabeth A. Laposata, MD, FCAP, FASCP

Cooke.  Chest compressions are known to cause petechial hemorrhages in the conjunctiva as found in Mr. Cooke's eyes.  During CPR, blood is forced into the head but may not return effectively to the heart, thereby causing increased pressure in the small blood vessels that bleed and cause the dot-like petechial hemorrhage. The finding of petechial hemorrhages in the conjunctiva of the eyes never stands alone as diagnostic of traumatic asphyxia. Further, the chest compressions pushed Mr. Cooke's torso down onto the surface of the hard stretcher, with his hands behind his back encircled by metal handcuffs and clipped onto the metal carabiner, positioned between his body the stretcher.  This was responsible for the contusions and tissue compression found at autopsy (soft-tissue contusions and crush of soft tissue of the right and left lumbar areas of the back,) along with the scant bleeding into the coverings of the spinal cord. Finally, intubation and rescue breathing can produce tears and bruising to the lips and oral mucosa.

Mr. Cooke experienced a sudden, unexpected and unpredictable cardiac arrest that occurred during his transport to the hospital. Mr. Cooke was clearly alive when placed in the back seat of the police car but was unresponsive and without pulse or respirations upon his arrival at the hospital.  His severe untreated hypertensive heart disease and atherosclerotic coronary artery disease placed him at a substantial risk for an unexpected cardiac arrhythmia during or shortly after any emotionally stressful episode or physical exertion. A cardiac arrhythmia is a malfunction of the heart's ability to conduct the sequential and organized contraction of individual heart muscle cells.  This leads to ineffective heart pumping and cessation of blood circulation. When blood is not pumped to the brain, unconsciousness occurs within about five seconds. Respiration then stops within minutes.

Mr. Cooke's heart was damaged by hypertension and coronary artery disease.  His long history of untreated severe hypertension caused his heart to enlarge (hypertrophy). At autopsy his heart weighed 590 gms with about 390 gms as the upper limit for an adult male heart. The heart wall muscle was thickened. Under the microscope, areas of heart cells where surrounded by fibrosis (scar tissue) which alters the conduction of the heart rhythm contractions from cell to cell.  Many heart cells also showed enlarged hypertrophied nuclei, and even double nuclei.  Further, the autopsy noted severe narrowing of the coronary arteries that supply blood flow to the heart, with up to 90 to 95% occlusion with atherosclerotic plaque.  This also increases the risk for cardiac arrhythmias especially during physical activity that increases the heart rate, as the heart may not receive the amount of blood it needs for proper function.

Short bursts of physical exertion or emotional stress are associated with an increased risk for sudden death particularly among individuals with low physical fitness and underlying cardiovascular disease, such as Mr. Cooke.

Finally, a post-exercise phase of low blood pressure is known to occur even after very brief periods of intense physical activity such as experienced by Mr. Cooke.  This post-exercise low blood pressure would have occurred during transport and added an additional risk factor for cardiac arrhythmia due to decreased blood flow to the heart.

A sudden expected stoppage of the heart is consistent with all the facts of the case. Such an occurrence would not be noticeable to police who were observing him the in backseat in the dark early morning hours of April 12, 2012.

Case 2:14-cv-00908-KJM-KJN   Document 110-1   Filed 11/07/17   Page 8 of 14
Case 2:14-cv-00908-KJM-KJN   Document 65-1   Filed 06/02/17   Page 8 of 13
James S. Cooke, deceased      Forensic Pathology & Legal Medicine, Inc.  Elizabeth A. Laposata, MD, FCAP, FASCP

## Conclusion

Mr. Cooke's cause of death is correctly attributed to cardiac arrhythmia due to physical exertion and struggle with police in the setting of severe untreated hypertensive and atherosclerotic heart disease. Injuries sustained during the encounter may have increased his stress level and discomfort but did not contribute to death. Additional injuries were caused by CPR. The correctly applied *Wrap* restraint is physiologically neutral and did not impede respiration.  Mr. Cooke's death was not caused by positional asphyxia.

My opinions are expressed to a reasonable degree of medical and scientific certainty. Should additional information become available, I will consider its importance and revise or supplement this report, if warranted.  Do not hesitate to contact me if additional questions arise.

Sincerely,

*Elizabeth Laposata MD.*

Elizabeth A. Laposata, MD, FCAP, FASCP

Case 2:14-cv-00908-KJM-KJN   Document 110-1   Filed 11/07/17   Page 9 of 14
Case 2:14-cv-00908-KJM-KJN   Document 65-1   Filed 06/02/17   Page 9 of 13
James S. Cooke, deceased      Forensic Pathology & Legal Medicine, Inc.  Elizabeth A. Laposata, MD, FCAP, FASCP

## Appendix A:   Mr. Cooke's Blood Pressure Readings from Medical Records

| Date of hospital presentation | Blood Pressure (Normal 120/80) | Date of hospital presentation | Blood Pressure (Normal 120/80) |
|---|---|---|---|
| 4/9/2012 | 180/110 | 6/21/2004 | 176/110 176/109 |
| 4/7/2012 | 160/110 | 4/26/2004 | 145/45 148/79 150/100 |
| 2/19/2012 | 210/130 190/104 | 1/31/2004 | 136/84 |
| 12/24/2009 | 193/122 | 1/9/2004 | 128/89 144/95 |
| 6/14/2009 | 187/106 184/116 | 12/13/2003 | 186/139 |
| 3/31/2009 | 184/115 | 10/29/2003 | 178/103 |
| 3/13/2008 | 180/115 216/134 | 9/2/2003 | 181/118 |
| 1/27/2008 | 139/96 150/95 | 8/21/2003 | 168/120 |
| 12/25/2007 | 165/94 183/106 192/112 163/129 198/139 | 9/17/2003 | 178/122 |
| 7/4/2007 | 181/109 | 9/3/2003 | 152/120 171/100 |
| 11/14/2006 | 166/101 194/131 | 12/12/2001 | 240/100 155/104 |
| 6/19/2006 | 154/98 159/101 | 3/29/1996 | 140/90 |
| 11/25/2005 | 130/84 | 4/5/1994 | 137/71 |
| 6/4/2005 | 129/87 151/98 | 1/3/1991 | 120/88 |
| 12/28/2004 | 161/117 151/98 142/97 | 8/10/1989 | 180/70 |
| 7/18/2004 | 134/84 | | |

## Appendix B:  Example of *The Wrap* Components and Completed Application on Volunteer

http://www.statesman.com/news/local/wrap-helps-cedar-park-police-restrain-suspects/tqthpyExDgTW09AgwnrUSJ/   American-Statesman Staff writer Claire Osborn 10/7/2015

Accessed 4/27/2017



Figure 1: *Wrap* Components



Figure 2: Completed *Wrap* Restraint of Volunteer

Case 2:14-cv-00908-KJM-KJN Document 110-1 Filed 11/07/17 Page 11 of 14
Case 2:14-cv-00908-KJM-KJN Document 65-1 Filed 06/02/17 Page 11 of 14
James S. Cooke, deceased    Forensic Pathology & Legal Medicine, Inc.   Elizabeth A. Laposata, MD, FCAP, FASCP

## Appendix C: Materials Reviewed

Index
Protocol Incident Briefing
Incident History
Crime Scene Log
Patrol reports
   Ofc. Edens
   Ofc. Perry
   Ofc. Quinones
   Sgt. Swails
   Ofc. Guerrero
   Ofc. McClure
   Ofc. Chambers
   Ofc. Ramirez
Team #1 reports
   Det. Faine
   DAI report -Det. Derksen
Team #2 reports
   Det. Harris
   DAI report -Det. Moreno
Team #3 reports
   Det Ezell
   DAI report -Det. Ridino
Team #4 reports
   Det Thrush
Detective report
   Det Martinez
SPD Evidence Technician reports
   EIT Flores
   EIT Kerry
   EIT Chelli
San Joaquin County Office of the Coroner, French Camp CA
   Autopsy report (#A12-0915 Bennet Omalu, MD 4/13/12)
   Investigative report (SJ Co Deputy/ Coroner Mendez)
   Toxicology report
Suspect information
Suspect vehicle information
Photos
   1. 193 color photos of Dec at hospital, PO injuries, suspect MV, scene
   2. 254 color photos of PO injuries, autopsy, PO cruiser
   3. 9 color photos of suspects MV
   4. 372 color photos at autopsy, PO cruiser, WRAP, clothing
   5. 35 color photos of police batons
Property cards
Related police reports
DOJ investigative report
   Criminalist Yoshida
Memorandum critical incident
   Sgt. Nhem
   Ofc. Asklof
   Ofc. Mosher
   Ofc. Sailus
   Follow-up
      Ofc. Mosher
Complaint for damages
4 CD's
   1. "James Cooke Team #1 Interviews Team #2 Interviews"
   2. "James Cooke Interview of Edens, Hess, Mohammed, Manor"
   3. "Photos" -downloaded to computer
   4. "Digital copy Investigation Binder"
1 CD "Cooke v. City of Stkn"
      36 video clips of interviews (Officers: Edens, Hess, Mohammed, Manor, and Dona)

Case 2:14-cv-00908-KJM-KJN Document 110-1 Filed 11/07/17 Page 12 of 14
Case 2:14-cv-00908-KJM-KJN Document 65-1 Filed 06/02/17 Page 12 of 14
James S. Cooke, deceased    Forensic Pathology & Legal Medicine, Inc.  Elizabeth A. Laposata, MD, FCAP, FASCP

1 CD: "Cooke v. City of Stockton, et al Medical Records of James Cooke"
Affidavit of No x-rays of James Cooke -p6

Medical Records from San Joaquin General Hospital
    San Joaquin General Hospital, French Camp CA
        12/13-12/15/03
            Medical notes -p8
            Discharge Diagnosis -p9
            Face Sheet -p10
            Admission -p12
            Discharge summary -p13,369
            ED triage assessment -p15
            ED nursing progress notes -p18
            Orders -p19,56
            H&P -p22
            Progress notes -p28
            Admission assessment -p30
            Consultation report -p35
            Radiology report -p39,50
            Laboratory report -p40
            EKG -p52
            Report of operation [radial artery line placement] -p55
            Medications -p59
            Flow sheet -p72
            Progress notes -p73
            Findings and procedures -p401
        6/19/06
            Clinical record face sheet -p102
            ED triage assessment -p230,238
            Nursing progress notes -p232
        11/25/05
            Clinical record face sheet -p104
            ED report -p240
            ED triage assessment -p242
            ED nursing progress notes -p246
            Radiology report -p249,435
        6/4/05
            Clinical record face sheet -p106
            ED triage assessment -p251
        12/28/04
            Clinical record face sheet -p108
            ED triage assessment -p258
            Orders -p263
        1/31/04
            Clinical record face sheet -p110
            ED triage assessment -p297
        4/12/12
            Diagnostic imaging (bone survey- morgue) -p112
            ED record -p113
            EKG -p121
            Flow sheet -p127
            Code Blue -p128
        12/24/09
            ED triage assessment -p129
            Laboratory report -p133
            Clinical record face sheet -p140
        6/14/09
            Clinical record face sheet -p141
            ED triage assessment -p142
        3/31/09
            Clinical record face sheet -p152
            ED triage assessment -p155
        3/13/08
            Clinical record face sheet -p162,171
            Nursing progress notes -p165
        1/27/08

Case 2:14-cv-00908-KJM-KJN   Document 110-1   Filed 11/07/17   Page 13 of 14
Case 2:14-cv-00908-KJM-KJN   Document 65-1   Filed 06/02/17   Page 13 of 14

James S. Cooke, deceased    Forensic Pathology & Legal Medicine, Inc.  Elizabeth A. Laposata, MD, FCAP, FASCP

        Clinical record face sheet -p172
        ED triage assessment -p173
        Exam -p175
        ED admission -p177
        Nursing progress notes -p178
12/25/07
        ED triage assessment -p182
        Medications -p183,187
        Physical -p185
        Orders -p188
        EMS
                Prehospital Care report -p191,402
        Laboratory reports -p194
        H&P -p202
        Consultation -p206
        Clinical record face sheet -p407
        Laboratory reports -420
        Radiology -p427
7/4/07
        ED triage assessment -p209
        Clinical record face sheet -p215
11/14/06
        ED triage assessment -p218
        Nursing progress notes -p222
        Clinical record face sheet -p226
7/18/04
        ED triage assessment -p266
        Treatment plans procedures -p269
        Nursing progress notes -p270
6/21/04
        ED triage assessment -p274
        treatment plans and procedures -p277
        Orders -p280
4/26/04
        ED triage assessment -p282
        Orders -p283
        Nursing progress notes -p286
        Radiology -p430
3/14/04
        Triage assessment -p290
        Follow-up appointment -p295
1/9/04
        ED triage assessment -p304
        Clinical record face sheet -p306
        Nursing progress -p309
        Verification of treatment -p317

10/29/03
        treatment record -p321
        Progress notes -p322
        Orders -p326
        Progress notes -p330,416

9/2/03
        ED triage assessment -p331
        Nursing progress notes -p335
        ED report -p336
8/21/03
        ED triage assessment -p341
        Nursing progress notes -p344
        Consultation/ procedure request -p348
9/17/03
        Progress notes -p349
        Orders -p351
9/3/03
        Progress notes -p353

Case 2:14-cv-00908-KJM-KJN   Document 110-1   Filed 11/07/17   Page 14 of 14
Case 2:14-cv-00908-KJM-KJN   Document 65-1   Filed 06/02/17   Page 13 of 13

James S. Cooke, deceased   Forensic Pathology & Legal Medicine, Inc.  Elizabeth A. Laposata, MD, FCAP, FASCP

        Orders -p356
        Social service record -p359
        Radiology -p398
12/12/01 Treatment record -p360

3/29/96
        ED treatment record -p365
        ED visit -367
        ED Assessment -p371
4/5/94
        ED treatment record -p374
7/21/93
        ED treatment record -p378
1/30/91
        Progress record -p380
        ED treatment record -p381
        EMS  Pre treatment care report -p383
        Orders -p384
        ED assessment -p385
        Radiology -p399
8/10/89
        ED treatment record -p388
6/30/89
        ED treatment record -p393
9/11/03
        Referral -p413
3/18/04
        Pathology/Cytology report -p431
12/20/03
        Radiology report -p432
        CT (head) -p433

Medical records from St. Joseph's Medical Center
    St. Joseph's Medical Center, Stockton CA 4/9/12
        Admission -p8
        Order summary -p9
        Clinical record -p11
        ED triage report -p14
        Visit report -p17
        Medication -p23
    4/7/12
        Admission -p43
        Order summary -p44
        Clinical record -p47
        ED triage report -p57
        Visit report -p61
        Discharge report -p69
        Laboratory report -p70
        Medication -p72
    2/19/12
        Admission -p82
        Order summary -p83
        Clinical record -p86
        ED triage report -p91
        Visit report -p94
        Discharge report -p103
        Medication -p104

1 CD: "12-12492 Co Hosp. Video"
    2 views:
    1. Hospital entrance
    2. Parking lot