1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    BREANNA COOKE, et al.,                    No.  2:14-CV-00908-KJM-KJN

12                   Plaintiffs,

13         v.                                   ORDER

14    CITY OF STOCKTON, et al.,

15                   Defendants.

16

17

18              On December 8, 2017, the court heard argument on the parties' motions in limine

19    filed in anticipation of the January 8, 2018 trial date.  The court now resolves the parties' motions

20    as explained below.  In addition, the court GRANTS the parties' December 7, 2017 and

21    December 12, 2017 stipulations.

22    I.       NATURE OF RULINGS ON IN LIMINE MOTIONS

23              The court issues its rulings on motions in limine based on the record currently

24    before the court.  Each ruling is made without prejudice and is subject to proper renewal, in whole

25    or in part, during trial.  If a party wishes to contest a pre-trial ruling, it must do so through a

26    proper motion or objection, or otherwise forfeit appeal on such grounds.  *See* Fed. R. Evid.

27    103(a); *United States v. Whittemore*, 776 F.3d 1074, 1082 (9th Cir. 2015), *cert. denied*, 136 S. Ct.

28    89 (2015) ("Where a district court makes a tentative *in limine* ruling excluding evidence, the

1

exclusion of that evidence may only be challenged on appeal if the aggrieved party attempts to offer such evidence at trial, which allows the court to make a final ruling.") (citation and internal quotation marks omitted).

II.     PLAINTIFFS' MOTIONS IN LIMINE

Following the September 8, 2017 pretrial conference in which the parties agreed to bifurcate the trial between a liability phase and a damages phase, the court granted plaintiffs' motion in limine two in its final pretrial order, resolving ECF No. 97. FPTO, ECF No. 105 at 6. The court resolves the balance of plaintiffs' in limine motions here.

    A.     Plaintiffs' Motion in Limine One (ECF No. 96)

Under Federal Rules of Evidence 401, 402, 403 and 404, plaintiffs seek to exclude testimony and other evidence of decedent James Cooke's ("Cooke") alleged criminal history from the liability and damages phases of trial. ECF No. 96. The history includes Cooke's prior "resisting arrest, driving violations including driving without a license, and restraining orders and violations thereof pertaining to non-parties," *id.* at 1, as well as an outstanding warrant for his arrest, ECF No. 111 at 4. Plaintiffs argue Cooke's history is irrelevant, unduly prejudicial and constitutes improper character evidence.

At oral argument on December 8, 2017, the parties expressed interest in reaching a stipulation to moot plaintiffs' first motion in limine. The court ordered the parties to meet and confer on the issue. Hearing Minutes, ECF No. 118. On December 12, 2017, the parties stipulated to admit the following facts as undisputed evidence at trial:

> When Stockton Police Officers Edens and Hess attempted to make contact with Decedent James Cooke on April 12, 2012, Mr. Cooke walked away and refused to comply with the officers' instructions to "Stop, come here." Mr. Cooke than [*sic*] ran from the officers. Mr. Cooke resisted the officers' efforts to take him into custody, and refused to comply with the officers' instructions, which included: "Stop resisting," "Get down on the ground," "Show me your hands," and "Put your hands behind your back."

ECF No. 120 at 2.

The court GRANTS the parties stipulation, ECF No. 120, and DENIES as MOOT plaintiffs' motion in limine one, ECF No. 96.

1          B.      Plaintiffs' Amended Motion in Limine Three (ECF No. 110)

2                  Plaintiffs move to exclude the testimony of defendants' expert Dr. Laposata that

3   Cooke died from cardiac arrest or arrhythmia, arguing "there is no factual foundation" for her

4   opinion. ECF No. 110 at 4. Plaintiffs confirmed at oral argument that they do not presently

5   challenge Dr. Laposata's credentials or methodology.

6                  Whether expert testimony is admissible is a question within the trial court's

7   discretion. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141-42 (1997). The court plays a

8   "gatekeeping" role to ensure all expert testimony, scientific or otherwise, is both relevant and

9   reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999). "Expert opinion

10  testimony is relevant if the knowledge underlying it has a valid connection to the pertinent

11  inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and

12  experience of the relevant discipline." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036,

13  1044 (9th Cir. 2014) (citation omitted). The district court must screen out "unreliable nonsense

14  opinions," but the jury may hear and weigh expert opinions that are impeachable. *Id.* at 1044. In

15  other words, the district court does not determine whether the expert is right or wrong, but

16  whether the testimony would be helpful to the factfinder. *Id.*

17                 After reviewing her expert report, the court is satisfied Dr. Laposata offers more

18  than "unreliable nonsense opinions." *See id.* Dr. Laposata's report summarizes her "medicolegal

19  death investigation . . . to recreate how the death occurred" and includes her review and analysis

20  of Cooke's medical history, the Stockton Police Department Incident History Detail log of the

21  events on the night of Cooke's death, and autopsy findings. Laposata Report, ECF No. 110-1 at

22  1-7.[1] These records provide a sufficient factual basis for Dr. Laposata's opinion that Cooke's

23  death was caused by cardiac arrhythmia due to his physical exertion and struggle with the police

24  and his history of untreated hypertensive and atherosclerotic heart disease. *Id.* at 7.

25  /////

26

27  [1] As filed, the ECF page numbers for the Laposata Report are illegible. The court therefore refers
    to the Laposata Report's internal pagination. All other citations to the record refer to ECF page
28  numbers.

                                                      3

1    In addition, although plaintiffs argue there is no factual basis for Dr. Laposata's

2    opinion, the bulk of plaintiffs' motion expresses only disagreement with Dr. Laposata's

3    prioritization and analysis of facts.  For example, plaintiffs acknowledge Cooke suffered from

4    hypertension and heart disease, but argue this evidence is insufficient to prove Cooke died as a

5    result of a cardiac event.  *See* ECF No. 110 at 2.  Likewise, plaintiffs argue Dr. Laposata "ignores

6    or discards contrary evidence of asphyxiation . . . and fails to consider other contrary evidence[,]"

7    including evidence of "petechial hemorrhages"[2] revealed in Cooke's autopsy.  *Id.* at 4.  Yet Dr.

8    Laposata's explanation of the petechial hemorrhages merely differs from plaintiffs' explanation.

9    *See* Laposata Report at 5-6 (opining petechial hemorrhages in Cooke's eyes likely resulted from

10   emergency personnel's resuscitation efforts and "never stands alone as diagnostic of traumatic

11   asphyxia").  Similarly, plaintiffs argue Dr. Laposata incorrectly states that Cooke was in the

12   officers' car for 20 minutes because, to plaintiffs, "that seems like an excessive estimate to travel

13   10 miles in a mostly straight line with no traffic in the middle of the night[]."  ECF No. 110 at 5.

14   This is impeachment evidence. To the extent plaintiffs contend Dr. Laposata does not adequately

15   address facts at issue, these disputes go to the weight, not the admissibility, of her opinion.  *See*

16   *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 n.14 (9th Cir. 2004) ("[T]he

17   factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility,

18   and it is up to the opposing party to examine the factual basis for the opinion in cross-

19   examination." (quoting *Children's Broad. Corp. v. Walt Disney Co.*, 357 F.3d 860, 865 (8th Cir.

20   2004))).

21          Accordingly, plaintiffs' amended motion in limine three is DENIED.

22   III.    DEFENDANTS' MOTIONS IN LIMINE

23          A.     Defendants' Motion in Limine One (ECF No. 93)

24          Under Rules 401, 403 and 702, defendants' first motion in limine seeks to exclude

25   plaintiffs' non-retained expert Dr. Bennet Omalu from testifying on several topics. ECF No. 93.

26   Dr. Omalu is a former Chief Medical Examiner of the Sheriff-Coroner's Office, County of San

27   ─────────────────────

28   [2] As Dr. Laposata explains, "increased pressure in the small blood vessels [of the eye] . . . bleed
     and cause the dot-like petechial hemorrhage."  Laposata Report at 6.

4

Joaquin. ECF No. 93 at 7. In that capacity, he performed the autopsy of Cooke. *Id.* at 3. Dr.

Omalu has also "garnered significant fame and notoriety" for his discovery of Chronic Traumatic

Encephalopathy ("CTE"), a brain disease affecting numerous former professional football

players. *Id.* at 4. In 2015, the actor Will Smith portrayed Dr. Omalu in a motion picture,

*Concussion*, which depicted "[t]he story of his discovery, and battles with the National Football

League . . . ." *Id.*

Defendants seek to exclude "testimony, questioning, argument, or reference of any

kind" relating to (1) Dr. Omalu's work brain injury or trauma, including CTE, (2) the film and

book, *Concussion* and (3) Dr. Omalu's statements or opinions on the WRAP device[3] at issue. *Id.*

at 3. Further, on December 7, 2017, the parties stipulated to exclude any "reference to the

circumstances or occurrence of the resignation of Dr. Bennet Omalu as Chief Forensic

Pathologist of San Joaquin County." ECF No. 117 at 2.

1.    Brain Injury, Brain Trauma and CTE

As discussed above, plaintiffs contend Cooke's death was the result of

asphyxiation while defendants argue Cooke's death resulted from a fatal cardiac arrhythmia.

Accordingly, the parties agree that Cooke's death was not the result of a brain injury. Plaintiffs

nonetheless "intend to raise the issue of Dr. Omalu's fame and notoriety arising from his work in

[the brain injury] field." ECF No. 93 at 4. Because brain injury is not at issue in this case,

defendants argue plaintiffs should be excluded from discussing Dr. Omalu's work on brain

injuries, contending "[s]uch testimony is irrelevant and unduly prejudicial and confusing to a jury

. . . ." *Id.* at 3.

---

[3] Plaintiffs' expert Clark describes the WRAP device as "a cacoon-style [*sic*] total body restraint."
ECF No. 67-1 at 5. Defendants' expert Dr. Laposata describes it as:

> [C]onsist[ing] of a strap to secure the ankles together, a rectangular
> reinforced cloth mat used to wrap the legs together, and a vest that
> goes over the head and attaches the detainee's torso with straps
> from the chest vest to the ankles (i.e., sitting upright with legs
> straight out). The detainee's cuffed hands are then clipped to a
> carabiner D-ring on the back waist strap of the vest.

Laposata Report at 3.

1    Plaintiffs argue Dr. Omalu's work on brain injuries "pertains directly to Dr.

2 Omalu's stature in the forensic pathology community," and speaks to Dr. Omalu's credibility.

3 ECF No. 99 at 1-2. More specifically, plaintiffs argue they are entitled to show Dr. Omalu is

4 "well-published[,] . . . "well-recognized[,] . . . has been involved in ground-breaking research in

5 the field of forensic pathology[,]" and is "willing to challenge establishment opinions" to prove

6 he "is not some fly-by-night contract coroner with no reputation to lose" for "shoddy work . . . ."

7 ECF No. 99 at 2. Plaintiffs also argue Dr. Omalu's expertise in brain injury is relevant because it

8 "played a role in [his] ultimate diagnosis of [Cooke's] dying from asphyxiation." *Id.* at 3. As

9 plaintiffs explain, Dr. Omalu preserved Cooke's brain and had it tested, ruling out a cause of

10 death often suspected in asphyxiation cases. Defendants argue because "[v]ery few county

11 coroner's [*sic*] would take this step, [] it speaks to the depth of work Dr. Omalu did in this case."

12 *Id.*

13    The court agrees with defendants that on the current record, the issue of brain

14 injury is not a fact of consequence in determining this action. *See* Fed. R. Evid. 401(b). The

15 court further agrees that extensive evidence of Dr. Omalu's specialization in head injury could

16 confuse the issues, mislead the jury as to the nature of Cooke's injuries and waste the court and

17 the parties' time. *See* Fed. R. Evid. 403. Nonetheless, plaintiffs are entitled to present the jury

18 with sufficient evidence to conclude Dr. Omalu is a qualified pathologist. Dr. Omalu's

19 credentials, including his degrees and work experience are relevant and admissible. Plaintiffs

20 need not convince the jury Dr. Omalu is a star to prove he is qualified. Accordingly, accounts of

21 Dr. Omalu's fame and cumulative accounts of Dr. Omalu's research are not admissible. In other

22 words, plaintiffs may address Dr. Omalu's expertise as a neuropathologist in establishing his

23 general qualifications as a pathologist; plaintiffs may not, however, dwell on the subject or make

24 it the focal point of Dr. Omalu's testimony on his credentials or otherwise.

25    In addition, plaintiffs are not entitled to seek extended testimony from Dr. Omalu

26 on the subject of brain injury and may not specifically discuss CTE. Even an expert with

27 impeccable credentials is not permitted to present testimony that does not have a tendency to

28 make a fact of consequence more or less probable. Again, the parties agree Cooke's death was

1    not the result of a brain injury.  Discussion of medical conditions, including CTE, that bear no

2    relationship to Cooke's autopsy or cause of death are irrelevant and pose substantial risk of

3    confusing or misleading the jury.

4            Defendants' motion in limine one is GRANTED in substantial part and DENIED

5    only to the extent plaintiffs may elicit brief background information on Dr. Omalu's professional

6    experience and credentials, without referencing CTE.

7                    2.    *Concussion*

8            Defendants argue plaintiffs should be excluded from eliciting testimony regarding

9    *Concussion* because such discussion is irrelevant and unduly prejudicial.  Defendants contend

10   references to *Concussion* would provide the jury with "fictional 'credentials'" to "underscore the

11   importance of the witness and his conclusions" on the unrelated issue of traumatic brain injuries.

12   ECF No. 93 at 7.

13           The court agrees.  Indeed, plaintiffs' arguments to the court regarding *Concussion*

14   present a distinct risk of prejudice, confusion of issues and waste of time.  *See* Fed. R. Evid. 403.

15   For example, plaintiffs argue *Concussion* is relevant because Dr. Omalu's "work is so highly

16   regarded that it was the basis of major [*sic*] motion picture."  ECF No. 99 at 3.  Similarly, in

17   support of their argument for excluding Dr. Laposata's opinion, plaintiffs argue:

18               "Bennett Omalu, who performed the autopsy for San Joaquin
                 county pursuant to the officer-involved death investigation, *and*
19               *also the pathologist famed for his research identifying into* [sic]
                 *CTE in football players and attributing it to repeated concussions*
20               *(made famous by Will Smith's portrayal of him in the movie*
                 *"Concussion"),* found that Decedent died from positional/restrain
21               asphyxiation."

22   ECF No. 110 at 2 (emphasis added).  These references are of minimal, if any, relevance to Dr.

23   Omalu's actual qualifications and opinions.  Rather, they are an attempt to dazzle the audience

24   with references to fictional accounts of Dr. Omalu's unrelated work and Hollywood's shining an

25   approving spotlight on that work.  The danger the jury will focus on brain injuries, the movie,

26   Will Smith, professional football players or Dr. Omalu's fame, none of which are of any

27   consequence to this action, substantially outweighs any probative value.

28   /////

                                                      7

1    Defendants' motion in limine one is GRANTED with respect to all references to

2    *Concussion*, Will Smith and related subjects.

3         3.    WRAP Device

4    Defendants seek to exclude Dr. Omalu from testifying about the WRAP device,

5    arguing such testimony exceeds the scope of his expertise.  ECF No. 93 at 7-8.

6    Plaintiffs clarify they do not intend to elicit testimony on the WRAP device from

7    Dr. Omalu on direct, though "such evidence may become admissible should defendants question

8    Dr. Omalu in that area."  ECF No. 99 at 1-2 n.1.

9    In light of plaintiffs' non-opposition, defendants' motion in limine one is

10   GRANTED with respect to Dr. Omalu's direct testimony on the WRAP device.

11        4.    Dr. Omalu's Resignation

12   In light of Dr. Omalu's recent resignation as the Chief Forensic Pathologist of San

13   Joaquin County, the parties stipulated to exclude any reference to "the circumstances or

14   occurrence of the resignation . . . ."  ECF No. 117 at 2.  Should the defense elicit testimony from

15   Dr. Omalu as "evidence of bias, interest, or as relating to his resignation, the San Joaquin County

16   Sheriff's Department, or law enforcement generally, the Stipulation shall be void."  *Id.*

17   The parties' stipulation is GRANTED.

18   B.    Defendants' Motion in Limine Two (ECF No. 94)

19   Defendants seek to exclude Roger Clark, plaintiffs' designated expert on police

20   practices and procedures, from offering three opinions: (1) "Officers Hess and Mohammed used

21   excessive force," (2) "[a]ny use of force after Mr. Cooke's [*sic*] was taken to the ground was

22   contrary to policy and law (as taught by POST[4])" and (3) "all officers present failed in their duty

23   to intervene and/or stop the unnecessary and excessive force inflicted on Mr. Cooke."  ECF

24   No. 94 at 5-6 (quoting Clark expert report).  Defendants argue these opinions constitute legal

25   conclusions and would invade the province of the jury.  *Id.*  But defendants concede Clark may

26   /////

27
_____

28   [4] POST is the acronym for California Peace Officer Standards and Training.  *See* ECF No. 67-1 at
     23.

opine on "compl[iance] with applicable professional standards for police training and practice." ECF No. 115 at 3.

### 1. Clark's Opinions on Excessive Force

An expert's "opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). "However, an expert witness cannot give an opinion as to her legal conclusion, *i.e.,* an opinion on an ultimate issue of law." *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1065 n.10 (9th Cir. 2002), *overruled on other grounds by Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 467 (9th Cir. 2014) (emphasis omitted). Courts thus frequently bar experts from "employ[ing] judicially defined and/or legally specialized terms in expressing [their] opinions." *See Monroe v. Griffin*, No. 14-CV-00795-WHO, 2015 WL 5258115, at *6-7 (N.D. Cal. Sept. 9, 2015) (excluding expert from using terms such as "grossly unlawful, unnecessary, and excessive violence"); *see also Valtierra v. City of Los Angeles*, 99 F. Supp. 3d 1190, 1198 (C.D. Cal. 2015) (excluding expert testimony that "the use of force was 'excessive' or 'unreasonable,' under the circumstances," but allowing expert's opinions to "be explored through hypothetical questioning so as to avoid invading the province of the jury").

Clark may not use judicially defined or legally specialized terms in providing his opinions. Thus, Clark may not opine as to whether the officers used "excessive force," or whether their use of force was "unreasonable under the circumstances." These are legal conclusions drawn from disputed facts; in other words, they preemptively answer questions the jury, not Clark, must resolve. *See id.* As defendants concede, however, Clark may within the scope of his expertise opine as to whether defendants complied with applicable procedures on the night of the incident. *See Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005) (citing expert testimony on "whether the officers' conduct comported with law enforcement standards, . . . rel[ying] upon California's Peace Officer Standards and Training"); *see also Monroe*, 2015 WL 5258115, at *6. Further, Clark's opinions may be explored through hypothetical questioning. *See Valtierra*, 99 F. Supp. 3d at 1198.

/////

/////

1          2.       Clark's Opinion on Officer Mohammed's "False Report"

2                  Defendants also argue Clark's opinion that Officer Mohammed submitted a false

3  police report is unhelpful to the jury and thus inadmissible under Rule 702.  ECF No. 94 at 6.

4  Plaintiffs' opposition does not address defendants' argument.  In his report, Clark opines:

5                      Taking the autopsy as true, Mr. Cooke's was [*sic*] struck in the back
                       of the head by Officer Mohammed, who stated that he struck Mr.
6                      Cooke between the shoulder blades, which would have been closest
                       to Mr. Cooke's head, then Officer Mohammed submitted a false
7                      police report in violation of SPD policy, POST training and the
                       Law [*sic*] when he stated that he struck Mr. Cooke in the [*sic*]
8                      between the shoulder blades, when Mr. Cooke was examined he
                       was found to have had several contusions and blunt force trauma to
9                      his head.

10 ECF No. 67-1 at 17.

11                 Clark's deposition testimony indicates he has no "opinion based on [his] expertise

12 that somebody struck Mr. Cooke in the back of the head with a baton[.]"  Ex. A, Clark Depo.,

13 ECF No. 94 at 14.  He opines only that if any officer struck Cooke in the head, as the autopsy

14 report suggests, the record indicates it was Officer Mohammed, whose admitted strikes were

15 "closest" to Cooke's head.  *Id.* at 13.  And if Officer Mohammed struck Cooke in the head, then

16 Officer Mohamed's police report, which omitted reference to striking Cooke in the back of the

17 head, was false.  *Id.*  Clark's opinion in this respect can be understood only after parsing a chain

18 of assumptions and inferences; the opinion is thus potentially confusing and misleading.  *See* Fed.

19 R. Evid. 403.  Moreover, because a jury is capable of weighing the evidence and drawing these

20 inferences without Clark's expertise, his opinion "would merely tell the jury what result to

21 reach," *see* Rule 704, Advisory Committee Note (1972), and would not "help the trier of fact to

22 understand the evidence or to determine a fact in issue," *see* Rule 702(a).  Thus, the opinion is

23 inadmissible.

24                 In summary, Clark is prohibited from expressing opinions in the form of legal

25 conclusions, including opinions on officers' use of excessive force.  Clark's opinion that Officer

26 Mohammed submitted a false report also is barred.  Clark may testify, however, as to applicable

27 professional standards and may provide his opinions about officer compliance with those

28 standards.

1  Thus, defendants' second motion in limine is GRANTED in part and DENIED in

2  part.

3      C.    Defendants' Motion in Limine Three (ECF No. 95)

4          Under Rules 401 and 403, defendants move to exclude autopsy photographs of

5  Cooke. ECF No. 95.

6          Defendants acknowledge the parties dispute the cause of Cooke's death but argue

7  "the graphic, bloody photographs of Mr. Cooke's autopsy are not probative on the issue of

8  positional asphyxiation because the photos do not show Mr. Cooke in the WRAP as he was

9  positioned during transport." *Id.* at 4.

10          Plaintiffs argue they seek to admit only "relevant" photographs, those they say

11  support Dr. Omalu's opinions on Cooke's injuries and support asphyxiation as a cause of death.

12  ECF No. 101 at 1. Plaintiffs do not, however, indicate which of the 78 autopsy photos identified

13  in their amended exhibit list are relevant. *See* ECF No. 106 at 2 (Plaintiffs' Amended Exhibit

14  List). Defendants explain the parties complied with the court's meet and confer order, *see* FPTO

15  at 6, but plaintiffs have not designated which photos they intend to introduce at trial, "leaving the

16  defense unable to even consider stipulations in this regard[,]" ECF No. 116 at 2.

17          The court cannot conduct a Rule 403 balancing test until plaintiffs identify which

18  photographs they intend to introduce and explain why each photograph is relevant. The court

19  thus defers ruling on defendants' motion in limine three to the morning of trial. *See United States*

20  *v. Graham*, No. CR 13-37-M-DWM, 2013 WL 6383169, at *3 (D. Mont. Dec. 5, 2013) (deferring

21  ruling on admissibility of autopsy photos pending "foundational testimony that these photographs

22  would assist [] testimony"); *Wilson v. Maricopa Cty.*, No. CV-04-2873 PHXDGC, 2007 WL

23  686726, at *13 (D. Ariz. Mar. 2, 2007) (deferring ruling until trial because "[n]o party has

24  provided the Court with copies of the [autopsy] photographs . . . . As a result, the Court cannot

25  assess their relevancy or potential for unfair prejudice").

26          Accordingly, IT IS HEREBY ORDERED:

27          1. The parties' stipulation, ECF No. 120, is GRANTED;

28          2. Plaintiffs' motion in limine one, ECF No. 96, is DENIED as MOOT;

11

1    3. Plaintiffs' amended motion in limine three, ECF No. 110, is DENIED;

2    4. Defendants' motion in limine one, ECF No. 93, is GRANTED in part and

3       DENIED in part;

4    5. Defendants' motion in limine two, ECF No. 94, is GRANTED in part and

5       DENIED in part; and

6    6. The parties' stipulation, ECF No. 117, is GRANTED.

7    DATED:  December 18, 2017.

8

9    _____
     UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12